William P. Donovan, Jr. (SBN 155881)
**McDERMOTT WILL & EMERY LLP**
wdonovan@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone:   (310) 277-4110
Facsimile:   (310) 277-4730

Joshua B. Simon*
jsimon@mwe.com
Warren Haskel*
whaskel@mwe.com
Dmitriy Tishyevich (SBN 275766)
dtishyevich@mwe.com
John J. Song*
jsong@mwe.com
Chelsea Cosillos*
ccosillos@mwe.com
**McDERMOTT WILL & EMERY LLP**
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone:   (212) 547-5400
Facsimile:   (212) 547-5444
*Admitted *Pro Hac Vice*

*Attorneys for Defendants*
*The Cigna Group (f/k/a Cigna Corporation) and*
*Cigna Health and Life Insurance Company*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANNE KISTING-LEUNG, SAMANTHA DABABNEH, RANDALL RENTSCH, and CHRISTINA THORNHILL, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:23-cv-01477-DAD-KJN<br><br>**CIGNA'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      June 4, 2024<br>Time:      1:30 P.M.<br>Judge      Hon. Dale A. Drozd<br>Courtroom:    4, 15th floor<br>Second Am. Compl. Filed: December 18, 2023 |

MᴄDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP
Aᴛᴛᴏʀɴᴇʏs Aᴛ Lᴀw
Lᴏs Aɴɢᴇʟᴇs

PLEASE TAKE NOTICE that on June 4, 2024 at 1:30 p.m. (or as soon thereafter as the matter may be heard in Courtroom 4, 15th Floor of the above-entitled Court), The Cigna Group (f/k/a Cigna Corporation) and Cigna Health and Life Insurance Company (together, "Cigna" or "Defendants") will move the Court for an for an order dismissing the Second Amended Complaint of Plaintiffs Suzanne Kisting-Leung, Samantha Dababneh, Randall Rentsch, and Cristina Thornhill, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).  The Motion is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, argument of counsel, and other such matters as the Court may consider.

Dated:  February 1, 2024               Respectfully submitted,

By:      /s/ Dmitriy Tishyevich
         Dmitriy Tishyevich

Joshua B. Simon (admitted *pro hac vice*)
Warren Haskel (admitted *pro hac vice*)
Dmitriy Tishyevich (SBN 275766)
John J. Song (admitted *pro hac vice*)
Chelsea Cosillos (admitted *pro hac vice*)
jsimon@mwe.com
whaskel@mwe.com
dtishyevich@mwe.com
jsong@mwe.com
ccosillios@mwe.com
**McDERMOTT WILL & EMERY LLP**
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone:   (212) 547-5400
Facsimile:    (212) 547-5444

William P. Donovan, Jr. (SBN 155881)
**McDERMOTT WILL & EMERY LLP**
wdonovan@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone:   (310) 277-4110
Facsimile:    (310) 277-4730
wdonovan@mwe.com

*Attorneys for Defendants The Cigna Group*
*(f/k/a Cigna Corporation) and Cigna Health and*
*Life Insurance Company*

CIGNA'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-KJN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND .................................................................................3

      A.    Overview of Plaintiffs' Allegations. ................................................3

      B.    Cigna's PxDx Claims Review Process, and Plaintiffs' Lack of Showing of Any Plan Breach. ..................................................................4

ARGUMENT .........................................................................................................7

I.    Plaintiffs Kisting-Leung and Thornhill Lack Article III Standing Because Their Claims Were Not Denied Through PxDx. .........................7

II.    The Contract, Quasi-Contract, and Intentional Interference with Contract Claims (First, Third, Fourth and Fifth Causes of Action) Should All Be Dismissed. ..................................................................8

      A.    The Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (First Cause of Action) Should Be Dismissed. ............8

      B.    The Intentional Interference with Contractual Relations Claim (Third Cause of Action) Should Be Dismissed. ......................................9

      C.    The Unjust Enrichment Claim (Fourth Cause of Action) Should Be Dismissed. ............................................................10

      D.    The Breach of Contract Claim (Fifth Cause of Action) Should Be Dismissed. ............................................................11

III.    Plaintiffs' California UCL Claim (Second Cause of Action) Should Be Dismissed. ............................................................12

      A.    Plaintiffs Fail To Plead Count II With Particularity Under Rule 9(b). ............12

      B.    Plaintiffs Fail To Plausibly Plead a UCL Claim Under Rule 8. ....................14

IV.    ERISA Preempts Plaintiffs' State-Law Claims. .................................16

CONCLUSION ....................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adtrader, Inc. v. Google LLC*,
  2018 WL 3428525 (N.D. Cal. July 13, 2018)...........................................................................10

*Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*,
  2020 WL 3893395 (E.D. Cal. July 10, 2020) .........................................................................14

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004)............................................................................................................16, 17, 18

*In re Ambry Genetics Data Breach Litig.*,
  567 F. Supp. 3d 1130 (C.D. Cal. 2021) ..................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................16

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................................................................................10

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) .................11

*Cleghorn v. Blue Shield of Cal.*,
  408 F.3d 1222 (9th Cir. 2005) ................................................................................................18

*Egelhoff v. Egelhoff ex rel. Breiner*,
  532 U.S. 141 (2001)................................................................................................................17

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
  771 F.3d 1119 (9th Cir. 2014) ..................................................................................................9

*Gilliland v. Chase Home Fin., LLC*,
  2014 WL 325318 (E.D. Cal. Jan. 29, 2014) .............................................................................9

*Gobeille v. Liberty Mut. Ins. Co.*,
  577 U.S. 312 (2016)................................................................................................................17

*Gonzaba v. Bd. of Trs. of S. Cal. Const. Laborers*,
  2013 WL 1694602 (S.D. Cal. Apr. 18, 2013)..........................................................................17

*Great Pac. Sec. v. Barclays Cap., Inc.*,
  743 F. App'x 780 (9th Cir. July 30, 2018) ..............................................................................13

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................................................16

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

*Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*,
  2022 WL 1665220 (E.D. Cal. May 25, 2022) .......................................................14

*Hunt v. Zuffa, LLC*,
  2021 WL 4355728 (9th Cir. Sept. 24, 2021) ......................................................10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .................................................................12, 13

*Lopez v. Stages of Beauty, LLC*,
  307 F. Supp. 3d 1058 (S.D. Cal. 2018)..............................................................1, 16

