1    William P. Donovan, Jr. (SBN 155881)
     **McDERMOTT WILL & EMERY LLP**
2    wdonovan@mwe.com
     2049 Century Park East, Suite 3200
3    Los Angeles, CA 90067-3206
     Telephone:   (310) 277-4110
4    Facsimile:   (310) 277-4730

5    Joshua B. Simon*
     jsimon@mwe.com
6    Warren Haskel*
     whaskel@mwe.com
7    Dmitriy Tishyevich (SBN 275766)
     dtishyevich@mwe.com
8    John J. Song*
     jsong@mwe.com
9    Chelsea Cosillos*
     ccosillos@mwe.com
10   **McDERMOTT WILL & EMERY LLP**
     One Vanderbilt Avenue
11   New York, NY 10017-3852
     Telephone:   (212) 547-5400
12   Facsimile:   (212) 547-5444
     *Admitted *Pro Hac Vice*
13

14   *Attorneys for Defendants*
     *The Cigna Group (f/k/a Cigna Corporation) and*
     *Cigna Health and Life Insurance Company*

15

16                **UNITED STATES DISTRICT COURT**

17              **EASTERN DISTRICT OF CALIFORNIA**

18   SUZANNE KISTING-LEUNG, SAMANTHA          Case No. 2:23-cv-01477-DAD-CSK
     DABABNEH, RANDALL RENTSCH,
19   CRISTINA THORNHILL, AMANDA               **CIGNA'S REPLY IN SUPPORT OF ITS**
     BREDLOW, and ABDULHUSSEIN ABBAS,         **MOTION TO DISMISS THE THIRD**
20   individually and on behalf of all other similarly   **AMENDED CLASS ACTION COMPLAINT**
     situated,
21                                            Date:        December 17, 2024
                        Plaintiffs,          Time:        1:30 p.m.
22                                            Judge:       Hon. Dale A. Drozd
          v.                                 Courtroom: 4, 15th Floor
23                                            Third Am. Compl. Filed: June 15, 2024
     CIGNA CORPORATION, CIGNA HEALTH
24   AND LIFE INSURANCE COMPANY, and
     DOES 1 through 50, inclusive,
25
                        Defendants.
26

27

28

---

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

A.   Plaintiffs Kisting-Leung, Thornhill, and Bredlow Lack Article III Standing................2

B.   Plaintiff Rentsch's Claims Are Time-Barred........................................................4

C.   The ERISA § 502(a)(1)(B) Claim (Count I) Fails .................................................6

  1.   Plaintiffs Still Have Not Identified Any Plan Provisions that Cigna
       Breached. .......................................................................................6

  2.   Dababneh and Rentsch Have Not Shown Any Basis to Excuse Failure
       to Exhaust.......................................................................................8

D.   The ERISA § 502(a)(3) Claim (Count II) Should Be Dismissed .............................10

E.   The State-Law UCL Claim (Count III) Should Be Dismissed .................................11

  1.   The Entire Complaint Sounds in Fraud and Requires Rule 9(b)
       Particularity....................................................................................11

  2.   ERISA Preempts the UCL Claim. ..........................................................13

CONCLUSION...................................................................................................................15

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004)...................................................................13

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.,*
99 F. Supp. 3d 1110 (C.D. Cal. 2015) .........................................6, 8, 9

*Armstrong v. Hartford Life & Accident Ins. Co.,*
63 F. Supp. 3d 1191 (E.D. Cal. 2014)..........................................5

*Chuck v. Hewlett Packard Co.,*
455 F.3d 1026 (9th Cir. 2006) ....................................................8

*Clark v. Grp. Hospitalization and Med. Servs., Inc.,*
2010 WL 5093629 (S.D. Cal. Dec. 7, 2010)................................14

*Cleghorn v. Blue Shield of Cal.,*
408 F.3d 1222 (9th Cir. 2005) ....................................................13

*District Council 16 N. Cal. Health & Welfare Tr. Fund v. Sutter Health,*
2015 WL 2398543 (N.D. Cal. May 19, 2015)..............................14

*Falk v. Gen. Motors Corp.,*
496 F. Supp. 2d 1088 (N.D. Cal. 2007) .......................................12

*Fortier v. Anthem, Inc.,*
2020 WL 13304004 (C.D. Cal. Oct. 26, 2020) ............................11

*Foster v. Blue Shield of Cal.,*
2009 WL 1586039 (C.D. Cal. June 3, 2009) ...............................9

*Gabriel v. Alaska Elec. Pension Fund,*
773 F.3d 945 (9th Cir. 2014) ......................................................10

*Heimeshoff v. Hartford Life & Accident Ins. Co.,*
571 U.S. 99 (2013).......................................................................5

*Hodsdon v. Mars, Inc.,*
891 F.3d 857 (9th Cir. 2018) ......................................................12, 13

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009) ....................................................12

*Knudsen v. MetLife Grp., Inc.,*
—F.4th—, 2024 WL 4282967 (3d Cir. Sept. 25, 2024)..............3

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK

*Koblentz v. UPS Flexible Emp. Benefit Plan*,
    2013 WL 4525432 (S.D. Cal. Aug. 23, 2013) ......................................................5

*LD v. United Behav. Health*,
    508 F. Supp. 3d 583 (N.D. Cal. 2020) ..............................................................7

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ..........................................................................2

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).........................................................................................3

*RJ v. Cigna Behav. Health, Inc.*,
    2021 WL 1110261 (N.D. Cal. Mar. 23, 2021) ...............................................6, 7