*Meridian Treatment Servs. v. United Behav. Health*,
  2020 WL 7000073 (N.D. Cal. July 20, 2020).........................................................9

*Miller v. Taryle*,
  2013 WL 12205851 (C.D. Cal. Sept. 10, 2013) ...................................................14

*Pilot Life Ins. Co. v. Dedeaux*,
  481 U.S. 41 (1987)..............................................................................17, 18

*Plastino v. Wells Fargo Bank*,
  873 F. Supp. 2d 1179 (N.D. Cal. 2012) ...............................................................8, 9

*PM Grp., Inc. v. Stewart*,
  154 Cal. App. 4th 55 (2007) ...........................................................................9

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
  592 U.S. 80 (2020) ....................................................................................17

*Rutter v. Apple Inc.*,
  2022 WL 1443336 (N.D. Cal. May 6, 2022) .........................................................9, 11

*Saloojas, Inc. v. Cigna Healthcare of Cal., Inc.*,
  2022 WL 5265141 (N.D. Cal. Oct. 6, 2022).......................................................12

*Sarkisyan v. CIGNA Healthcare of Cal., Inc.*,
  613 F. Supp. 2d 1199 (C.D. Cal. 2009) ...........................................................17, 18

*Satvati v. Allstate Northbrook Indem. Co.*,
  634 F. Supp. 3d 792 (C.D. Cal. 2022) ...............................................................11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)...................................................................................7

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ........................................................................14

*In re Toyota Motor Corp. Unintended Accel. Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...........................................................13

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

*United Food & Com. Workers Cent. Pa. & Regional Health & Welfare Fund v. Amgen, Inc.*,
    400 F. App'x 255 (9th Cir. 2010) ............................................................................12

*Vang v. Geil Enters. Inc.*,
    2023 WL 3168513 (E.D. Cal. Apr. 28, 2023)..........................................................18

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................................................12

*Way v. JP Morgan Chase Bank, N.A.*,
    2018 WL 2117630 (E.D. Cal. May 8, 2018) .............................................................2

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..................................................................................2

*Wise v. Verizon Commc'ns, Inc.*,
    600 F.3d 1180 (9th Cir. 2010) ............................................................................3, 17

*Zhang v. Super. Ct.*,
    57 Cal. 4th 364 (2013) ............................................................................................14

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...............................................................12, 14, 18

Cal. H&S Code § 1367.01(e) .........................................................................14, 15

Cal. H&S Code § 1367.01(h)(4)............................................................................15

Cal. Ins. Code § 790.03.........................................................................................14, 15

**Other Authorities**

10 C.C.R. § 2695.1............................................................................................14, 15

10 C.C.R. § 2695.7............................................................................................14, 15

Fed. R. Civ. P. 8 ......................................................................................12, 14, 16

Fed. R. Civ. P. 9(b) ..........................................................................................*passim*

Fed. R. Civ. P. 12(b) ...........................................................................................1, 2

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Defendants The Cigna Group (f/k/a Cigna Corporation) and Cigna Health and Life Insurance Company (together, "Cigna" or "Defendants") respectfully submit this memorandum of points and authorities in support of their motion, pursuant to Federal Rules of Civil Procedure (9)(b), 12(b)(1) and 12(b)(6), to dismiss the Second Amended Complaint ("SAC").

## INTRODUCTION[1]

On March 25, 2023, a media organization called ProPublica published a misleading and inflammatory article about Cigna's use of a claims review process called Procedure-to-Diagnosis (PxDx).   A series of lawsuits followed, including this one—all based on a fundamental misunderstanding about how the PxDx claims review process works and when Cigna uses it.

After Plaintiffs filed their original complaint, Cigna's counsel had multiple discussions with Plaintiffs' counsel about its various deficiencies, after which Plaintiffs filed two amended complaints. But despite having now had three opportunities to plead their claims, Plaintiffs still have not stated one.  The problems start with Plaintiffs' assumption that PxDx is an "illegal scheme" (SAC ¶ 1) that Cigna implemented to deny plan members their covered benefits, because Plaintiffs do not plead any facts to show such a fraudulent and unlawful scheme.  Indeed, the ProPublica article from which Plaintiffs borrow most of their factual allegations itself provides a much more pedestrian explanation of PxDx from Dr. Alan Muney—Cigna's former Chief Medical Officer, who helped develop the PxDx process.[2]

As Dr. Muney explained it, the PxDx process was "designed to prevent claims for care that Cigna considered unneeded or even harmful to the patient," and it "simply allowed Cigna to cheaply identify claims that it had a right to deny"—i.e., non-covered claims.  (See https://perma.cc/4RPS-

---

[1] Unless otherwise noted, all emphasis has been added, and all citations, alterations, and internal quotation marks have been omitted.  References to "Ex. __" are to the corresponding exhibits attached to the Declaration of Dmitriy Tishyevich filed herewith.  References to "Kessel Decl." are to the Declaration of Dr. Julie B. Kessel filed herewith, and references to "Kessel Ex. __" are to the corresponding exhibits attached to the Kessel Declaration.

[2] See https://perma.cc/4RPS-5QL3.  Because the SAC cites to and relies on this article (see, e.g., SAC ¶ 66 ("On or around March 25, 2023, Mr. Rentsch discovered through an article published by ProPublica that the Cigna Defendants had been using the PXDX algorithm to review patients' claims")), the Pro Publica article is "incorporated by reference" into the complaint.  Lopez v. Stages of Beauty, LLC, 307 F. Supp. 3d 1058, 1064 (S.D. Cal. 2018).

CIGNA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-KJN

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

5QL3.)  Thus, rather than being some unlawful scheme to fill Cigna's pockets, PxDx simply checks whether certain specific treatments that providers are ordering are actually covered by the member's benefit plan.  And as Dr. Muney also described it, other payors have similar systems too: "[Dr.] Muney and his team had solved the problem once before.  At UnitedHealthcare, where [Dr.] Muney was an executive, he said his group built a similar system to let its doctors quickly deny claims in bulk." (*Id*.)