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ..........................................................................2

*Saloojas, Inc. v. Cigna Healthcare of Cal., Inc.*,
    2022 WL 5265141 (N.D. Cal. Oct. 6, 2022).....................................................12

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,
    770 F.3d 1282 (9th Cir. 2014) ..........................................................................8

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020).........................................................................................2

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) ..................................................................................13

*United States v. Adventist Health*,
    2020 WL 2522114 (E.D. Cal. May 18, 2020) ...................................................4

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) ..........................................................10

*Wit v. United Behav. Health*,
    79 F.4th 1068 (9th Cir. 2023) ...........................................................................4

*Zelhofer v. Metro. Life Ins. Co.*,
    2017 WL 1166134 (E.D. Cal. Mar. 29, 2017), *report and recommendation adopted*,
    2017 WL 3282860 (E.D. Cal. Aug. 2, 2017).................................................5, 6

**Statutes**

Cal. Health & Safety Code § 1367.01...........................................................................13, 14

ERISA § 404(a)(1)(A) ..................................................................................................10

ERISA § 502(a)(1)(B)...................................................................................................11

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

ERISA § 502(a)(3) ............................................................................................................10, 11

ERISA § 503 ...............................................................................................................................9

**Other Authorities**

29 C.F.R. § 2560.503-1(h) .........................................................................................................9

Fed. R. Civ. P. 9(b) .......................................................................................................1, 5, 11, 12

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Cigna respectfully submits this reply in support of its motion to dismiss Plaintiffs' Third Amended Complaint ("TAC").[1]

**INTRODUCTION**

Despite filing three complaints, Plaintiffs still cannot point to facts to fix two fundamental flaws that Cigna identified from the beginning. <u>First</u>, Plaintiffs' theory of injury is that they "are Cigna insureds who had claims denied by Cigna's PxDx algorithm" (Opp. 3)—but Cigna showed through Dr. Kessel's sworn affidavit that Plaintiffs Kisting-Leung, Thornhill, and Bredlow did not actually have their claims denied through PxDx (Mot. 5-6), and Plaintiffs have not rebutted this affidavit with any contrary evidence. They try to dismiss Dr. Kessel's affidavit as "speculation" (Opp. 3), but as courts have recognized, that affidavit is the precise type of evidence that courts use to evaluate Article III standing. Dr. Kessel's unrebutted affidavit refutes Kisting-Leung's, Thornhill's, and Bredlow's allegations that they each "had claims denied by Cigna's PxDx" (*id.*)—which means they lack standing. These three Plaintiffs' failure to rebut Cigna's evidence warrants dismissal of their claims.

<u>Second</u>, Plaintiffs' core theory is that Cigna's use of PxDx unlawfully deprived them of "***covered*** health services" (TAC ¶ 25)—*i.e.*, they contend that Cigna used PxDx to improperly deny payment for services that should have been covered under their benefit plans. But not one of the five named Plaintiffs has pled any plan terms to show that Cigna improperly denied even a single such covered service. And Plaintiffs' theory that Cigna's use of PxDx is ***itself*** a breach of plan terms is likewise unsupported by any terms from any of the Plaintiffs' benefit plans.

<u>Third</u>, Plaintiffs offer no real response to Cigna's other arguments either. Their entire complaint is subject to Rule 9(b) because they allege that Cigna's use of PxDx was a secret scheme to defraud, but Plaintiffs cannot identify any actual misrepresentations, as Rule 9(b) requires. Their ERISA fiduciary duty claim fails for various reasons, including because they have not pled that Cigna violated plan terms or the ERISA statute. And their UCL claim fails for multiple reasons too, including

---

[1] Unless otherwise noted, all emphasis has been added, and all citations, alterations, and internal quotation marks have been omitted. References to "Ex. __" are to the exhibits attached to the Declaration of Dmitriy Tishyevich (Dkt. 46-1). "Kessel Decl." refers to the Declaration of Dr. Julie B. Kessel (Dkt. 46-14); "Mot." refers to Cigna's Motion to Dismiss the Third Amended Class Action Complaint (Dkt. 46), and "Opp." refers to Plaintiffs' Opposition to Defendants' Motion to Dismiss (Dkt. 49). All capitalized terms have the meaning provided to them in Cigna's Motion.

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

preemption, because Plaintiffs rely on that claim to seek coverage for plan benefits—which makes it the prototypical ERISA benefits claim.

Plaintiffs have now had three tries to plead their claims, but these core pleading deficiencies remain. Plaintiffs have not given this Court any reason to think that they can fix these problems with yet more amendments, so the Court should dismiss all of Plaintiffs' claims accordingly.

### A.   Plaintiffs Kisting-Leung, Thornhill, and Bredlow Lack Article III Standing.

"There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020). Cigna showed that Plaintiffs Kisting-Leung, Thornhill, and Bredlow have no Article III standing under their own theory of their injury, and those three Plaintiffs offer no evidence in response. All their claims should be dismissed accordingly.

Cigna submitted a sworn affidavit from a Cigna medical director, Dr. Kessel, which showed that Cigna did not use PxDx to deny the claims that Plaintiffs Kisting-Leung, Thornhill, and Bredlow identified in the TAC. (Mot. 5-6, Kessel Decl. ¶¶ 12, 15, 22-23.) Plaintiffs' only response is to call that affidavit "speculation." (Opp. 3.) That is not enough. After Cigna challenged Plaintiffs' jurisdictional allegations with "evidence outside the pleadings," *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014), the burden shifted to Plaintiffs: when so challenged, "the plaintiff *must* support her jurisdictional allegations with competent proof[.]" *Id.*; *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (once the moving party "present[s] affidavits or other evidence" challenging jurisdictional allegations, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction").