Not surprisingly in light of this background, Plaintiffs have not plausibly alleged any of their claims.  To start, the claims that two of the named Plaintiffs—Kisting-Leung and Thornhill—allege were improperly denied were not actually denied through PxDx, as shown in the declaration of Cigna's Dr. Julie Kessel, which defeats their allegation that Cigna's use of PxDx deprived them of their covered benefits.[3]  (*See* SAC ¶ 1 (alleging that Cigna's use of PxDx results in denial of payments for procedures "owed to them under Cigna's health insurance policies"—*i.e.*, covered procedures).)  For this reason alone, these two named Plaintiffs' claims should be dismissed for lack of Article III standing.

Even setting that aside, Plaintiffs have not pled key elements of any of their claims.  Count I (breach of the implied covenant of good faith and fair dealing) should be dismissed because Plaintiffs have failed to "identify the specific contractual provision [in their benefit plans] that was frustrated" by Cigna's use of PxDx, as they must.  *See Way v. JP Morgan Chase Bank, N.A.*, 2018 WL 2117630, at *3 (E.D. Cal. May 8, 2018).  Count II (a claim under California's Unfair Competition Law) should be dismissed for multiple reasons, including most fundamentally because Plaintiffs' complaint sounds in fraud, yet they fail to plead their UCL claim in accordance with the heightened requirements of Rule 9(b).

Count III (intentional interference with contractual relations) should be dismissed because Plaintiffs have alleged that Cigna is a signatory to the contracts (the benefit plans) with which it allegedly interfered, but Cigna cannot tortiously interfere with its own contract.  Count IV (unjust

---

[3] In challenging standing, Cigna is permitted to make a fact-based Rule 12(b)(1) motion and proffer evidence beyond the pleadings.  *See, e.g.*, *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("With a factual Rule 12(b)(1) attack . . . a court may look beyond the complaint[.]").  The Court may thus consider Cigna's declaration in deciding Cigna's challenge to Kisting-Leung's and Thornhill's standing.

McDermott Will & Emery LLP<br>Attorneys At Law<br>Los Angeles

enrichment) should be dismissed because a quasi-contract claim fails as a matter of law when plaintiff alleges that there is a valid and enforceable contract at issue, as Plaintiffs do here. Count V (breach of contract) should be dismissed because Plaintiffs do not identify the specific provision of their plans that Cigna allegedly breached by using PxDx.

Finally, all of Plaintiffs' state-law claims should also be dismissed because they are preempted by ERISA. All these state-law claims are premised on Cigna allegedly using PxDx to deny Plaintiffs their covered benefits, and they hinge on whether the services that Plaintiffs obtained were actually required to be covered by their benefit plans. Where, as here, "the existence of an ERISA plan is a critical factor in establishing liability under a state cause of action, the state law claim is preempted." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010).

For all these reasons, and more below, all of Plaintiffs' claims should be dismissed.

## FACTUAL BACKGROUND

### A.    Overview of Plaintiffs' Allegations.

Plaintiffs bring this suit challenging Cigna's PxDx review process. Drawing primarily on a March 2023 ProPublica article, Plaintiffs allege (without any factual basis) that PxDx was an "illegal scheme to systematically, wrongfully, and automatically deny its insureds the thorough, individualized physician review of claims guaranteed to them by California law *and, ultimately, the payments* for necessary medical procedures owed to them under Cigna's health insurance policies." (SAC ¶ 1.) Thus, the core premise of Plaintiffs' lawsuit is that Cigna supposedly used PxDx to deny claims for services that should have been covered under their benefit plans. As detailed below, however, Plaintiffs do not offer any facts to support this premise.

Plaintiffs also describe PxDx as essentially a scheme to defraud—accusing Cigna of making "deceptive and misleading representations to Plaintiffs and Class members" about Cigna's use of PxDx. (*Id.* ¶ 8.) Plaintiffs do not identify any specific alleged misrepresentations, however. Instead, they point to a phrase on Cigna's website that states "we've got you covered," and Plaintiffs say that this phrase translates to an actionable promise that "Cigna would conduct a thorough, fair, and objective review of their claims." (*See id.*) But the broad and general phrase "we've got you covered" on a website is not a promise of coverage for a specific claim, nor does it even mention PxDx or

medical necessity review.  And that Cigna website moreover includes a disclaimer that "[a]ll insurance policies and group benefit plans contain exclusions and limitations."  (Ex. A at 12.)

The four named Plaintiffs—Suzanne Kisting-Leung ("Kisting-Leung"), Samantha Dababneh ("Dababneh"), Randall Rentsch ("Rentsch"), and Cristina Thornhill ("Thornhill")—are all California citizens.  (SAC ¶¶ 13-16).  They bring five state-law claims, and they purport to represent a class of "all persons who had purchased health insurance from Cigna in the State of California during the period of four years prior to the filing of the complaint through the present" (*id.* ¶ 79), and a subclass consisting of all such persons "whose claims were reviewed and denied using the PXDX algorithm" in that same time period.  (*Id.* ¶ 81.)

### B.   Cigna's PxDx Claims Review Process, and Plaintiffs' Lack of Showing of Any Plan Breach.

Cigna administers "benefits for covered health services" for its clients' health benefit plans. (*See id.* ¶ 20.)  Cigna does so in accordance with plan terms:  as Plaintiffs recognize, Cigna members have benefit plans that set the terms and limits of their healthcare coverage.  (*See, e.g.*, *id.* ("The Cigna Defendants provided plaintiffs and Class members with **written terms** explaining the plan coverage Cigna offered them"); *id.* ¶ 1 (challenging Cigna's denials of payments for procedures allegedly "owed to [Plaintiffs] under Cigna's health insurance policies").)

A key part of claims administration services that Cigna provides to plans is to ensure that the plan only pays for services that (among other things) the plan actually covers.  (*See id.* ¶ 20 (alleging that according to plan terms, "Cigna must provide benefits for **covered** health services[.]").)  PxDx is one way that Cigna checks incoming claims for compliance with plan benefit limitations—because as Dr. Muney described it in the Pro Publica article on which Plaintiffs rely, the PxDx process was intended to "simply allow[] Cigna to cheaply identify claims that it had a right to deny."

As Plaintiffs acknowledge, if the PxDx system identifies such a non-covered claim, Cigna will send the member a letter explaining why the claim was denied.  (*See, e.g.*, *id.* ¶¶ 47-48 (Dababneh acknowledging that she "received a denial letter from Cigna stating that Cigna was denying her claim because it was 'not medically necessary,'" and that "the denial letter indicated that the PXDX algorithm reviewed her claim"); *id.* ¶ 56 (same allegations for Rentsch).)