Plaintiffs have not met their burden to support their jurisdictional allegations with competent proof. In the TAC, Plaintiffs explicitly said that their injury was the result of having their claims denied through PxDx. (*See, e.g.*, TAC ¶¶ 6, 111 (alleging that they all "had their claims automatically rejected by Cigna using the PxDx system").) Dr. Kessel's affidavit showed that Kisting-Leung's, Thornhill's, and Bredlow's claims in fact were not denied through PxDx, and those three Plaintiffs offer no evidence to dispute that declaration. With nothing in response, these Plaintiffs have no "evidence necessary to satisfy [their] burden of establishing subject matter jurisdiction," *Safe Air*, 373 F.3d at 1039, so the Court should dismiss all their claims.

1    Plaintiffs' harm theory is similar to what the Third Circuit recently found wanting in *Knudsen*

2    *v. MetLife Group, Inc.*, —F.4th—, 2024 WL 4282967 (3d Cir. Sept. 25, 2024). There, plaintiffs argued

3    that MetLife improperly kept about $65 million in PBM drug rebates that plaintiffs said were plan

4    assets, and the district court dismissed for lack of Article III standing based on "the Complaint's lack

5    of factual matter that MetLife's ERISA violations either caused Plaintiffs to pay more for their health

6    insurance benefits or deprived them of those benefits." *Id.* at *3. The Third Circuit affirmed, finding

7    that plaintiffs' "general[]" allegations "that their out-of-pocket costs . . . increased" were insufficient

8    because they "do not allege which out-of-pocket costs increased, in what years, or by how much." *Id.*

9    at *7. As the Third Circuit explained, "allegations of this sort are necessary because Plaintiffs must

10   show that the purported violative conduct was the but-for-cause of their injury in fact, namely, an

11   increase in their out-of-pocket costs above what they would have been if MetLife had deposited the

12   rebate monies into the Plan trust." *Id.* With no such allegations, plaintiffs "failed to allege financial

13   harm that is 'actual or imminent,' as opposed to theoretical, conjectural[,] or hypothetical." *Id.* at 8.

14   Just so here. Plaintiffs contend that Cigna's use of PxDx deprived them of plan benefits, but

15   they have not identified even a single such improper denial, given that none of the claims they identify

16   were actually denied through PxDx. *Id.* at *3 (no allegations in *Knudsen* that MetLife's conduct

17   "deprived [plaintiffs] of [covered] benefits"); *supra* at 2. Plaintiffs also argue that they overpaid for

18   Cigna-administered health insurance, but like in *Knudsen*, they "do not allege which out-of-pocket

19   costs increased, in what years, or by how much." 2024 WL 4282967, at *7. Such "speculative

20   allegations" (*id.* at *8) cannot confer Article III standing.

21   Plaintiffs' opposition does not change this outcome. They argue that Cigna's standing

22   challenge is "premature" (Opp. 3), but this ignores that "[t]he party invoking federal jurisdiction"

23   (here, Plaintiffs) "bears the burden of establishing" the elements of Article III standing at the outset of

24   the case. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

25   Plaintiffs also argue that Dr. Kessel's affidavit is not "competent proof," but they do not

26   explain why. They contend that it "at most . . . establishes that certain Plaintiffs' claims *may not* have

27   been adjudicated with PXDX" (Opp. 4-5, emphasis in original), but Dr. Kessel's affidavit definitively

28   says that her "investigation, including [her] review of Ms. Kisting-Leung's, Ms. Thornhill's, and

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

Ms. Bredlow's Claims documents, shows that their Claims were **not** denied through Cigna's PxDx review process." (Kessel Decl. ¶ 5.)  It is not enough for Plaintiffs to baldly assert—with no evidence or support—that Cigna improperly denied their claims through PxDx, especially not in light of Cigna's uncontroverted evidence that proves otherwise.

Plaintiffs' reliance on *Wit v. United Behavioral Health*, 79 F.4th 1068 (9th Cir. 2023) to show standing is also misplaced.  There, the Ninth Circuit found that plaintiffs pled injury for their ERISA fiduciary duty claim by showing that UBH used certain guidelines for generally accepted standards of care that were more restrictive than what their plans required.  *See id.* at 1082-83 (plaintiffs alleged that UBH administered those guidelines "in conflict with plan terms," which harmed plaintiffs by creating "the risk that their claims will be administered under a set of Guidelines that impermissibly narrows the scope of their [plan] benefits[.]").  In other words, the *Wit* plaintiffs' showing of harm was:  (a) based on UBH's application of specific guidelines—which UBH did not contest had actually been applied to plaintiffs' claims—and then (b) also tethered that harm to specific plan terms.

Plaintiffs have not made either showing here.  As explained further below, not one Plaintiff has identified any plan terms to show that Cigna's use of PxDx resulted in Cigna incorrectly denying even a single plan-covered benefit, despite Cigna repeatedly pointing out the absence of any such allegations.  (Mot. 10-11.)  But just as important, unlike UBH's guidelines in *Wit*, Plaintiffs Kisting-Leung, Thornhill, and Bredlow have not shown that Cigna even used the PxDx claims-processing tool to deny their claims.  *Wit* thus does not help Plaintiffs.