A core premise of Plaintiffs' case is that all these denials were supposedly contrary to the terms of their benefit plans—*i.e.*, that Cigna should have adjudicated their claims as covered, but it instead improperly denied them through PxDx.  (*See id.* ¶ 1 (alleging that Cigna used PxDx to deny "payments for necessary medical procedures owed to [Plaintiffs] under Cigna's health insurance policies").)  But as described below, not one of these named Plaintiffs has shown that their claim denials were contrary to plan terms.

Dababneh alleges that she received a test for a Vitamin D deficiency in September 2022, and that she then "received a denial letter from Cigna stating that Cigna was denying her claim because it was 'not medically necessary.'"  (*Id.* ¶¶ 46-47.)  Dababneh likewise does not identify any plan terms to show that any of these denials were contrary to plan terms or that anything in her benefit plan would preclude Cigna from using a claims review process like PxDx.  (*See id.* ¶¶ 45-51.)

Rentsch alleges that he received four transforaminal epidurals between June 2016 and February 2017 as treatment for a pinched nerve, with Cigna denying coverage for these claims as "not medically necessary."  (*Id.* ¶¶ 53-54, 56, 58-59, 62-65.)  Like the other named Plaintiffs, Rentsch does not identify any plan terms to show that any of these denials were incorrect, nor does he identify anything in his benefit plan that would preclude Cigna from using a claims review process like PxDx.  (*See id.* ¶¶ 52-68.)

Unlike Plaintiffs Dababneh and Rentsch, Kisting-Leung and Thornhill do not allege that they had received denial letters which indicated that their claims were denied through PxDx.  There is good reason why:  as explained in the Declaration of Cigna's Dr. Julie B. Kessel, their claims as referenced in the SAC in fact were not denied through Cigna's PxDx review process.

Kisting-Leung alleges that she underwent two transvaginal ultrasounds, on October 17 and November 30, 2022, and that Cigna denied these services as "not medically necessary."  (*Id.* ¶¶ 33-34, 37-38.)  She does not identify anything in her benefit plan to show that these services were, in fact, medically necessary or that they should have been covered.  Nor does she identify anything in her benefit plan that would preclude Cigna from using a claims-review process like PxDx to review claims for compliance with benefit plan limitations.  (*See id.* ¶¶ 32-44.)

Kisting-Leung alleges—only "upon information and belief"—that "Cigna Defendants used the PXDX system to 'review' and deny [her] claims." (*Id.* ¶ 41.)  But that is not true.  Rather than being denied through PxDx, the Explanation of Benefit forms for these claims indicate that they were denied as non-covered under Ms. Kisting-Leung's benefit plan, with a code stating that "the submitted code is denied because it's related to a service that your plan doesn't cover.  Please refer to your plan booklet." (*See* Kessel Decl. ¶ 12; *see also* Kessel Ex. 1 at 3; Kessel Ex. 2 at 3.)  Thus, Cigna's records do not show that these claims for transvaginal ultrasound were denied through PxDx.

Thornhill alleges that after discovering an "asymmetric mol[e] on her skin,"[4] she received some unspecified "oncology and gene expression profiling" in September 2022, which Cigna denied as "not medically necessary." (SAC ¶¶ 70, 72-73.)  Thornhill also does not identify any plan terms to show that this "oncology and gene expression profiling" procedure should have been covered, nor any plan terms that would preclude Cigna from using PxDx.

Like Kisting-Leung, Thornhill alleges—also "upon information and belief" only—that her claim was denied through PxDx.  (*See id.* ¶¶ 75-76.)  Here, again, that was not the case.  In fact, Cigna's review indicates that Ms. Thornhill's claim was denied after Cigna issued an Explanation of Benefits form that stated that Cigna "need[s] more information about this claim to determine if the services received were medically necessary," and that if Cigna does not "receive the information[,] we'll have to close the claim." (Kessel Decl. ¶ 16; *see also* Kessel Ex. 3 at 3.)  Two months later, Cigna issued another EOB that stated:  "We need medical records to process this claim.  We have requested but not yet received it.  We've closed the claim." (Kessel Decl. ¶ 18; *see also* Kessel Ex. 4 at 3.)  Thus, Cigna's records do not show that this claim was denied through PxDx, contrary to Thornhill's allegations.

---

[4] The SAC refers to an "asymmetric mold" rather than "mole" throughout, but from context, Cigna assumes that these references are meant to be to an "asymmetric mole."

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

# ARGUMENT

## I.   Plaintiffs Kisting-Leung and Thornhill Lack Article III Standing Because Their Claims Were Not Denied Through PxDx.

Plaintiffs allege that they were injured because by using PxDx, Cigna denied their claims for services that allegedly should have been covered under the terms of their benefit plans.  (*See* SAC ¶ 1 ("This action arises from Cigna's illegal scheme to systematically, wrongfully, and automatically deny its insureds the thorough, individualized physician review of claims guaranteed to them by California law and, ultimately, ***the payments*** for necessary medical procedures owed to them under Cigna's ***health insurance policies***.").)  And all Plaintiffs—including Kisting-Leung and Thornhill—tie their alleged injuries to these PxDx denials, alleging that they "had their claims rejected by Cigna using the PXDX system."  (*Id.* ¶ 5.)

But this injury theory does not square with the claims that Kisting-Leung and Thornhill allege Cigna improperly denied—because the records for these claims show that they were not, in fact, denied through Cigna's PxDx claims review process.  (*See supra* 5-6; Kessel Decl. ¶¶ 12-20.)  Because Kisting-Leung and Thornhill have not shown an "injury in fact"—"an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), they have no Article III standing to pursue recovery for these claims and they should be dismissed from this suit.

Kisting-Leung (but not Thornhill) alleges that if she had "known that the Cigna Defendants would evade the legally required process for reviewing her claims and delegate that process to its PXDX algorithm to review and deny claims, she would not have enrolled with Cigna or at most would only have paid less for it."  (SAC ¶ 44.)  But Kisting-Leung does not support this speculative statement with any alleged facts.  Moreover, this theory would still turn on whether Cigna had in fact denied her claims using PxDx—otherwise Kisting-Leung would have felt no impact from her plan's use of PxDx, because she personally would have received the exact coverage she bargained for.  Because Kisting-Leung does not identify any claims under her plan that were actually subject to PxDx, she cannot make that showing.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Thus, with no Article III standing, Kisting-Leung's and Thornhill's claims should be dismissed.