**B.    Plaintiff Rentsch's Claims Are Time-Barred.**

Cigna showed that Rentsch's claims are time-barred because his ERISA benefit plan has a three-year limit to bring ERISA claims and because his UCL claim is subject to a four-year statute of limitation:  Rentsch's last claim was denied on February 27, 2018 (TAC ¶ 72), and plaintiffs did not file the original complaint until July 24, 2023 (Dkt. 1), more than five years later.  (Mot. 8-9.)  None of Rentsch's responses staves off dismissal.

<u>First</u>, Plaintiffs do not dispute that an ERISA plan can mandate a shorter time to bring a claim than the default time under the ERISA statute, nor do they dispute that Rentsch's plan has such a shorter three-year limit—so they have waived those arguments.  *See, e.g.*, *United States v. Adventist*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Health*, 2020 WL 2522114, at *6 (E.D. Cal. May 18, 2020) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.").

Second, Plaintiffs' argument that "these limitations periods only start to run after the plaintiff's claim accrues" (Opp. 5) ignores that "a participant and a plan may agree by contract to a particular limitations period, even one that starts to run *before* the cause of action accrues, as long as the period is reasonable." *Heimshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105-06 (2013). Thus, as the Supreme Court recognized, the parties may "agree not only to the length of a limitations period but also to its commencement." *Id*. at 107. That is what Rentsch did through his benefit plan: he agreed to a limitations period that starts to run "after [his] claim is submitted," not when the cause of action may have accrued. (*See* Ex. B at 46, Ex. C at 48, Ex. D at 48-49 (Lennar Plans).) Thus, the contractual limitation here "begins to run as defined by the plan's terms." *Koblentz v. UPS Flexible Emp. Benefit Plan*, 2013 WL 4525432, at *3 (S.D. Cal. Aug. 23, 2013). Finally, Rentsch does not argue that this 3-year time to bring claims is unreasonably short, nor could he. *See, e.g.*, *id.* (collecting cases that found "90-day" and "six-month" limitation periods "reasonable and enforceable"). The Court should enforce this 3-year statute of limitations to which Rentsch contractually agreed. *See Armstrong v. Hartford Life & Accident Ins. Co.*, 63 F. Supp. 3d 1191, 1196-98 (E.D. Cal. 2014) (enforcing a three-year limitations period within a plan contract) (citing *Heimshoff*, 571 U.S. at 108).

Third, Rentsch's argument that his ERISA claims should be subject to a six-year limitations period—running "from the date of discovery" that applies to "cases of fraud or concealment" (Opp. 6)—does not work. This once again ignores that Rentsch contractually agreed to a different limitations period from these default periods, including a different start date (the date of his claim submission) for that period to run. *See Heimshoff*, 581 U.S. at 107. And even if the six-year period for "fraud or concealment" had any bearing here (and it does not), Rentsch has not made any showing "that the Plan and/or Claims Administrator either attempted to defraud the plaintiff or affirmatively concealed its fiduciary breach," as he must. *Zelhofer v. Metro. Life Ins. Co.*, 2017 WL 1166134, at *4 (E.D. Cal. Mar. 29, 2017), *report and recommendation adopted*, 2017 WL 3282860 (E.D. Cal. Aug. 2, 2017). To the contrary, as Cigna pointed out already, Plaintiffs' allegations that Cigna misrepresented its use of PxDx are not rooted in any facts and they fall short of Rule 9(b). (Mot. 17-19.)

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

<u>Finally</u>, Rentsch's assertion that he did not know about his potential claims until after the ProPublica article came out in March 2023 is again irrelevant (because Rentsch's plan overrides this default discovery rule), and also contradicted by Rentsch's own allegations in any event.  (*See* TAC ¶ 63 (alleging that "[o]n or around June 13, 2016, Cigna informed Mr. Rentsch in writing that his claim was denied because the treatment was 'not medically necessary.'  The denial letter indicated that the ***PXDX algorithm reviewed his claim***.").)  Plaintiffs cannot have it both ways:  they cannot simultaneously argue that Cigna "deliberately concealed its use of PXDX," while at the same time alleging facts which show that Rentsch's denial letter had put him on notice about this PxDx denial as early as June 2016.  Rentsch's ERISA claims are thus subject to the 3-year statute of limitations (which he has not satisfied), and his UCL claim should also be dismissed as time-barred because Rentsch was on notice for more than four years that his claim was denied through PxDx.[2]

## C.     The ERISA § 502(a)(1)(B) Claim (Count I) Fails

### 1.     Plaintiffs Still Have Not Identified Any Plan Provisions that Cigna Breached.

Plaintiffs carried the same fundamental flaw through every iteration of their complaint:  they must "allege facts that establish . . . the provisions of the plan that entitle [them] to benefits," but they offer no such facts.  *See Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1155 (C.D. Cal. 2015).  Plaintiffs have not pled facts to show that Cigna's use of PxDx itself violated any plan terms (for example, an explicit plan term that prohibits Cigna from using a tool like PxDx), or that Cigna's use of PxDx resulted in improper denial of covered benefits under the plans.  Having failed to allege a violation of plan terms, Plaintiffs have not stated Count I.