## II.   The Contract, Quasi-Contract, and Intentional Interference with Contract Claims (First, Third, Fourth and Fifth Causes of Action) Should All Be Dismissed.[5]

Plaintiffs premise their First, Third, Fourth, and Fifth Causes of Action on their assumption that Cigna breached some obligation to them by using the PxDx process to review their claims. Plaintiffs have not plausibly pled their breach of contract or implied covenant claims, because they have not identified any contractual provisions that Cigna allegedly breached or frustrated. Plaintiffs' quasi-contract claims should be dismissed because their and Cigna's rights and obligations are governed by written contracts—Plaintiffs' benefit plans. Finally, Plaintiffs' claim for intentional interference should also be dismissed because Plaintiffs allege that Cigna is a party to the contracts with which it is allegedly interfering (Plaintiffs' benefit plans), and that claim is not available against a party to the contract.

### A.   The Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (First Cause of Action) Should Be Dismissed.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed because to state this claim, "a plaintiff must identify the specific contractual provision that was frustrated," *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012), and Plaintiffs have not done that here.

Plaintiffs say that Cigna breached the implied covenant by "improperly delegating their claims review function to the PXDX system," by "allowing their medical directors to sign off on the denials in batches without reviewing each patient's file," and by "failing to have its medical directors conduct a thorough, fair, and objective investigation of each submitted claim[.]" (SAC ¶ 94.) But Plaintiffs do not try to link any of these supposed violations to any actual provisions in their benefit plans. (*See id.* ¶¶ 91-101.) Absent such allegations, Plaintiffs have not shown how Cigna's alleged use of PxDx would have frustrated any specific provisions in their benefit plans—which in turn means that they

---

[5] As addressed in Section IV below, all these state-law counts are also preempted by ERISA, and should be dismissed for that reason as well.

CIGNA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-KJN

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

have not stated this implied covenant claim.  *See Plastino*, 873 F. Supp. 2d at 1191 (dismissing where "Plaintiff has pointed to no specific contractual provision that was frustrated"); *Rutter v. Apple Inc.*, 2022 WL 1443336, at *7 (N.D. Cal. May 6, 2022) (dismissing because "implied covenants exist to protect express contractual provisions, and the Amended Complaint has failed to identify any"); *Gilliland v. Chase Home Fin., LLC*, 2014 WL 325318, at *4 (E.D. Cal. Jan. 29, 2014) (dismissing because "Plaintiff has not alleged a contractual obligation as required to establish a breach of an implied covenant of good faith and fair dealing").

**B.      The Intentional Interference with Contractual Relations Claim (Third Cause of Action) Should Be Dismissed.**

In their tortious interference claim, Plaintiffs allege that they "entered into written contracts with Defendants [Cigna]" whereby Cigna was "required to pay for Plaintiffs' and Class Members' medically necessary services rendered by healthcare providers," and that Cigna "interfere[d] with the performance" of these benefit plan-contracts by allegedly "denying payments for medically necessary services without any basis."  (SAC ¶¶ 125, 128.)

Plaintiffs' Third Cause of Action hinges on Plaintiffs' allegation that by using PxDx, Cigna interfered with contracts—benefit plans—to which Cigna is a party.  This claim fails as a matter of law because it is a "long-standing proposition" of California law that "the tort cause of action for interference with contract does not lie against a party to the contract because one contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its terms."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1126 (9th Cir. 2014); *see also, e.g.*, *Meridian Treatment Servs. v. United Behav. Health*, 2020 WL 7000073, at *6 (N.D. Cal. July 20, 2020) (dismissing intentional interference claim because "the tort cause of action for interference with contract does not lie against a party to the contract"); *PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55, 64-65 (2007) (reversing jury award because "the tort of intentional interference with contractual relations is committed only by strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance," and "consequently, a contracting party is incapable of interfering with the performance of his or her own contract[.]").

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**C.      The Unjust Enrichment Claim (Fourth Cause of Action) Should Be Dismissed.**

In the Fourth Cause of Action, Plaintiffs allege that Cigna was unjustly enriched "by delegating the claims review process to the automated PXDX system" and by "arbitrarily denying its insureds medical payments owed to them under Cigna's policies[.]"  (SAC ¶¶ 136, 140.)  Thus, like Plaintiffs' other legal theories, Count IV is premised on Plaintiffs' assumption that Cigna used PxDx to improperly deny them covered services.  This claim should be dismissed for two reasons.

First and most fundamental:  Plaintiffs cannot maintain this quasi-contract claim because as they repeatedly acknowledge throughout their complaint (including by bringing a breach of contract claim, Count V), their rights here are governed by valid written contracts—their benefit plans.  (See, e.g., id. ¶ 20 ("The Cigna Defendants provided Plaintiffs and Class members with **written terms** [i.e., terms in their benefit plans] explaining the plan coverage Cigna offered them.").)

"Courts have repeatedly held that a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid."  Brodsky v. Apple Inc., 445 F. Supp. 3d 110, 133 (N.D. Cal. 2020); see also, e.g., Adtrader, Inc. v. Google LLC, 2018 WL 3428525, at *11 (N.D. Cal. July 13, 2018) ("to assert such a claim [for unjust enrichment], Plaintiffs must allege that the parties do not have an enforceable contract"); Hunt v. Zuffa, LLC, 2021 WL 4355728, at *1 (9th Cir. Sept. 24, 2021) (plaintiff did not allege unjust enrichment in the alternative where he did not "allege or contend that . . . any . . . pertinent agreement is invalid.").  The SAC has no such allegations. To the contrary, Plaintiffs allege that their benefit plans are valid and enforceable contracts as part of their breach of contract claim.  (See SAC ¶ 144 ("Defendants formed an agreement and entered into a contract of insurance with Plaintiffs and the Class"); also compare id. ¶ 135 ("incorporate[ing] by reference all preceding allegations") with id. ¶ 92 (alleging that Cigna and plaintiffs "entered into written contracts . . . which provided for coverage for medical services[.]").)  These allegations foreclose their unjust enrichment claim as a matter of law.