In response, Plaintiffs argue that they need not "cite to a specific Plan term or provision by page or paragraph," quoting *RJ v. Cigna Behavioral Health, Inc.*, 2021 WL 1110261, at *3-4 (N.D. Cal. Mar. 23, 2021).  But in *RJ*, plaintiffs ***did*** plead a plan term that was allegedly violated.  *See id.* at *3 (Plaintiffs alleged that the plan required Cigna to pay certain claims "according to MRC-1 methodology which translates to 100% of billed charges," and the court found that this was enough to

---

[2] The Opposition does not provide any response to Cigna's arguments about Plaintiff Abbas (Mot. 5, 11-12, 15-16), so Plaintiffs have waived those arguments.  *Adventist Health*, 2020 WL 2522114, at *6 ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.").

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK

plead "a Plan provision requiring Cigna to pay benefits calculated according to the MRC-1 methodology.") Plaintiffs have no comparable allegations here. They assert that under plan terms, "Cigna must provide benefits for covered health services and pay all reasonable and medically necessary expenses incurred by a covered member." (TAC ¶ 25, Opp. 8.) But Plaintiffs cite no plan language in support, and these general coverage obligations are simply not a plan prohibition against Cigna using a claims review tool like PxDx.

Plaintiffs' reliance on *LD v. United Behavioral Health*, 508 F. Supp. 3d 583 (N.D. Cal. 2020), fares no better. As in *RJ*, the *LD* plaintiffs pointed to actual plan terms to show that they did not receive what their benefit plans promised. *See id.* at 593-94 (finding that plaintiffs had sufficiently pled that UBH's use of a third-party tool to price out-of-network behavioral claims "did not generate rates that are consistent with ***the plans' requirements***" for various reasons). In fact, *LD* specifically distinguished other cases on this basis because there, "the plaintiff did not identify the plan terms that the defendant allegedly breached." *Id.* at 594. Once again, Plaintiffs have no such allegations here.

<u>Next</u>, Plaintiffs argue that Cigna should have covered Kisting-Leung's claim for transvaginal ultrasound under a Cigna coverage policy. (Opp. 8; TAC ¶ 42.) But that coverage policy does not show that Cigna's denial was contrary to plan terms. To the contrary, the policy specifically says that it can be superseded by the terms of a member's benefit plan. (TAC ¶ 42 n.5 ("[A] customer's benefit plan document may contain a specific exclusion related to a topic addressed in a Coverage Policy. In the event of a conflict, a customer's benefit plan document ***always supersedes*** the information in the Coverage Policies.").) And Kisting-Leung's benefit plan in fact did not cover her transvaginal ultrasound tests notwithstanding this coverage policy, as her EOBs told her. (*See* Ex. 1 at 3, Ex. 2 at 3 (EOBs advising Kisting-Leung that "the submitted code is denied because it's related to a service that your plan doesn't cover.").) Plaintiffs do not point to any plan provisions in Kisting-Leung's benefit plan that required coverage for transvaginal ultrasounds. Plaintiffs thus have not shown that Kisting-Leung (or any other Plaintiff) had a covered benefit that Cigna improperly denied.

<u>Finally</u>, Plaintiffs' only other argument is that their benefit plans supposedly "guarantee that a medical director will consider an individual's illness or injury, related treatment plan, prior medical history, and other nuances" on a claim-by-claim basis when considering medical necessity. (Opp. 9.)

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK

That is not what the benefit plans actually say, though.  As Cigna already explained, Plaintiffs' benefit plans say instead that "procedures for determining Medical Necessity *vary*, according to the type of service or benefit requested." (Mot. 12 (collecting plan language).)  Because Plaintiffs try to read a requirement into their plans that does not exist, they have not stated an ERISA benefits claim.

### 2.   Dababneh and Rentsch Have Not Shown Any Basis to Excuse Failure to Exhaust.

Dababneh and Rentsch do not dispute that they failed to exhaust their administrative remedies, and they do not dispute that where "a failure to exhaust is clear on the face of the complaint" as it is here, "the defense may be brought in a motion to dismiss." (Mot. 12-13 (citation omitted).)  They instead argue this failure should be excused because Cigna did not have adequate claims procedures and also because appeals would have been futile.  This is also unavailing.

First, Plaintiffs have not shown that Cigna's had inadequate claims procedures.  They argue that Cigna "failed to disclose the true reason for Plaintiffs' claim denials: the PxDx algorithm" (Opp. 10)—but PxDx is a claim review tool through which Cigna checks coverage limitations; it is not a *substantive* reason why Cigna denied Plaintiffs' claims, and Plaintiffs do not plausibly allege otherwise.  And as Cigna already showed, each Plaintiff received EOBs and letters that identified the service that was denied, as well as the clinical coverage policy on which Cigna relied to deny those services. (Mot. 11.)  Their EOBs are thus a far cry from those that *Almont*, on which Plaintiffs rely, found insufficient.  99 F. Supp. 3d at 1181 (finding UBH's EOB's "substantively deficient" where they did not disclose "the reason a claim was being partially or fully denied, and the plan provisions and any internal rules or guidelines that were being used to deny the claim.")  Plaintiffs thus have not plausibly shown any procedural flaws in their EOBs that would indicate a lack of proper claims handling procedures, and any of their complaints are *de minimis* at best.  *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014) ("mere de minimis violations" of claims procedures do not establish exhaustion); *Chuck v. Hewlett Packard Co.,* 455 F.3d 1026, 1032 (9th Cir. 2006) ("we have held that substantial compliance with these requirements is sufficient").