Second, Plaintiffs have not identified any terms in their benefit plans that would preclude Cigna from using a claims review process like PxDx to determine whether a claim is covered by the member's benefit plan.  Nor have they identified any actionable affirmative promise by Cigna **not** to

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

use a system like PxDx to review their claims.  Absent something that would affirmatively preclude Cigna from using a process like PxDx (whether a provision in their benefit plans, or some other actionable promise that Cigna made to Plaintiffs), there is nothing "unjust" about Cigna doing so.

### D.       The Breach of Contract Claim (Fifth Cause of Action) Should Be Dismissed.

In Count V, Plaintiffs allege that Cigna was contractually obligated "to exercise its fiduciary duties to policyholders, abide by applicable state laws, and adequately review and inform policyholders prior to a claim denial" (*id.* ¶ 146), and they contend that Cigna's use of PxDx supposedly breached those obligations.

This claim should be dismissed for a simple reason:  failure to plead breach.  "To properly plead breach of contract, the complaint must identify the specific provision of the contract allegedly breached by the defendant." *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017); *see also, e.g.*, *Satvati v. Allstate Northbrook Indem. Co.*, 634 F. Supp. 3d 792, 797 (C.D. Cal. 2022) ("To survive a motion to dismiss, a plaintiff must identify a specific contract provision breached by the defendant.").  Plaintiffs have not done so here.  Their assertions about Cigna's supposed obligations are unsupported by any language from their benefit plans.  (SAC ¶¶ 143-149.)  And the absence of these specifics is telling:  Plaintiffs have access to their own benefit plans, and they certainly could have identified supporting language from those plans if such language existed.

Without Plaintiffs identifying plan language to show the scope and extent of Cigna's obligations, there is no way for this Court to determine whether Cigna's use of PxDx would have actually breached those obligations.  As courts routinely hold, the lack of such specifics mandates dismissal.  *See, e.g.*, *Rutter*, 2022 WL 1443336, at *7 (dismissing where plaintiffs "failed to identify a provision in the iCloud Terms and Conditions" to support their breach of contract claim); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143-44 (C.D. Cal. 2021) (dismissing for failure to "allege the specific provisions in the contract creating the obligation"); *Satvati*, 634 F. Supp. 3d at 797 (dismissing where "Plaintiffs fail[ed] to identify a Policy provision that Defendant breached").

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

- 11 -

### III.   Plaintiffs' California UCL Claim (Second Cause of Action) Should Be Dismissed.

The gist of Plaintiffs' UCL claim is the same as the other counts—Plaintiffs allege that as a result of Cigna's use of PxDx, they did not receive the benefits to which they are entitled under their benefit plans, which Plaintiffs allege was "unfair," "unlawful," and/or "fraudulent" under California Business & Professions Code Section 17200.  (SAC ¶ 122 (as relief for the Section 17200 claim, seeking an order "enjoining Defendants from **denying benefits** owed to Cigna insureds through its scheme involving the PXDX processing system").)  This Count fails under both Rules 9(b) and 8.

### A.   Plaintiffs Fail To Plead Count II With Particularity Under Rule 9(b).

Section 17200 claims grounded in fraud are subject to Rule 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009).  This is true even "where fraud is not an essential element of a claim," but a plaintiff "choose[s] nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct" and "rel[ies] entirely on that course of conduct as the basis of [the] claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003); *United Food & Com. Workers Cent. Pa. & Regional Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th Cir. 2010) ("Because the complaint sounded in fraud, all of its allegations are subject to Rule 9(b)'s pleading requirements.  [ . . . ]  Consequently, the district court properly dismissed the complaint in its entirety, including its UCL 'unlawful' and 'unfair' claims.").

Plaintiffs' complaint undoubtedly sounds in fraud because its premise is that Cigna used PxDx as a secret and fraudulent scheme to deny members their covered benefits.  (*See, e.g.*, SAC ¶ 27 ("The Cigna Defendants fraudulently misled California insureds into believing that their health plan would individually assess their claims and pay for medically necessary procedures"); *id.* ¶ 8 ("Cigna also made deceptive and misleading representations to Plaintiffs and Class members regarding the efficiency of their services").)  Because Plaintiffs' complaint sounds in fraud, all three prongs of their UCL claim are subject to Rule 9(b).  *See Kearns*, 567 F.3d at 1127 (no error in district court applying Rule 9(b) to the entire UCL claim where the complaint "alleges a unified course of fraudulent conduct"); *Saloojas, Inc. v. Cigna Healthcare of Cal., Inc.*, 2022 WL 5265141, at *9 (N.D. Cal. Oct. 6, 2022) (noting that provider-plaintiff's UCL "claim invokes each prong of unfair competition" and

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

- 12 -

applying Rule 9(b) to the entire UCL claim because "Saloojas's complaint undoubtedly sounds in fraud").

Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting fraud[.]" In the Ninth Circuit, that means that Plaintiffs must "articulate the who, what, when, where, and how of the misconduct alleged." *Kearns*, 567 F.3d at 1126; *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1170 (C.D. Cal. 2010) (requiring plaintiff to "allege particular facts explaining the circumstances of the fraud, including time, place, persons, statements made[,] and an explanation of how or why such statements are false or misleading."). Despite three tries, Plaintiffs have not pled any such specifics. Plaintiffs identify only two alleged misrepresentations: (1) "Cigna's policies falsely claim that determinations related to medical necessity of health care services would be made by a medical director, when in reality the medical directors are not involved in reviewing patients' claims"; and (2) "Cigna'[s] website falsely states 'we've got you covered,' leading Plaintiff and Class members to believe that Cigna would conduct a thorough, fair, and objective review of their claims." (SAC ¶ 8.)

These assertions are not "particular facts explaining the circumstances of the fraud." As to the first theory, Plaintiffs do not identify what terms in their benefit plan support it. As to the second theory, Plaintiffs cannot seriously contend that an isolated phrase from www.cigna.com—which, in full context, states "Your health care needs change over the course of your lifetime. When they do, we've got you covered"— amounts to a legally-actionable promise by Cigna to review their claims in any particular way, or not to use a claims review process like PxDx. At any rate, that same Cigna website also has a disclaimer at the bottom which states "All insurance policies and group benefit plans contain exclusions and limitations." (Ex. A at 12.) A snippet from Cigna's website plainly cannot override plan benefit limitations.