Second, Plaintiffs argue that "plan administrators must also provide full and fair review of adverse benefits determinations" and that "without details about the PXDX algorithm," Plaintiffs

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

"lacked the ability to contest the denial of their claims fully and fairly." (Opp. 10-11.) But they cite nothing to show that ERISA requires Cigna to describe in detail each and every step of the way that Cigna adjudicates incoming claim (for example, by having to describe whether it uses a claims review tool like PxDx). Cigna also showed that Plaintiffs' EOBs and letters described the basis for Cigna's determinations, and Plaintiffs' plans and their letters then also laid out each step of the appeals procedures. (Mot. 11-12.) Finally, Section 503's "full and fair review" requirement only comes into effect *after* a claim has been denied, 29 C.F.R. § 2560.503-1(h), Mot. 15, and Cigna's use of PxDx to identify non-covered services that Cigna had the right to deny does not implicate that requirement.

Third, Dababneh and Rensch have not pled facts to show that it would have been futile for them to appeal their claims. "The futility exception is narrow—the plan participant must show that it is certain that her claim will be denied on appeal, not merely that she doubts that an appeal will result in a different decision." *Almont*, 99 F. Supp. 3d at 1179; *see also Foster v. Blue Shield of Cal.*, 2009 WL 1586039, at *5 (C.D. Cal. June 3, 2009) ("a Plan's refusal to pay does not, by itself, show futility").

Dababneh and Rensch do not even try to argue that they have shown a certainty of denial with respect to their own denials, conceding the point. To the contrary, Cigna demonstrated that their EOBs and letters put both Dababneh and Rensch on notice that their claims were being denied as not medically necessary, and they also put both those Plaintiffs on notice about how to appeal. (*See* Exs. B-D at 45-49 (Lennar Plans); Ex. F at 57-59 (Sunrun Plan); Exs. J, L (Dababneh and Rentsch letters at 2-4).) Dababneh and Rentsch *chose* not to appeal, and that choice should not be excused here.

Unable to show that they exhausted their administrative remedies, Dababneh and Rensch pivot. They argue that they can "demonstrate futility by pointing to a similarly situated plaintiff who exhausted administrative remedies to no avail," and they say that Kisting-Leung "repeatedly appealed Cigna's decision to deny coverage for two transvaginal ultrasounds[.]" (Opp. 12.) But Kisting-Leung is not similarly situated to Dababneh and Rentsch, for multiple reasons: (1) she did not have her ultrasound claims denied through PxDx (Kessel Decl. ¶ 10); and (2) her benefit plan did not cover those ultrasounds, as her EOBs made clear. (*Supra* at 7.) Plaintiffs also point to Bredlow, but she too is differently situated: (1) Bredlow also did not have a PxDx denial (Mot. 6); and (2) Bredlow's claim was denied because "the submitted code for the procedure was 'missing or invalid'" (TAC ¶ 87), the

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

EOB invited her to "correct the information and re-submit the claim" (Ex. 13), and she did not provide that corrected information. Dababneh's and Rensch's claims, on the other hand, were denied because the "requested service(s) [did] not meet the definition of medical necessity found in [their] benefit plan[s]," unlike Kisting-Leung and Bredlow. (Exs. J & L.) Thus, neither Dababneh or Rensch is similarly situated to Kisting-Leung or Bredlow. *Cf. In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1041 (C.D. Cal. 2011) (finding plaintiffs were similarly situated because all of their claims were allegedly underpaid "based on flawed Ingenix UCR data[.]")

### D. The ERISA § 502(a)(3) Claim (Count II) Should Be Dismissed

Cigna showed that Count II should be dismissed for multiple reasons: (1) Plaintiffs have not shown that Cigna denied even a single claim that it did not have the right to deny, and they cannot possibly show that Cigna breached its fiduciary duties by denying non-covered claims; (2) Plaintiffs did not show that Cigna's use of PxDx violated the ERISA statute; and (3) their Section 502(a)(3) claim is duplicative of their benefits claim. (Mot. 16-17.) Plaintiffs' responses are unavailing.

First, a plaintiff with a Section 502(a)(3) claim must show "that there is a remediable wrong, *i.e.*, that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan," *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014), but Plaintiffs have not made this showing. As discussed both in Cigna's opening brief and above, they have not identified any plan provision that prohibits Cigna from using a claims review tool like PxDx. (Mot. 10-12, *supra* at 6.) They argue that Cigna's use of PxDx somehow breached Cigna's duty of loyalty (Opp. 14-15), but even the ProPublica article on which Plaintiffs rely says that the PxDx tool "simply allowed Cigna to cheaply identify claims that it had a right to deny"—*i.e.*, to deny non-covered claims. (*See* https://perma.cc/4RPS-5QL3.) The goal of checking claims for plan coverage in a cost-efficient way through PxDx is not a violation of Cigna's fiduciary duties. Just the opposite: 29 U.S.C. § 1104(a)(1)(A) requires fiduciaries to discharge their duties with respect to a plan "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." Plaintiffs' allegations do not show that Cigna's use of PxDx is anything other than a legitimate way of "defraying reasonable expenses" of adjudicating claims.

Second, Plaintiffs argue that they have pled their Section 502(a)(3) claim because "where a

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

denial of benefits was willful and part of a larger systematic breach of fiduciary obligations, a beneficiary can bring a suit for breach of fiduciary duty." (Opp. 14.)  This fails for multiple reasons— most fundamentally because Plaintiffs have not plausibly identified even a ***single*** claim that Cigna denied in violation of plan terms, much less plead facts to show that any such denials were "willful" or "part of a larger systematic breach."  Similarly, Plaintiffs argue that "denying claims in batches and without review is inconsistent with Cigna's obligation to provide benefits where benefits are owed" (*id.*), but this again simply assumes that Cigna used PxDx to deny Plaintiffs the benefits they were "owed" under their plans—with no facts to support this assumption.