Next, "plaintiffs alleging claims under the . . . UCL are required to plead and prove actual reliance on the misrepresentations or omissions at issue." *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. July 30, 2018) (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326-27 (2011)). Plaintiffs here make the boilerplate assertion that they supposedly "relied on the Cigna Defendants' misrepresentations" (SAC ¶¶ 43, 68, 78)—but not one of them alleges that they even saw

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

the "we've got you covered" phrase on Cigna's website or any alleged representations in the Cigna benefit plans before they decided to buy their health insurance.  (*See id.* ¶ 8.)  The UCL claim thus fails for this reason as well.

Finally, "in the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme."  *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).  Plaintiffs do not meet this requirement either.  They allege that "Cigna" (collectively) had allegedly "made deceptive and misleading representations" (SAC ¶ 8), but they do not identify the alleged role that Cigna Corporation versus Cigna Health and Life Insurance Company had played in the alleged fraud.  Dismissal is appropriate for this reason as well.  *See Swartz*, 476 F.3d at 765 ("general allegations that the 'defendants' engaged in fraudulent conduct" are insufficient); *Miller v. Taryle*, 2013 WL 12205851, at *5-6 (C.D. Cal. Sept. 10, 2013) (dismissing where plaintiff "has not differentiated the allegations to put each Defendant on notice of its alleged participation in the fraud").

### B.    Plaintiffs Fail To Plausibly Plead a UCL Claim Under Rule 8.

Even if Rule 9(b) did not apply, Plaintiffs have not plausibly alleged their Section 17200 claim under Rule 8.  In arguing that Cigna's conduct was "unlawful," Plaintiffs cite alleged violations of California Insurance Code § 790.03(h), California Code of Regulations title 10, § 2695.7, and California Health & Safety Code §1367.01(e) and (h(4).  (SAC ¶¶ 109-114.)  The first two cannot form the basis for a UCL claim because they are part of the Unfair Insurance Practices Act (UIPA), which "contemplate[s] only administrative enforcement by the Insurance Commission."  *Zhang v. Super. Ct.*, 57 Cal. 4th 364, 384 (2013).  Thus, "private UIPA actions are absolutely barred" and "a litigant may not rely on the proscriptions of section 790.03 as the basis for a UCL claim."  *Id.*  Likewise, "the regulations set forth in 10 C.C.R. section 2695.1 cannot be used as a predicate offense for an UCL claim of unlawfulness because those regulations are promulgated under the auspices of Insurance Code section 790.03(h).").[6]  *Height St. Skilled Care, LLC v. Liberty Mut. Ins. Co.*, 2022 WL 1665220, at *5 (E.D. Cal. May 25, 2022).

---

[6] 10 C.C.R. § 2695.1 is the preamble to these UIPA regulations, which also include Section 2695.7. *See Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, 2020 WL 3893395, at *7 (E.D. Cal. July 10,

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs' allegations that Cigna's use of PxDx to review claims violated California Health & Safety Code § 1367.01(e) and (h)(4) (*see* SAC ¶ 113) fare no better.  Section 1367.01(e) states:

> No individual, other than a licensed physician or a licensed health care professional who is competent to evaluate the specific clinical issues involved in the health care services requested by the provider, may deny or modify requests for authorization of health care services for an enrollee for reasons of medical necessity.

This regulation prohibits persons who are not competent health care professionals from denying or modifying services for medical necessity reasons.  As Plaintiffs acknowledge, the PxDx process allows Cigna's medical directors—doctors—to review claims and either approve or deny them.  (*See* SAC ¶ 1 (alleging that Cigna uses PxDx to allow its "***doctors*** to automatically deny payments in batches of hundreds or thousands at a time.").)  Plaintiffs do not allege that any individual other than a doctor or licensed health care professional reviewed their claims, which means they have not alleged a violation of this section.

Plaintiffs also try to support the "unlawful" prong with their allegation that Cigna's use of PxDx violated California Health & Safety Code Section 1367.01(h)(4)—by allegedly "fail[ing] to communicate to Plaintiffs and Class members in writing their decision to deny Plaintiffs' and Class members' claims and provide a clear and concise explanation of the reasons for the plan's decision, a description of the criteria or guidelines used, and the clinical reasons for the decisions regarding medical necessity, including the information as to how Plaintiffs and Class members may file a grievance with the plan[.]" (*Id.* ¶ 114.)  Plaintiffs have not plausibly pled a violation of this regulation either because they acknowledge that in denying their claims, Cigna sent them letters that explained why the procedure was not covered.  (*See id.* ¶ 34 (Kisting-Leung); *id.* ¶ 47 (Dababneh); *id.* ¶ 56 (Rentsch); *id.* ¶ 73 (Thornhill).)

Finally, Plaintiffs' attempts to rely on the "unfair" prong fail for two reasons.  First, Plaintiffs do not plead any distinct "unfairness" UCL theory separate and apart from their "unlawful" or "fraudulent" UCL theories.  (*See id.* ¶ 115.)  For the reasons above, Plaintiffs have not pled either of

---

2020) (finding that plaintiffs could not allege a violation of the unlawful prong based on 10 C.C.R. § 2695.7 because "neither Insurance Code section 790.03, nor its enabling regulation, 10 C.C.R. section 2695.1, can serve as the predicate offense for an 'unlawfulness' claim under the UCL.").

those two prongs.  Where "the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017).

Second, Plaintiffs do not offer any well-pled facts to support their "unfair" prong, even under ordinary Rule 8 pleading standards.  They assert that Cigna's use of PxDx "offend[s] established public policy and cause[s] harm to consumers that greatly outweighs any benefit associated with those practices" (SAC ¶ 115), but these are nothing more than "threadbare recitals of the elements of a cause of action" that do not satisfy Rule 8.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Finally, Plaintiffs also allege that Cigna's use of PxDx is unfair because it "constitute[s] a systematic breach of consumer contracts" (SAC ¶ 115)—but as explained *supra* at 11, Plaintiffs have not plausibly alleged any actual breach of contract here.