Third, Plaintiffs again argue that their EOBs did not comply with ERISA requirements and that Cigna did not "provide reasonable claims procedures" or "full and fair review" (*id.* at 15), but Cigna already addressed these arguments both in its opening motion and again above.  (Mot. 15-16; *supra* 8-9.)  Neither the ERISA statute nor Plaintiffs' plans requires Cigna to provide more detail than the EOBs and the PxDx denial letters already indisputably provided:  the basis for the denial (a Cigna coverage policy or plan limitations), and how to appeal.  Plaintiffs cannot simply make up new requirements that are not part of their plans or part of the ERISA statute, and then argue they should be able to bring a Section 502(a)(3) claim based on Cigna's non-compliance with these made-up rules.

Finally, Plaintiffs cannot maintain their Section 502(a)(3) claim because it is both duplicative of their Section 502(a)(1)(B) benefits claim and because it also effectively seeks money damages.  As Cigna showed, courts in this circuit dismiss Section 502(a)(3) claims on the pleadings where there is "little functional daylight" between a plaintiff's theory of liability for his or her Section 502(a)(1)(B) and 502(a)(3) claims.  *Fortier v. Anthem, Inc.*, 2020 WL 13304004, at *4 (C.D. Cal. Oct. 26, 2020) (Mot. 16-17).  That's the situation here—Plaintiffs' theory of liability under both provisions is that Cigna supposedly violated plan terms and the ERISA statute by using PxDx, which they argue results in non-payment of covered benefits.  There is no "functional daylight" between these theories of liability, and the Section 502(a)(3) claim should be dismissed accordingly.

### E.    The State-Law UCL Claim (Count III) Should Be Dismissed

1.    The Entire Complaint Sounds in Fraud and Requires Rule 9(b) Particularity.

Plaintiffs do not dispute that their entire complaint sounds in fraud; even the Opposition

continues to insist that Cigna supposedly engaged in fraudulent conduct. (*See* Opp. 6-7 ("Plaintiffs allege 'fraudulent activity or concealment' by Cigna").) Thus, Plaintiffs' UCL unlawful and unfair claims must be pled with Rule 9(b) particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (where plaintiff "allege[s] a unified course of fraudulent conduct," "the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)"); *Saloojas, Inc. v. Cigna Healthcare of Cal., Inc.*, 2022 WL 5265141, at *9 (N.D. Cal. Oct. 6, 2022) (noting that provider-plaintiff's UCL "claim invokes each prong of unfair competition" and applying Rule 9(b) to the entire UCL claim because "Saloojas's complaint undoubtedly sounds in fraud"). Here, Plaintiffs admit their "UCL claim is based on both Cigna's omission of its use of the PXDX algorithm and its affirmative misrepresentations in the contract and on their website." (Opp. 17-18.) Plaintiffs' complaint turns on a unified course of conduct that they themselves characterize as fraudulent, so they must plead their UCL claim with particularity. They fail to do so.

Plaintiffs' argument that Cigna made affirmative misrepresentations fails on the most critical axis: the "what." *Kearns*, 567 F.3d at 1124. <u>First</u>, Plaintiffs again fail to identify any provisions in the benefit plans where Cigna promised not to use a claims review tool like PxDx to adjudicate incoming claims. (*See* Section I.C.) <u>Second</u>, Plaintiffs' argument that the four words on Cigna's website "we've got you covered" somehow creates an actionable legal promise not to use PxDx lacks any support. Plaintiffs do not offer a plausible explanation of how those general words are supposed to be a promise that Cigna would not use PxDx to review their claims, nor do they even explain what exactly those four words are supposed to convey to Cigna members.

<u>Third</u>, Plaintiffs now argue that Cigna supposedly made fraudulent omissions in describing its use of PxDx. This does not work because "to be actionable the omission must be contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose*." *Hodson v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis in original); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) (pleading fraud by omission requires allegations that the defendant had a duty to disclose). Plaintiffs do not explain why Cigna had a duty to explain the inner workings of its claims review processes, including having to disclose whether Cigna may use a tool like PxDx to check claims for compliance with plan coverage.

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK

California UCL caselaw sets forth specific requirements to plead "a UCL omission claim," including by alleging "that the omission was material," that "the defect was central to the product's function," and also pleading at least "one of the four *LiMandri [v. Judkins*, 60 Cal. Rptr. 2d 539 (Cal. Ct. App. 1997)] factors." *Hodsdon*, 891 F.3d at 863. Plaintiffs have not alleged any of those requirements in their complaint, and they cannot bring this omissions-based UCL theory now.

Finally, Plaintiffs have not shown that they adequately pled reliance—another required UCL element. (Mot. 19.) As Cigna pointed out, no Plaintiff alleges that they even saw the "we've got you covered" phrase on Cigna's website or that they saw any specific alleged misrepresentation in their benefit plan before they decided to buy their health insurance (*id.*), and Plaintiffs do not dispute this point. They argue they would not have enrolled with Cigna "but-for the misrepresentations" (Opp. 18), but they do not support this assertion with facts. To plead UCL reliance in a fraud case, "a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct[.]" *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009). Here, not one of the Plaintiffs has alleged that he or she read the phrase "we've got you covered," understood that phrase to mean that Cigna would not use PxDx to review their claims, and then decided to enroll in a Cigna-administered plan as a result of that understanding. With no such allegations, there is no UCL reliance.