## IV.    ERISA Preempts Plaintiffs' State-Law Claims.

As the benefit plans of all four Plaintiffs show, all of them are subject to ERISA.  (*See* Exs. B-F.)[7]  Plaintiffs allege that Cigna's use of PxDx amounted to improper processing of their claims, as a result of which they allegedly did not receive their covered benefits under their plans.  (*See, e.g.*, SAC ¶ 44 (alleging that Cigna "evade[d] the legally required process for reviewing [Plaintiffs'] claims"); *id.* ¶ 1 (alleging that Cigna's use of PxDx was a "scheme" to "ultimately, [deny] the payments for necessary medical procedures owed to them under Cigna's health insurance policies").)  Plaintiffs, in effect, complain that they did not receive the benefits they were due under their ERISA-governed plans.  ERISA—which "provide[s] a uniform regulatory regime over employee benefit plans," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)—provides the exclusive framework for Plaintiffs to challenge such denials.

---

[7] Plaintiffs reference these plans (or "health insurance policies") repeatedly throughout the complaint (*see, e.g.*, SAC ¶ 1), and they all allege that they were "covered by a health insurance policy provided by the Cigna Defendants."  (*Id.* ¶¶ 13-16.)  These plans are thus incorporated by reference into the SAC.  *See Lopez*, 307 F. Supp. 3d at 1064.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

To assess conflict (or defensive) preemption, courts disregard the "label affixed" to a state-law claim, and instead focus on its substance to determine if it is a disguised claim for ERISA benefits. *Id.* at 214.  A state-law claim "relate[s] to" an employee benefit plan if it "has a reference to" or "an impermissible connection with ERISA plans." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319-20 (2016).  This impermissible connection can be shown "where the existence of an ERISA plan is a critical factor in establishing liability under a state cause of action," in which case "the state law claim is preempted." *Wise*, 600 F.3d at 1190.  State-law claims are also preempted when they "govern[] . . . a central matter of plan administration or interfere[] with nationally uniform plan administration," *Gobeille*, 577 U.S. at 319-20—and "payment of benefits" is, of course, "a central matter of plan administration." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 148 (2001); *accord Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86-87 (2020) (ERISA is "primarily concerned with preempting laws that require providers to structure benefit plans in particular ways, ***such as by requiring payment of specific benefits***").

The uniform regulatory regime that ERISA envisions would collapse if plaintiffs could "obtain remedies under state law that Congress rejected in ERISA." *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).  That is why "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209; *Sarkisyan v. CIGNA Healthcare of Cal., Inc.*, 613 F. Supp. 2d 1199, 1208 (C.D. Cal. 2009) ("to the extent that Plaintiffs' claims are intended to rectify a wrongful denial of benefits promised under an ERISA-regulated plan, and not to remedy a violation of a legal duty independent of ERISA, the claims are preempted."); *Gonzaba v. Bd. of Trs. of S. Cal. Const. Laborers*, 2013 WL 1694602, at *1 (S.D. Cal. Apr. 18, 2013) ("common law claims seek[ing] to recover such benefits purportedly due" under an ERISA plan are preempted).

There is no doubt that recovery of plan benefits is what Plaintiffs are seeking here.  The premise of their lawsuit is that Cigna allegedly used PxDx to deny them "payments for necessary medical procedures owed to them ***under Cigna's health insurance policies***" (SAC ¶ 1)—*i.e.*, payments allegedly owed under ERISA-governed benefit plans.  And it doesn't make a difference whether

- 17 -

Plaintiffs try to recover their plan benefits through a breach of contract claim, or on an unjust enrichment theory, or through the UCL—because the broad scope of ERISA preemption cannot be avoided that easily. *See, e.g.*, *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225-26 (9th Cir. 2005) (finding UCL claim preempted where "[plaintiff] sought benefits under the plan and did not receive them" because "these are precisely the kind of claims that the Supreme Court in *Davila* held to be pre-empted"); *Sarkisyan*, 613 F. Supp. 2d at 1205 (finding various state-law claims, including UCL, preempted because "ERISA plainly preempts Plaintiffs' claims to the extent that Plaintiffs seek redress for what they claim to be CIGNA's wrongful denial of benefits to their daughter").

Finally, to the extent Plaintiffs may argue that they are also disputing the way that Cigna processed their claims—*i.e.*, by allegedly using PxDx, and by Cigna's medical directors allegedly not reviewing the claims in enough detail (*see* SAC ¶ 24)—that theory would also be preempted because ERISA is the "exclusive vehicle" for challenges based on "improper processing of a claim for benefits." *See Dedeaux*, 481 U.S. at 51-52; *Sarkisyan*, 613 F. Supp. 2d at 1206 (finding Section 17200 claim "based on Cigna's alleged 'improper claims handling practices'" preempted); *Vang v. Geil Enters. Inc.*, 2023 WL 3168513, at *5 (E.D. Cal. Apr. 28, 2023) (finding claim based on "alleged improper withholding of benefits and the back dating [of] a notice required by law to be provided to [plaintiff]" preempted, "because these allegations are directly related to the administration of the [plan]").

## **CONCLUSION**

Cigna respectfully requests that the Court dismiss the complaint in its entirety.

///
///
///
///
///
///
///
///

CIGNA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-KJN

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

Dated:  February 1, 2024          Respectfully submitted,

By:    _/s/ Dmitriy Tishyevich_
          Dmitriy Tishyevich

          Joshua B. Simon (admitted *pro hac vice*)
          Warren Haskel (admitted *pro hac vice*)
          Dmitriy Tishyevich (SBN 275766)
          John J. Song (admitted *pro hac vice*)
          Chelsea Cosillos (admitted *pro hac vice*)
          jsimon@mwe.com
          whaskel@mwe.com
          dtishyevich@mwe.com
          jsong@mwe.com
          ccosillios@mwe.com
          M**cDERMOTT WILL & EMERY LLP**
          One Vanderbilt Avenue
          New York, NY 10017-3852
          Telephone:   (212) 547-5400
          Facsimile:    (212) 547-5444

          William P. Donovan, Jr. (SBN 155881)
          M**cDERMOTT WILL & EMERY LLP**
          wdonovan@mwe.com
          2049 Century Park East, Suite 3200
          Los Angeles, CA 90067-3206
          Telephone:   (310) 277-4110
          Facsimile:    (310) 277-4730
          wdonovan@mwe.com

          *Attorneys for Defendants The Cigna Group*
          *(f/k/a Cigna Corporation) and Cigna Health and*
          *Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2024, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notice of the filing to counsel of record.

*/s/ Dmitriy Tishyevich*
Dmitriy Tishyevich

CIGNA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-KJN