### 2. ERISA Preempts the UCL Claim.

Cigna showed that Plaintiffs' UCL theory is just another way for them to argue that they did not receive their benefits under their ERISA-governed plans. (Mot. 23; *e.g.*, TAC ¶ 1 (alleging that Cigna used PxDx to deny payments for services "owed to them under Cigna's health insurance policies"—*i.e.*, the benefit plans).) That is a prototypical ERISA-preempted claim. *See Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225-26 (9th Cir. 2005) (finding UCL claims preempted where plaintiff "sought benefits under the plan and did not receive them," because "these are precisely the kind of claims that the Supreme Court in *Davila* held to be pre-empted").

Plaintiffs argue that rather than seeking plan benefits, they supposedly seek to enforce "duties [that] are imposed by the UCL and a California insurance statute, Section 1367.01." (Opp. 22.) But this ignores Plaintiffs' own allegations in the TAC. Courts look beyond the "label affixed" to state-law claims, and they instead focus on the substance to determine if the claim is preempted by ERISA.

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004).  Here, the TAC makes it clear that Plaintiffs' UCL claim in fact seeks ERISA-covered benefits:  Plaintiffs contend that as a result of Cigna's alleged violation of the UCL, Plaintiffs "have been injured in fact and suffered lost money in that Defendants failed to provide benefits ***owed to their insureds under the insurance policies Defendants issued***" (*i.e.*, under the ERISA-governed benefit plans).  (TAC ¶ 150.)  And the TAC also makes clear that the UCL relief that Plaintiffs seek would effectively require Cigna to pay their plan-covered benefits.  (*Id.* ¶ 154 (seeking an order "enjoining Defendants from denying benefits owed to Cigna insureds[.]").)  Plaintiffs cannot use UCL as a vehicle to recover benefits from their ERISA-governed plan—that is precisely the point of ERISA preemption.

Plaintiffs rely on *District Council 16 Northern California Health & Welfare Trust Fund v. Sutter Health*, 2015 WL 2398543 (N.D. Cal. May 19, 2015), and *Clark v. Group Hospitalization and Medical Services, Inc.*, 2010 WL 5093629 (S.D. Cal. Dec. 7, 2010), to argue that UCL claims are not always preempted, but those cases are inapposite.  *District Council* concerned **complete** preemption (an issue of jurisdiction) rather than conflict preemption on which Cigna relies, so it has no bearing on Cigna's argument.  *See* 2015 WL 2398543, at *2 ("Unlike conflict preemption, complete preemption is really a jurisdictional rather than a preemption doctrine[.]").

And in *Clark*, the court concluded that "even if the UCL claim relates to the ERISA Plan, it is nevertheless saved from preemption" under ERISA's savings clause "because section 1371.4(b) of the Knox-Keane Act"—the predicate statute on which the *Clark* plaintiff relied for his UCL claim— "regulates insurance."  2010 WL 5093629, at *4.  But not every provision of the Knox-Keane Act is immune from preemption on this basis.  Here, Plaintiffs rely on a different provision of the Knox-Keane Act to prove up their UCL claim:  they rely on California Health & Safety Code § 1367.01, while *Clark* dealt with Section 1371.4(b).  (Opp. 19.)  *Clark* only held that Section 1371.4(b) falls under the savings clause because it "dictates when the insurer must pay for risk it has assumed, specifically the risk that the insured may require emergency medical services."  2010 WL 5093629, at *4.  That analysis does not apply to Section 1367.01, and Plaintiffs do not cite any caselaw showing otherwise.  Their UCL claim is preempted, and neither *Clark* nor *District Council* mandate the opposite conclusion.

- 14 -

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## CONCLUSION

For the foregoing reasons, Cigna respectfully requests that the Court dismiss the Third Amended Complaint in its entirety. And because Plaintiffs have now had three opportunities to plead their claims, dismissal should be with prejudice.

Dated: October 15, 2024

Respectfully submitted,

By:  */s/ Dmitriy Tishyevich*
Dmitriy Tishyevich

Joshua B. Simon (admitted *pro hac vice*)
jsimon@mwe.com
Warren Haskel (admitted *pro hac vice*)
whaskel@mwe.com
Dmitriy Tishyevich (SBN 275766)
dtishyevich@mwe.com
John J. Song (admitted *pro hac vice*)
jsong@mwe.com
Chelsea Cosillos (admitted *pro hac vice*)
ccosillos@mwe.com
**McDERMOTT WILL & EMERY LLP**
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

William P. Donovan, Jr. (SBN 155881)
**McDERMOTT WILL & EMERY LLP**
wdonovan@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: (310) 277-4110
Facsimile: (310) 277-4730
wdonovan@mwe.com

*Attorneys for Defendants The Cigna Group
(f/k/a Cigna Corporation) and Cigna Health and
Life Insurance Company*

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK

1

### CERTIFICATE OF SERVICE

2

     I hereby certify that on October 15, 2024, I electronically filed a true and correct copy of the

3

foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send

4

notice of the filing to counsel of record.

5

6
                              */s/ Dmitriy Tishyevich*
                              Dmitriy Tishyevich

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

CIGNA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 2:23-CV-01477-DAD-CSK