1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SUZANNE KISTING-LEUNG, et al.,          No.  2:23-cv-01477-DAD-CSK

12                  Plaintiffs,

13          v.                                ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'
14    CIGNA CORPORATION, et al.,              MOTION TO DISMISS

15                  Defendants.               (Doc. No. 46)

16

17

18          This matter is before the court on defendants' motion to dismiss filed on August 23, 2024.

19    (Doc. No. 46.)  Defendants' motion was taken under submission on the papers pursuant to Local

20    Rule 230(g).  (Doc. No. 51.)  For the reasons explained below, defendants' motion to dismiss will

21    be granted in part and denied in part.

22                              **BACKGROUND**

23          Plaintiffs Suzanne Kisting-Leung, Samantha Dababneh, Randall Rentsch, Christina

24    Thornhill, Amanda Bredlow, and Abdulhussein Abbas (collectively, "plaintiffs") bring this

25    putative class action against defendants Cigna Corporation and Cigna Health and Life Insurance

26    Company (collectively, "defendants") for purported wrongful denial of plaintiffs' claims for

27    benefits and for defendants' use of the automated PxDx algorithm to review plaintiffs' claims.

28    (Doc. No. 36.)  On July 24, 2023, plaintiffs filed this suit.  (Doc. No. 1.)  Pursuant to various

                                            1

1  stipulations of the parties, on June 14, 2024, plaintiffs filed their operative third amended

2  complaint ("TAC"), (Doc. No. 36), in which they allege as follows.

3        Plaintiffs are and at all relevant times have been beneficiaries of health insurance plans,

4  and defendants are and were the named claims administrators of those plans.  (*Id.* at ¶¶ 16–21.)

5  Plaintiffs Kisting-Leung, Dababneh, Rentsch, Thornhill, and Abbas had benefit claims

6  wrongfully denied by defendants as not medically necessary.  (*Id.* at ¶¶ 41, 45, 54, 63, 66, 70, 72,

7  80, 95–96.)  For instance, plaintiff Kisting-Leung's claim for benefits to cover a transvaginal

8  ultrasound was denied even though "[a]ccording to Cigna's Medical Coverage Policy, a

9  transvaginal ultrasound is considered 'medically necessary for the evaluation of suspected pelvic

10  pathology or for screening or surveillance of a woman at increased risk for ovarian or endometrial

11  cancer.'"  (*Id.* at ¶¶ 40–42.)  Plaintiff Bredlow had a claim for benefits wrongfully denied

12  because, according to defendants, "the submitted code for the procedure was 'missing or

13  invalid[.]'"  (*Id.* at ¶ 87.)  "Cigna must provide benefits for covered health services and pay all

14  reasonable and medically necessary expenses incurred by a covered member."  (*Id.* at ¶ 25.)

15        "Cigna's policies falsely claim that determinations related to medical necessity of health

16  care services would be made by a medical director, when in reality the medical directors are not

17  involved in reviewing patients' claims."  (*Id.* at ¶ 9.)  Each of plaintiffs' claims for benefits were

18  in fact reviewed and denied by defendants' PxDx algorithm.  (*Id.* at ¶ 6.)

19        "Cigna developed an algorithm known as PXDX that it relies on to enable its doctors to

20  automatically deny payments in batches of hundreds or thousands at a time for treatments that do

21  not match certain pre-set criteria[.]"  (*Id.* at ¶ 2.)  "Relying on the PXDX system, Cigna's doctors

22  instantly reject claims on medical grounds without ever opening patient files, leaving thousands

23  of patients effectively without coverage and with unexpected bills."  (*Id.* at ¶ 3.)  "[O]ver a period

24  of two months in 2022, Cigna doctors denied over 300,000 requests for payment using this

25  method, spending an average of just *1.2 seconds* 'reviewing' each request."  (*Id.*)  "The PXDX

26  system saves Cigna money by allowing it to deny claims it previously paid[.]"  (*Id.* at ¶ 4.)

27        "Cigna routinely fails to disclose that the PXDX algorithm was the reason for many

28  adverse benefits determinations."  (*Id.* at ¶ 31.)  Plaintiff Rentsch did receive a benefits denial

1     letter indicating that the PxDx algorithm reviewed his claims. (*Id.* at ¶ 63.) However, plaintiff

2     Rentsch only "discovered through an article published by ProPublica that Defendants had been

3     using the PXDX algorithm to review patients' claims." (*Id.* at ¶ 73.) "Prior to that, Mr. Rentsch

4     had no knowledge of this illegal practice by Defendants." (*Id.*)[1]

5          "Defendants' actions constitute an unlawful denial of health insurance benefits under

6     ERISA, as provided in 19 U.S.C. § 1132(a)(1)(B)." (*Id.* at ¶ 124.) Further, defendants' use of the

7     PxDx algorithm contradicts plan terms promising medical necessity review by a medical director,

8     which constitutes a breach of fiduciary duty in violation of 29 U.S.C. § 1132(a)(3). (*Id.* at ¶ 132.)

9     In addition, "[d]efendants' conduct violates the unlawful prong of § 17200 because they violate

10     California's express statutory and regulatory requirements regarding insurance claims handling

11     pursuant to Cal. Health & Saf. Code §1367.01," and more specifically "[d]efendants violated the

12     unlawful prong of § 17200 when they allowed the PXDX system to review and deny Plaintiffs

13     and Class members' claims instead of having a licensed physician who is competent to evaluate

14     the specific clinical issues involved in the health care services requested by the provider to deny

15     or modify requests for authorization of health care services for an enrollee for reasons of medical

16     necessity as required by Cal. Health & Saf. Code §1367.01(e)." (*Id.* at ¶¶ 142–43.)

17          Plaintiffs assert they are "entitled to recover benefits denied by Defendants, interest,

18     attorneys' fees, and other penalties as this court deems just, under ERISA § 502(a)(1)(B), 29

19     U.S.C. § 1132(a)(1)(B)." (*Id.* at ¶ 125.) In addition, plaintiffs allege they "are entitled to

20     appropriate equitable relief under 29 U.S.C. § 1132(a)(3)[,]" including "disgorgement and/or

21     restitution" and "[a]ppropriate declaratory and public injunctive relief enjoining Cigna from

22     continuing its improper and unlawful claim handling practices as set forth" in the TAC. (*Id.* at

23     20, 24.) Finally, plaintiffs seek an order enjoining defendants from denying benefits owed to

24     insureds through PxDx review, and restitution of the money wrongfully acquired by defendants.

25     (*Id.* at ¶¶ 154–55.)

26     /////

27

---

[1] The tension between the allegations of the TAC summarized in this paragraph is of some
28   import as will be made clear below.

1     Based on these allegations, plaintiffs bring claims for denial of benefits, 29 U.S.C.

2  § 1132(a)(1)(B), breach of fiduciary duty, 29 U.S.C. § 1132(a)(3), and violation of California's

3  Unfair Competition Law ("UCL").  (Doc. No. 36.)

4     On August 23, 2024, defendants filed the pending motion to dismiss plaintiffs' TAC.

5  (Doc. No. 46.)  On September 20, 2024, plaintiffs filed their opposition to the motion, and on

6  October 15, 2024, defendants filed their reply thereto.  (Doc. Nos. 59, 50.)

7                              **LEGAL STANDARD**

8     The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

9  sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

10  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

11  sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

12  F.2d 696, 699 (9th Cir. 1988).  A plaintiff is required to allege "enough facts to state a claim to

13  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

14  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

15  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

16  Iqbal*, 556 U.S. 662, 678 (2009).

17     In determining whether a complaint states a claim on which relief may be granted, the

18  court accepts as true the allegations in the complaint and construes the allegations in the light

19  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

20  the court need not assume the truth of legal conclusions cast in the form of factual allegations.

21  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

22  require detailed factual allegations, "it demands more than an unadorned, the-defendant-

23  unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

24  mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

25  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements

26  of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is

27  inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

28  /////

1   defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

2   *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

3                                             **ANALYSIS**

4   **A.      Standing (Plaintiffs Kisting-Leung, Thornhill, and Bredlow)**

5          "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the

6   threshold requirement imposed by Article III of the Constitution by alleging an actual case or

7   controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also City of Oakland v.*

8   *Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III

9   standing is not a 'case or controversy,' and Article III federal courts lack subject matter

10   jurisdiction over such suits.") (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir.

11   2004)).  An actual case or controversy will be held to exist when a plaintiff establishes standing.

12   *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "[S]tanding requires that (1) the plaintiff

13   suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or

14   imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged

15   conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Bates v. United*

16   *Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citing *Lujan*, 504 U.S. at 560–61).

17          In their pending motion, defendants bring a Rule 12(b)(1) factual attack on the standing of

18   plaintiffs Kisting-Leung, Thornhill, and Bredlow to bring this action.  (Doc. No. 46 at 10 & n.3.)

19   Defendants furnish an affidavit from Dr. Julie B. Kessel, a Medical Officer in defendants'

20   Clinical Performance and Quality department, to support their contention that these three

21   plaintiffs did not have their claims denied through PxDx review, and therefore have not suffered

22   the alleged injury in fact.  (Doc. No. 46-14 at ¶¶ 14, 20, 31.)  In their opposition, plaintiffs argue

23   that this is an issue of fact that is inappropriately raised by defendants by way of motion to

24   dismiss and which cannot be resolved at this stage of the litigation.

25          "Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to

26   allegations in the complaint, or factual, permitting the court to look beyond the complaint."

27   *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 n.2

28   (9th Cir. 2003) (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000)).  "Once the moving

1  party has converted the motion to dismiss into a factual motion by presenting affidavits or other

2  evidence properly brought before the court, the party opposing the motion must furnish affidavits

3  or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.*

4  (citing *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989)). "As with a motion for

5  summary judgment, when a court is faced with a factual attack on standing pursuant to Rule

6  12(b)(1), the court must leave the resolution of material factual disputes to the trier of fact when

7  the issue of standing is intertwined with an element of the merits of the plaintiff's claim." *Bowen*

8  *v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1144 (9th Cir. 2024) (citation omitted).

9        At the outset, the court will assume that plaintiffs' standing relies on their claims of

10  having been subjected to PxDx review. Accordingly, the court turns to whether that issue is

11  intertwined with the merits of the case. "In making that assessment, we consider whether the

12  question of standing is dependent on the resolution of factual issues going to the merits of the

13  action." *Id.* (citation omitted). Here, plaintiffs' fiduciary duty claim requires that plaintiffs

14  establish breach, which in turn requires that they allege a violation of plan terms or ERISA.

15  *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004); *Mendoza v. Aramark Servs.,*

16  *Inc.*, No. 15-cv-05142-JSC, 2016 WL 614713, at *3 (N.D. Cal. Feb. 16, 2016). Here, plaintiffs

17  allege that use of PxDx review to process their claims violated plan terms and provisions of

18  ERISA. (Doc. No. 36 at ¶ 133.) Therefore, whether defendants in fact used PxDx review to

19  process plaintiffs' claims is intertwined with the merits of plaintiffs' breach of fiduciary duty

20  claim. In other words, the court concludes that "there is a clear overlap between [plaintiffs']

21  asserted theory of Article III injury and the" breach of fiduciary duty "element" of plaintiffs'

22  fiduciary duty claim. *Bowen*, 118 F.4th at 1145.

23        The court will therefore apply the summary judgment standard. In summary judgment

24  practice, the moving party "initially bears the burden of proving the absence of a genuine issue of

25  material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*

26  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the moving party meets that burden, the

27  burden then shifts to the non-moving party to designate specific facts demonstrating the existence

28  of genuine issues for trial." *Id.*

1    Here, defendants have provided Dr. Kessel's declaration as evidence that plaintiffs

2    Kisting-Leung, Thornhill, and Bredlow did not have their claims denied through PxDx review.

3    (Doc. No. 46-14.)  Plaintiffs provide no countervailing evidence, though they do argue

4    defendants' evidence is speculative.  (Doc. No. 49.)  Specifically, plaintiffs take issue with Dr.

5    Kessel's use of equivocal terms like "typically" when discussing the remark code used for

6    denying plaintiffs' claims.  (*Id.* at 10.)

7    However, Dr. Kessel asserts without equivocation that "if a claim was denied based on

8    PxDx review, both the patient and healthcare provider will receive a separate letter detailing the

9    services billed, the diagnosis codes billed, and the applicable Cigna clinical coverage policy used

10   in adjudicating that PxDx denial."  (Doc. No. 46-14 at ¶ 13.)  For each of the three plaintiffs at

11   issue, "there were no such PxDx denial letters associated with" their claims.  (*Id.* at ¶¶ 13, 19, 22.)

12   As a result, Dr. Kessel concludes that the claims of each of the three plaintiffs were not reviewed

13   using PxDx review.  (*Id.* at ¶¶ 14, 20, 31.)  Although it is plaintiffs' theory that "Cigna routinely

14   fails to disclose that the PXDX algorithm was the reason for many adverse benefits

15   determinations[,]" plaintiffs present no evidence for this assertion.  (Doc. No. 36 at ¶ 31.)  Nor do

16   plaintiffs present any other countervailing evidence.  Therefore, based upon the evidence now

17   before it, the court finds that there is no genuine dispute that the claims of plaintiffs Kisting-

18   Leung, Thornhill, and Bredlow were not subjected to PxDx review.

19   Finally, plaintiffs argue that because each of their claims for benefits was denied, each

20   plaintiff has standing regardless of whether the claims were reviewed using the PxDx algorithm.

21   (Doc. No. 49 at 29.)  Plaintiffs are correct that allegedly wrongful denial of benefits can provide

22   one with standing.  *Bruce M. v. Sutter W. Bay Med. Grp. Health & Welfare*, No. 22-cv-06149-

23   JST, 2023 WL 6277269, at *3 (N.D. Cal. Sept. 25, 2023) ("[C]ourts have held that an individual

24   suffers a concrete injury when the individual 'was denied health benefits he was allegedly owed

25   under [a] plan.'") (quoting *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d

26   284, 288 (6th Cir. 2016)); *Davis v. Guam*, 785 F.3d 1311, 1316 (9th Cir. 2015) ("[S]tanding

27   doesn't depend on the merits of the plaintiff's contention that particular conduct is illegal.")

28   (citation omitted, cleaned up).

Furthermore, defendants' alleged wrongful denial of plaintiffs' claims for benefits does furnish standing for purposes of plaintiffs' § 1132(a)(1)(B) claim because plaintiffs allege this statute was violated when defendants wrongfully denied plaintiffs' benefits. 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan . . . ."); (Doc. No. 36 at ¶ 124) ("Defendants' actions constitute an unlawful denial of health insurance benefits under ERISA, as provided in 19 U.S.C. § 1132(a)(1)(B)."). Therefore, all plaintiffs have standing to bring claims under § 1132(a)(1)(B).

However, "a plaintiff must demonstrate standing for each claim he seeks to press." *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSW, 2014 WL 721948, at *3 (N.D. Cal. Feb. 25, 2014) (citation omitted). Plaintiffs' remaining claims brought under § 1132(a)(3) and the UCL do not allege that defendants' denial of plaintiffs' benefits constitutes a violation of these statutes. (Doc. No. 36 at ¶¶ 127–55.) Instead, plaintiffs allege defendants violated these statutes by using the PxDx algorithm to review plaintiffs' claims for benefits. (*Id.*) Therefore, the court must examine whether the purported injury in fact of denial of benefits is "fairly traceable to [defendants'] challenged behavior" of using the PxDx algorithm.[2] *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008). Because the benefit determinations in response to the claims submitted by plaintiffs Kisting-Leung, Thornhill, and Bredlow were not made using the PxDx algorithm, denial of their claims is not fairly traceable to defendants' *challenged* behavior. *See Rombeiro v. Unum Ins. Co. of Am.*, 761 F. Supp. 2d 862, 873 (N.D. Cal. 2010) ("Plaintiff is correct that wrongful denial of benefits is an injury that could give him standing to bring *some* Section 1132(a)(3) claim. But he is wrong that he has standing to obtain relief for those who did not receive settlement notice when he himself did receive notice."). Therefore, the court concludes that plaintiffs Kisting-Leung, Thornhill, and Bredlow lack standing to bring their claims under § 1132(a)(3) and the UCL.

---

[2]  Although defendants did not challenge the traceability of plaintiffs' purported injury, "the court has an independent obligation to assure that standing exists[.]" *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

1    **B.    Timeliness (Plaintiff Rentsch)**

2    Defendants also argue that plaintiff Rentsch's § 1132(a)(1)(B) & (a)(3) claims are time

3    barred.  They assert that his ERISA plan set a limitations period at three years after a claim is

4    submitted for in-network services or three years after proof of claim is required under the plan for

5    out-of-network services, and that plaintiff Rentsch's claim for benefits was denied February 27,

6    2018 – more than five years before the original complaint in this action was filed on July 24,

7    2023.  (Doc. No. 46 at 16.)  Defendants further argue that plaintiff Rentsch's UCL claim is time

8    barred because a four-year statute of limitations applies.  (*Id.* at 17.)  In their opposition, plaintiffs

9    do not dispute the existence of the contractual limitations period but instead argue that plaintiff

10   Rentsch's claims accrued later than February 27, 2018 and that a six-year statute of limitations

11   period applies to plaintiff Rentsch's ERISA claims because he alleges fraud or concealment.

12   (Doc. No. 49 at 11–13.)

13         1.    Timeliness of Plaintiff Rentsch's 29 U.S.C. § 1132(a)(1)(B) Claim

14   Where the period is not unreasonably short, the Supreme Court has held that contractual

15   limitations periods apply to "§ 1132(a)(1)(B)" claims.  *Heimeshoff v. Hartford Life & Acc. Ins.*

16   *Co.*, 571 U.S. 99, 109 (2013) ("We must give effect to the Plan's limitations provision unless we

17   determine either that the period is unreasonably short, or that a 'controlling statute' prevents the

18   limitations provision from taking effect.").  Further, "[a]bsent a controlling statute to the contrary,

19   a participant and a plan may agree by contract to a particular limitations period, even one that

20   starts to run before the cause of action accrues, as long as the period is reasonable."  *Id.* at 105–

21   06.  Because a "3-year limitations provision" is not unreasonably short, the contractual limitations

22   period applies to plaintiff Rentsch's § 1132(a)(1)(B) claim.  *Id.* at 109.  Regardless of when

23   plaintiff Rentsch's claim accrued or whether it sounds in fraud, the parties' contractual limitations

24   provision provides for a limitations period of three years after the claim was submitted.  (Doc.

25   No. 46 at 16.)

26   Still, where a contractual limitations period applies, equitable tolling can apply to relieve

27   hardship.  *Sargent v. S. California Edison 401(k) Sav. Plan*, No. 20-cv-01296-MMA-RBB, 2020

28   WL 6060411, at *5 (S.D. Cal. Oct. 14, 2020).  Even at the motion to dismiss stage, the "litigant

9

1   seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been

2   pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.*

3   (quoting *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)).  "Regarding the

4   second element, 'a garden variety claim of excusable neglect, such as a simple miscalculation that

5   leads a lawyer to miss a filing deadline, does not warrant equitable tolling.'"  *Id.* (quoting *Kwai*

6   *Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013), *aff'd and remanded sub nom. United*

7   *States v. Wong*, 575 U.S. 402 (2015)).  Rather, "[t]he party seeking equitable tolling bears the

8   burden to show that it is appropriate." *Id.* (citation omitted).

9       Here, plaintiff Rentsch has not shown extraordinary circumstances justifying equitable

10  tolling.  Although he alleges he did not know that defendants used PxDx to review his claims

11  until he read a 2023 article, in their TAC plaintiffs admits that he received a benefits denial letter

12  in 2016 in which it was noted that PxDx was used to process his claim.  (Doc. No. 36 at ¶ 63.)

13  Plaintiff Rentsch's alleged lack of knowledge is not therefore attributable to extraordinary

14  circumstances, but at best to excusable neglect.  *See Sargent*, 2020 WL 6060411, at *5 ("[T]he

15  Court finds that the COVID-19 global pandemic and the surrounding circumstances did not

16  sufficiently prevent Plaintiff from filing her action.").  Because equitable tolling does not apply,

17  plaintiff Rentsch's § 1132(a)(1)(B) claim is untimely.

18       2.    Timeliness of Plaintiff Rentsch's 29 U.S.C. § 1132(a)(3) Claim

19       The timeliness of plaintiff Rentsch's § 1132(a)(3) claim is not as straightforward.  In the

20  end, however, the court agrees with the reasoning of the district court in *Sargent* that as to that

21  claim a controlling statute, 29 U.S.C. § 1113, supersedes the plan's contractual limitation period.

22  *Sargent*, 2020 WL 6060411, at *7–8.  According to this controlling statute:

23           No action may be commenced under this subchapter with respect to
             a fiduciary's breach of any responsibility, duty, or obligation under
24           this part, or with respect to a violation of this part, after the earlier
             of—
25
             (1) six years after (A) the date of the last action which
26               constituted a part of the breach or violation, or (B) in the
                 case of an omission the latest date on which the fiduciary
27               could have cured the breach or violation, or

28  /////

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.  "A plaintiff fails to state a claim, and therefore dismissal is appropriate, where his failure to comply with the applicable statute of limitations is evident from the allegations of the complaint."  *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1004 (N.D. Cal. 2015).

It is not clear from the face of the complaint that plaintiff Rentsch had "actual knowledge" of the purported violation—defendants' use of PxDx to review his claims—until March 25, 2023, when plaintiff Rentsch allegedly "discovered through an article published by ProPublica that Defendants had been using the PXDX algorithm to review patients' claims."  (Doc. No. 36 at ¶ 73) ("Prior to that, Mr. Rentsch had no knowledge of this illegal practice by Defendants.").  It is true that plaintiff Rentsch may have had constructive knowledge of the use of PxDx review earlier because at least one "denial letter indicated that the PXDX algorithm reviewed his claim[,]" but actual knowledge requires more.  (*Id.* at ¶ 63.)  The Ninth Circuit has addressed this issue, explaining:

> We agree that Intel's evidence demonstrates that Sulyma had sufficient information available to him to know about the allegedly imprudent investments before October 29, 2012.  However, that is insufficient.  Because Sulyma brought a claim under section 1104, he was required to have actual knowledge both that those investments occurred, and that they were imprudent.  But Sulyma declared that he was "unaware that the monies that [he] had invested through the Intel retirement plans had been invested in hedge funds or private equity' and that he did 'not recall seeing any documents during [his] employment at Intel that alerted [him] to the fact that [his] retirement monies were significantly invested in hedge funds or private equity."

*Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1077 (9th Cir. 2018), *aff'd,* 589 U.S. 178 (2020).  Therefore, plaintiff Rentsch's § 1132(a)(3) claim is not subject to dismissal at this stage of the litigation as untimely.

/////

/////

3.     Timeliness of Plaintiff Rentsch's UCL Claim

Finally, the court turns to the timeliness of plaintiff Rentsch's claim under the UCL.  "The statute of limitation for a UCL violation is four years."  *Joseph v. Am. Gen. Life Ins. Co.*, 495 F. Supp. 3d 953, 962 (S.D. Cal. 2020) (citing Cal. Bus. & Prof. Code § 17208), *aff'd*, No. 20-56213, 2021 WL 3754613 (9th Cir. Aug. 25, 2021).  The defendant "bears the initial burden of proving [the plaintiff's] claims are barred by section 17208's four-year limitations period."  *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197 (2013).  "[T]he UCL statute of limitations is governed by common law accrual rules."  *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016) (citation omitted).  "Common law rules provide that a cause of action ordinarily accrues when each of the elements of the cause of action (wrongdoing, causation, and harm) has been satisfied."  *Id.*  Applying this general rule, the court finds defendants have met their initial burden of establishing that plaintiff Rentsch's UCL claim is untimely.

"Thereafter, the burden shifts to [the plaintiff] to demonstrate his claims survive based on one or more nonstatutory exceptions to the basic limitations period."  *Aryeh*, 55 Cal. 4th at 1197.  "That burden may be imposed even at the pleading stage."  *Id.*

Plaintiffs argue that the discovery rule applies to delay accrual.  (Doc. No. 49 at 12.)  "[A] UCL deceptive practices claim should accrue only when a reasonable person would have discovered the factual basis for a claim."  *Aryeh*, 55 Cal. 4th at 1195 (citation omitted).  Plaintiffs argue that defendants used "the secret, undisclosed PXDX algorithm to review and deny claims for benefits."  (Doc. No. 49 at 12.)  However, once again the court notes that plaintiffs' own TAC alleges that plaintiff Rentsch received a "denial letter indicat[ing] that the PXDX algorithm reviewed his claim."  (Doc. No. 36 at ¶ 63.)  Given this allegation by plaintiffs, plaintiff Rentsch cannot meet his burden of establishing that the discovery rule renders his UCL claim timely.

Therefore, the court will dismiss plaintiff Rentsch's § 1132(a)(1)(B) and UCL claims as untimely.

/////

/////

/////

1    **C.    Whether Plaintiffs State a Claim Under 29 U.S.C. § 1132(a)(1)(B) for Wrongful**
2    **Denial of Benefits**

3    "To state a claim under [§ 1132(a)(1)(B)], a plaintiff must allege facts that establish the

4    existence of an ERISA plan as well as the provisions of the plan that entitle it to benefits." *Forest*

5    *Ambulatory Surgical Assocs., L.P. v. United Healthcare Ins. Co.*, No. 12-cv-02916-PSG-FFM,

6    2013 WL 11323600, at \*5 (C.D. Cal. Mar. 12, 2013).  A § 1132(a)(1)(B) claim for benefits

7    "stands or falls by 'the terms of the plan.'"  *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,

8    555 U.S. 285, 300 (2009).

9    Here, defendants argue plaintiffs have not identified the plan terms that purportedly entitle

10    them to benefits.  (Doc. No. 46 at 18.)  In the case of plaintiff Kisting-Leung, she alleges that

11    "[a]ccording to Cigna's Medical Coverage Policy, a transvaginal ultrasound is considered

12    'medically necessary for the evaluation of suspected pelvic pathology or for screen or

13    surveillance of a woman at increased risk for ovarian or endometrial cancer.'"  (Doc. No. 36 at

14    ¶ 42.)  Cigna's "Medical Coverage Policy" is a set of guidelines Cigna uses to adjudicate claims

15    for benefits.  *Akhlaghi v. Cigna Corp.*, No. 19-cv-03754-JST, 2019 WL 13067381, at \*1 (N.D.

16    Cal. Oct. 23, 2019) ("Cigna insurance plans exclude from coverage medical services that it

17    considers 'experimental, investigational or unproven.'  'To adjudicate claims for the treatment of

18    lipedema, Cigna uses "Medical Coverage Policy No. 0531."'  This policy classifies '[l]iposuction

19    for the treatment of lipedema' as 'experimental, investigational or unproven.'").  Cigna's

20    "Medical Coverage Policy" is not the plan itself and does not necessarily mirror plan terms.  *Id.*

21    Therefore, plaintiff Kisting-Leung has not alleged the plan term or terms that entitle her to

22    benefits.

23    In the allegations of their TAC, the remaining plaintiffs generally contest the reasons

24    given by defendant for denying coverage (Doc. No. 36 at ¶¶ 39–103), but "they do not actually

25    allege that the specific services . . . at issue were covered under the terms of the relevant plans or

26    describe the plan terms that would support such coverage."  *Almont Ambulatory Surgery Ctr.,*

27    *LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1158 (C.D. Cal. 2015); *see also Brand*

28    *Tarzana Surgical Inst., Inc. v. Blue Cross Blue Shield of Illinois*, No. 18-cv-08443-DSF-AS, 2019

WL 12338413, at *1 (C.D. Cal. Apr. 22, 2019) (collecting cases). Nor do plaintiffs "plead exemplar language or even make allegations regarding such language that is then extrapolated to the remaining plans." *Id.* The closest plaintiffs come to satisfying this requirement is by alleging that according to plan documents, "Cigna must provide benefits for covered health services and pay all reasonable and medically necessary expenses incurred by a covered member." (Doc. No. 36 at ¶ 25.) However, reference to "covered health services" (*id.*) is too "general" to demonstrate that defendants breached the plan terms. *Star Dialysis, LLC v. WinCo Foods Emp. Benefit Plan*, 401 F. Supp. 3d 1113, 1139 (D. Idaho 2019); *see also Akhlaghi*, 2019 WL 13067381, at *3 ("Unlike here, the complaint in *Alexander* alleged that plaintiffs' plans provided coverage for 'mental illness and substance use disorders so long as it is medically necessary as defined by generally accepted standards of care.'") (citation omitted).

Therefore, the court concludes that all plaintiffs have failed to sufficiently allege facts stating a claim under § 1132(a)(1)(B).[3]

**D.    Breach of Fiduciary Duty Under 29 U.S.C. § 1132(a)(3)**

   1.    Whether Plaintiffs State a Claim Under 29 U.S.C. § 1132(a)(3)

"To establish an action for equitable relief under . . . 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity, and must violate ERISA-imposed fiduciary obligations." *Mathews*, 362 F.3d at 1178. "A Section 502(a)(3) claim must seek to either enjoin acts or practices that violate an ERISA provision or an ERISA plan's terms or to enforce an ERISA provision or an ERISA plan's terms." *Mendoza*, 2016 WL 614713, at *3 (emphasis removed). Section 1132(a)(3) authorizes a "lawsuit for individual relief." *Varity Corp. v. Howe*, 516 U.S. 489, 507 (1996).

/////

/////

---

[3]  Reprocessing of claims is a remedy available under § 1132(a)(1)(B) where "a plaintiff has shown that his or her claim was denied based on the wrong standard and that he or she might be entitled to benefits under the proper standard." *Wit v. United Behav. Health*, 79 F.4th 1068, 1084 (9th Cir. 2023) (emphasis removed). However, plaintiffs do not seek reprocessing as a remedy and do not argue this standard should apply. Therefore, the court need not analyze plaintiffs' allegations under this standard.

Defendants do not dispute that they are ERISA fiduciaries acting in their fiduciary capacity.  (Doc. No. 46 at 23.)  Defendants only contest whether they violated ERISA-imposed fiduciary obligations.  (*Id.*)

Plaintiffs allege that "Cigna's insurance policies state that its determinations of medical necessity are made 'by a Medical Director,' when in fact Cigna uses the automated PXDX algorithm to make medical necessity determinations."  (Doc. No. 36 at ¶ 30.)  Defendants argue that because plaintiffs also allege that "doctors" are the ones using the algorithm to "automatically deny payments in batches of hundreds or thousands at a time for treatments that do not match certain pre-set criteria," defendants are in compliance with the plan requirement that medical necessity decisions be made by a Medical Director.  (*Id.* at ¶ 2; 46 at 28.)

The standard used in evaluating an ERISA plan administrator's interpretation of a plan term varies depending, in part, on whether the plan gives the plan administrator discretion to interpret the terms of the plan.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) ("De novo is the default standard of review.  . . .  [I]f the plan . . . confer[s] discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion.").  Under the most deferential standard, "[a]n ERISA plan administrator abuses its discretion if it construes provisions of the plan in a way that conflicts with the plain language of the plan."  *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 458 (9th Cir. 1996) (citation omitted).

Even assuming without deciding that this deferential standard applies here, the court finds defendants' interpretation of the plan provision requiring determinations of medical necessity be made by a medical director—as allowing an algorithm to make the decision so long as a medical director pushes the button—conflicts with the plain language of the plan and constitutes an abuse of discretion.  *See id.* ("Reading 'each and every' literally could mean either that a claimant is not totally disabled if she can perform any single duty of her job, no matter how trivial—or that a claimant is totally disabled if she cannot perform any single duty, no matter how trivial.  There is little question that the phrase should not be given the former construction, as 'total disability' would only exist if the person were essentially non-conscious.").

Because plaintiffs have adequately alleged that defendants violated the plan terms when they entrusted medical necessity determinations to the PxDx algorithm, they have adequately plead a breach of fiduciary duty.

2.    Whether Plaintiffs Seek Appropriate Equitable Relief

A claim brought under § 1132(a)(3) fails if the plaintiff does not seek "'appropriate equitable relief[.]'" *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) (quoting 29 U.S.C. § 1132(a)(3)(B)).  "The Supreme Court has made clear that 'appropriate equitable relief' refers to a 'remedy traditionally viewed as "equitable."'" *Id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)).

"[T]he Supreme Court identified three traditional equitable remedies available under § 1132(a)(3):  reformation, equitable estoppel, and surcharge." *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 729 (9th Cir. 2021).  However, appropriate remedies are not limited to those three.  *Cf. Wit*, 79 F.4th at 1086 ("Plaintiffs and the district court did not explain or refer to precedent showing how reprocessing constitutes relief that was typically available in equity for infirm Guidelines unrelated to Plaintiffs' claim for benefits.  Consequently, the district court erred in concluding that reprocessing was an available remedy under 29 U.S.C. § 1132(a)(3).").

Injunctive relief is also available under § 1132(a)(3).  29 U.S.C. § 1132(a)(3) ("A civil action may be brought . . . to *enjoin* any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief[.]") (emphasis added); *Mertens*, 508 U.S. at 248 ("And the text of ERISA leaves no doubt that Congress intended 'equitable relief' to include only those types of relief that were typically available in equity, such as injunction[.]"); *Gabriel*, 773 F.3d at 954 (same); *CIGNA Corp. v. Amara*, 563 U.S. 421, 440 (2011) ("The District Court's affirmative and negative injunctions obviously fall within this category. . . .  And the relief entered here, insofar as it does not consist of injunctive relief, closely resembles three other traditional equitable remedies."); *Cave v. Delta of California*, No. 18-cv-01205-WHO, 2018 WL 5292059, at *4 (N.D. Cal. Oct. 23, 2018) ("Remedies that are appropriate under section 502(a)(3) include injunctive relief, reformation of a

/////

16

plan, estoppel, or an 'equitable surcharge.'") (quoting *Amara*, 563 U.S. at 440), *aff'd sub nom. Cave v. Delta Dental of California*, 788 F. App'x 430 (9th Cir. 2019).

In particular, where the defendant's claims processing practices violate ERISA or the terms of the plan, an injunction "requiring [the defendant] to alter the manner in which it administers" all or a category of claims on a go-forward basis constitutes appropriate relief "under § 1132(a)(3)[.]" *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005); *see also Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 584 (6th Cir. 2016) ("[W]e have noted that there is a distinction between an individual claim for benefits under § 1132(a)(1)(B) and a claim brought under § 1132(a)(3) to compel a defendant to alter the manner in which it administers all the claims under the plan[.]"); *cf. Oregon Teamster Emps. Tr. v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1159 (9th Cir. 2015) (rejecting specific performance of monetary reimbursement as an appropriate remedy under § 1132(a)(3) except under narrow circumstances); *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 205 (2002) ("An injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity.").

Here, plaintiffs allege that they "are entitled to appropriate equitable relief under 29 U.S.C. § 1132(a)(3)[,]" and their prayer for relief clarifies this includes "disgorgement and/or restitution" and "[a]ppropriate declaratory and public injunctive relief enjoining Cigna from continuing its improper and unlawful claim handling practices as set forth" in the TAC.  (Doc. No. 36 at 20, 24.)  At the very least, the injunctive relief plaintiffs seek is available under § 1132(a)(3).  *Hill*, 409 F.3d at 718 ("Only injunctive relief of the type available under § 1132(a)(3) will provide the complete relief sought by Plaintiffs by requiring BCBSM to alter the manner in which it administers all the Program's claims for emergency-medical-treatment expenses."); *see also Ryan S. v. UnitedHealth Grp., Inc.*, No. 20-56310, 2022 WL 883743, at *2 n.1 (9th Cir. Mar. 24, 2022)[4] ("We are not willing to say this early in the litigation that Ryan S.'s requested remedies are improper under § 1132(a)(3).").

---

[4]  Citation to unpublished Ninth Circuit opinions throughout this opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

3.      Whether Plaintiffs' § 1132(a)(3) Claim is Duplicative

Defendants argue plaintiffs' claim under § 1132(a)(3) is duplicative of their claim brought under § 1132(a)(1)(B) because "there is 'little functional daylight' between" plaintiffs' theory of liability for the two claims.  (Doc. No. 46 at 25) (quoting *Fortier v. Anthem, Inc.*, No. 2:20-cv-04952-MCS-MAA, 2020 WL 13304004, at *4 (C.D. Cal. Oct. 26, 2020)).

The Ninth Circuit "permits plaintiffs to present § 1132(a)(1)(B) and § 1132(a)(3) as alternative . . . theories of relief . . . so long as there is no double recovery."  *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 961 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016) (reversing the district court grant of the defendant's motion for summary judgment as to the plaintiff's § 1132(a)(3) claim); *cf. Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997) (holding plaintiffs could not recover under § 1132(a)(3) because they "[had] already won a judgment for damages under section 1132(a)(1) for the injuries they suffered as a result of the defendant's actions"), *overruled on other grounds, Lacey v. Maricopa Cty.,* 693 F.3d 896 (9th Cir. 2012).

Since the decision in *Moyle*, district courts in the Ninth Circuit have been split four ways as to when a § 1132(a)(3) claim should be dismissed as duplicative.  According to some district courts, it is always premature to dispense with a § 1132(a)(3) claim as duplicative at the motion to dismiss stage.  *Akhlaghi*, 2020 WL 6260012, at *7 (collecting cases).  According to others, a plaintiff's § 1132(a)(3) claim survives a motion to dismiss where the plaintiff seeks distinct relief pursuant to § 1132(a)(1)(B) and § 1132(a)(3).  *Atzin v. Anthem, Inc*, No. 2:17-cv-06816-ODW-PLA, 2018 WL 501543, at *3 (C.D. Cal. Jan. 19, 2018).  Other district courts require that the relief sought pursuant to § 1132(a)(3) not be available under any "other provisions of ERISA."  *Schuman v. Microchip Tech. Inc.*, 302 F. Supp. 3d 1101, 1118 (N.D. Cal. 2018).  Still others require the plaintiff to plead different factual theories of liability in support of the two claims.  *Kazda v. Aetna Life Ins. Co.*, No. 19-cv-02512-WHO, 2019 WL 11769104, at *5 (N.D. Cal. Sept. 11, 2019).

This court is persuaded that under *Moyle*, at the motion to dismiss stage, "§ 1132(a)(1)(B) and § 1132(a)(3) claims can proceed simultaneously if they plead distinct remedies."  *Moyle*, 823

18

1    F.3d at 961; *see also id.* (characterizing another case where "the Sixth Circuit prohibited the

2    plaintiff from pursuing his § 1132(a)(3) claim because he had a remedy available under

3    § 1132(a)(1)(B)" as hinging on the fact that the plaintiff "had already received his remedy under

4    § 1132(a)(1)(B)") (citation omitted); *Ryan S.*, 2022 WL 883743, at *2 n.1 ("[T]his Circuit has

5    held that a plaintiff in an ERISA case may pursue claims under both § 1132(a)(1) and

6    § 1132(a)(3) if the relief is not duplicative."); *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224,

7    1229 (9th Cir. 2020) ("Claims under § 1132(a)(1)(B) and § 1132(a)(3), however, 'may proceed

8    simultaneously so long as there is no double recovery'") (citing *Moyle*, 823 F.3d at 961).[5]

9          Here, plaintiffs allege that they are "entitled to recover benefits denied by Defendants,

10    interest, attorneys' fees, and other penalties as this court deems just, under ERISA § 502(a)(1)(B),

11    29 U.S.C. § 1132(a)(1)(B)." (Doc. No. 36 at ¶ 125.)  Meanwhile, plaintiffs also allege that they

12    "are entitled to appropriate equitable relief under 29 U.S.C. § 1132(a)(3)[,]" and their prayer for

13    relief clarifies this includes "disgorgement and/or restitution" and "[a]ppropriate declaratory and

14    public injunctive relief enjoining Cigna from continuing its improper and unlawful claim

15    handling practices as set forth" in the TAC.  (*Id.* at 20, 24.)

16          Plaintiffs' § 1132(a)(1)(B) and § 1132(a)(3) claims are thus not duplicative because the

17    relief they seek under § 1132(a)(3) to enjoin Cigna from continuing its allegedly improper and

18    unlawful claim handling practices is "distinct from payment of unpaid benefits" and is therefore

19    not duplicative of the relief requested under § 1132(a)(1)(B).  *Hill*, 409 F.3d at 718 ("In this case,

20    an award of benefits to a particular Program participant based on an improperly denied claim for

21    emergency-medical-treatment expenses will not change the fact that BCBSM is using an

22    allegedly improper methodology for handling all of the Program's emergency-medical-treatment

23    _____

24    [5]  Regardless, the court would find under any of the four standards employed by district courts in
       this circuit that plaintiffs' § 1132(a)(1)(B) and § 1132(a)(3) claims are not duplicative.  The
25    injunctive relief plaintiffs seek is not available under § 1132(a)(1)(B).  *Hill*, 409 F.3d at 718
       ("Only injunctive relief of the type available under § 1132(a)(3) will provide the complete relief
26    sought by Plaintiffs by requiring BCBSM to alter the manner in which it administers all the
       Program's claims for emergency-medical-treatment expenses.").  Further, plaintiffs plead distinct
27    theories of liability.  As discussed above in addressing their standing, plaintiffs' § 1132(a)(1)(B)
       claim does not hinge on defendants' use of the PxDx algorithm, whereas plaintiffs' § 1132(a)(3)
28    claim does.

1    claims.  Only injunctive relief of the type available under § 1132(a)(3) will provide the complete

2    relief sought by Plaintiffs by requiring BCBSM to alter the manner in which it administers all the

3    Program's claims for emergency-medical-treatment expenses."); *Atzin*, 2018 WL 501543, at *3

4    ("Although some of the requested relief for their § 1132(a)(3) claim—an injunction requiring

5    reevaluation of Plaintiffs' claims, for example—may be duplicative, Plaintiffs request relief under

6    § 1132(a)(3) that plainly is not.  For instance, injunctive relief precluding Defendants from

7    relying on specific reasons not recited in their form denial letters is distinct from payment of

8    unpaid benefits.  Accordingly, Plaintiffs' § 1132(a)(3) claim is not duplicative of their

9    § 1132(a)(1)(B) claim.").

10   **E.    California's Unfair Competition Law**

11       The UCL prohibits "unfair competition" which includes "any unlawful, unfair or

12   fraudulent business act[.]"  Cal. Bus. & Prof. Code § 17200.  Plaintiffs bring a UCL claim

13   premised on several theories.  (Doc. No. 36 at ¶¶ 138–55.)  If just one is properly plead and not

14   preempted, plaintiffs have stated a cognizable UCL claim.  *Franklin v. Midwest Recovery Sys.,*

15   *LLC*, No. 8:18-cv-02085-JLS-DFM, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) ("Federal

16   Rule of Civil Procedure 12(b)(6) does not provide a mechanism for dismissing only a portion of a

17   claim.").

18       1.    Federal Rule of Civil Procedure 9(b)

19       Defendants argue Rule 9(b)'s heightened pleading requirement applies to plaintiffs' UCL

20   claim.  "Since fraud is not an essential element of a UCL claim, Rule 9(b)'s heightened pleading

21   requirement applies only to allegations that sound in fraud."  *Epperson v. GM, LLC*, 706 F. Supp.

22   3d 1031, 1040 (S.D. Cal. Dec. 13, 2023).  One theory of UCL liability may sound in fraud while

23   another does not.  *Id.* at 1040–42 ("While Plaintiff does not use the words 'fraud' or 'fraudulent'

24   in alleging Defendant's conduct violated Section 17500, a closer reading of the Complaint reveals

25   that many of Plaintiff's key allegations regarding the 'unlawful' prong of the UCL constitute

26   what are essentially averments of fraud.  . . .  These allegations do not involve the 'circumstances

27   constituting fraud,' fail to trigger Rule 9(b)'s heightened pleading requirement, and thus state [a]

28   valid UCL claim under the 'unfair' prong.").

1      Here, not all of plaintiffs' theories of UCL liability sound in fraud.  For instance, plaintiffs

2  allege defendants violated the unlawful prong of the UCL by violating California Health & Safety

3  Code §1367.01(e), which requires determinations of medical necessity be made by a licensed

4  physician or licensed health care professional.  (Doc. No. 36 at ¶¶ 142–43.)  Plaintiffs' allegations

5  in this regard are devoid of such fraud-related terms as "false, deceptive, misleading," "knew or

6  should have known[,]" or "misrepresentations[.]"  *Epperson*, 706 F. Supp. 3d at 1041 (emphasis

7  removed).  Therefore, this theory of UCL liability is not subject to the heightened pleading

8  standard of Rule 9(b).

9      Further, plaintiffs' UCL claim survives the pending motion to dismiss if they adequately

10  plead just one theory of liability.  *See Franklin*, 2020 WL 3213676, at *1.

11      2.    Federal Rule of Civil Procedure 8

12      As stated previously, plaintiffs allege under the UCL's unlawful prong that defendants'

13  use of PxDx violated California Health & Safety Code § 1367.01(e).  This provision states:

14      No individual, other than a licensed physician or a licensed health
        care professional who is competent to evaluate the specific clinical
15      issues involved in the health care services requested by the provider,
        may deny or modify requests for authorization of health care services
16      for an enrollee for reasons of medical necessity.

17  Cal. Health & Safety Code § 1367.01(e).

18      Defendants argue that their use of PxDx review did not violate California Health & Safety

19  Code § 1367.01(e) because the "PxDx process allows Cigna's medical directors—doctors—to

20  review claims and either approve or deny them."  (Doc. No. 46 at 28.)  For the same reasons

21  discussed previously, the court is not persuaded by this argument.  Taking plaintiffs' allegations

22  as true, the PxDx algorithm, rather than "a licensed physician or a licensed health care

23  professional[,]" denies the requests for authorization of health care services.  Cal. Health & Safety

24  Code § 1367.01(e); (Doc. No. 36 at ¶ 3).  The physician or health care professional allegedly

25  cannot even provide oversight for the algorithm where defendants' doctors spend an average of

26  1.2 seconds on each request.  (*Id.*)  The court therefore finds plaintiffs' TAC alleges a violation of

27  California Health & Safety Code § 1367.01(e).  Defendants do not contest that a violation of

28  California Health & Safety Code § 1367.01(e) constitutes a violation of the UCL under the

21

1  unlawful prong.  (Doc. No. 46.)  Therefore, the court finds plaintiffs have adequately plead a

2  violation of the UCL.

3         3.   <u>ERISA Preemption</u>

4       "ERISA expressly preempts 'any and all State laws insofar as they may now or hereafter

5  relate to any employee benefit plan.'"  *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643,

6  665 (9th Cir. 2019) (quoting 29 U.S.C. § 1144(a)).  "To provide some 'workable standards' for

7  determining the scope of § 1144(a), the [Supreme] Court has identified 'two categories' of state-

8  law claims that 'relate to' an ERISA plan—claims that have a 'reference to' an ERISA plan, and

9  claims that have 'an impermissible "connection with"' an ERISA plan."  *Id.* (quoting *Gobeille v.*

10  *Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)).  "A claim has an impermissible 'connection

11  with' an ERISA plan if it governs a central matter of plan administration or interferes with

12  nationally uniform plan administration, . . . or if it bears on an ERISA-regulated relationship[.]"

13  *Id.* at 666 (citation omitted).  "A state-law claim has a 'reference to' an ERISA plan if it is

14  premised on the existence of an ERISA plan or if the existence of the plan is essential to the

15  claim's survival."  *Id.* at 665.  "We look to the objectives of the ERISA statute as a guide, bearing

16  in mind a starting presumption that Congress did not intend to supplant state laws regulating a

17  subject of traditional state power unless that power amounts to a direct regulation of a

18  fundamental ERISA function."  *Id.* at 666 (citation omitted, cleaned up).  "ERISA's preemption

19  provision functions even when the state action purports to authorize a remedy unavailable under

20  the federal provision."  *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010)

21  (citation omitted, cleaned up).  The savings clause protects from express preemption "any law of

22  any State which regulates insurance, banking, or securities."  29 U.S.C. § 1144(b)(2)(A).

23       According to complete preemption, "any state-law cause of action that duplicates,

24  supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear

25  congressional intent to make the ERISA remedy exclusive and is therefore barred[.]"  *Depot, Inc.*,

26  915 F.3d at 667.  Complete "preemption can bar a state-law claim even if the elements of the state

27  cause of action do not precisely duplicate the elements of an ERISA claim, . . . but a state-law

28  claim is not preempted if it reflects an attempt to remedy a violation of a legal duty independent

of ERISA[.]"  *Id.* (citation omitted, cleaned up).  "State-law claims are based on other independent legal duties when they are in no way based on an obligation under an ERISA plan and would exist whether or not an ERISA plan existed."  *Id.* (citation omitted).

Defendants argue plaintiffs' UCL claim is expressly preempted because it seeks recovery for loss of insurance benefits and relies on improper processing of plaintiffs' claims.  (Doc. No. 46 at 31.)  The court agrees with defendants that where the plaintiff's state law claim seeks recovery for the loss of insurance benefits, the claim is expressly preempted by ERISA.  *Wise*, 600 F.3d at 1191 ("The state law theories of fraud, misrepresentation, and negligence all depend on the existence of an ERISA-covered plan to demonstrate that Wise suffered damages: the loss of insurance benefits.").  Furthermore, where "state law causes of action allege[] the 'improper processing of a claim for benefits under an insured employee benefit plan[,]'" ERISA expressly preempts those claims as well.  *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 103 F.4th 597, 603 (9th Cir. 2024) (quoting *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007 (9th Cir. 1998), *as amended* (Aug. 3, 1998)); *see also Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 681 (9th Cir. 2022) (characterizing *Pilot Life Ins. Co.* as "explaining that state common law duties concerning claims-handling 'relate[d] to' to ERISA plans for purposes of ERISA's express preemption provision") (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987)).  Here, plaintiffs' allegations concern the purported improper processing of their claims for benefits under insured employee benefit plans.  Specifically, plaintiffs allege that PxDx was used to process their claims instead of the expertise of doctors in violation of California Health & Safety Code § 1367.01(e), and that defendants failed to provide true and correct reasons for why claims were denied in violation of California Health & Safety Code § 1367.01(h)(4).  (Doc. No. 49 at 28.)

Plaintiffs argue their UCL claim relies instead on duties that "arose independently from the terms of any ERISA plan or from any contractual duties imposed by ERISA[.]"  (*Id.*) (citing *Dist. Council 16 N. Cal. Health & Welfare Tr. Fund v. Sutter Health*, No. 15-cv-00735-TEH, 2015 WL 2398543 (N.D. Cal. May 19, 2015)).  These purportedly independent duties include "state law duties to engage in fair business practices (as required by the UCL), to allow only

1  doctors to make medical necessity determinations (as required by Section 1367.01(e)), and to

2  provide true and correct reasons for why claims are denied (as required by Section

3  1367.01(h)(4))[.]"  (Doc. No. 49 at 28.)

4        While plaintiffs' argument would bear on complete preemption, it does not bear on

5  express preemption, which does not depend on whether the claims are based on independent legal

6  duties.  *Depot, Inc.*, 915 F.3d at 665–67; *see also Delgado v. ILWU-PMA Welfare Plan*, No. 2:18-

7  cv-05539-CBM, 2018 WL 8014336, at *3 (C.D. Cal. Nov. 20, 2018) ("The two types of ERISA

8  preemption are not interchangeable.").

9        Plaintiffs also argue that the savings clause applies.  (Doc. No. 49 at 28.)  As stated

10  previously, the savings clause protects from express preemption "any law of any State which

11  regulates insurance, banking, or securities."  29 U.S.C. § 1144(b)(2)(A).  "To determine" whether

12  a statute regulates insurance, "we ask whether the law:  (1) is specifically directed toward entities

13  engaged in insurance; and (2) substantially affects the risk pooling arrangement between the

14  insurer and the insured."  *Rudel v. Hawai'i Mgmt. All. Ass'n*, 937 F.3d 1262, 1272 (9th Cir. 2019)

15  (citation omitted, cleaned up).  "Under ERISA, a law is specifically directed toward entities

16  engaged in insurance if it is grounded in policy concerns specific to the insurance industry."  *Id.*

17  (citation omitted, cleaned up).  "A state statute substantially affects the risk pooling arrangement

18  between the insurer and the insured when it impacts the terms by which insurance providers must

19  pay plan members."  *Id.* at 1274.  Put differently, a state statute "substantially affect[s] the risk

20  pooling arrangement between insurer and insured . . . [b]y expanding the number of providers

21  from whom an insured may receive health services" or by "alter[ing] the scope of permissible

22  bargains between insurers and insureds[.]"  *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538

23  U.S. 329, 339 (2003).

24        Plaintiffs argue "that the Knox-Keene Act (containing Section 1367.01) falls under

25  ERISA's savings clause[.]"  (Doc. No. 49 at 28) (citing *Clark v. Grp. Hospitalization & Med.*

26  *Servs.*, No. 10-cv-00333-BEN-BLM, 2010 WL 5093629, at *4–6 (S.D. Cal. 2010)).  However,

27  the case plaintiffs rely upon does not stand for the proposition that the Knox-Keene Act generally

28  falls within the savings clause, but rather that a specific, different provision of the Knox-Keene

24

1   Act falls within the savings clause for reasons unique to that provision.  *Id.* at *4.  The court

2   therefore turns to analyzing California Health & Safety Code § 1367.01(e) according to the test

3   outlined above.  *See Franklin*, 2020 WL 3213676, at *1 (rejecting the defendants' argument that

4   the plaintiffs' UCL claim is partially preempted because "Federal Rule of Civil Procedure

5   12(b)(6) does not provide a mechanism for dismissing only a portion of a claim.").

6        California Health & Safety Code § 1367.01(e) is specifically directed toward entities

7   engaged in insurance because it applies to certain "health care service plan[s] and any entity with

8   which it contracts for services[,]" California Health & Safety Code § 1367.01(a), and restricts

9   how medical necessity determinations are made, California Health & Safety Code § 1367.01(e).

10   *See Standard Ins. Co. v. Morrison*, 584 F.3d 837, 842 (9th Cir. 2009) ("Standard asserts initially

11   that Morrison's practice of disapproving discretionary clauses is not specifically directed at

12   insurance companies because it is instead directed at ERISA plans and procedures.  Unfortunately

13   for Standard, ERISA plans are a form of insurance, and the practice regulates insurance

14   companies by limiting what they can and cannot include in their insurance policies.").

15        The question then is whether California Health & Safety Code § 1367.01(e) substantially

16   affects the risk pooling arrangement between the insurer and insured.  The court finds that

17   requiring a licensed physician or licensed health care professional to review medical necessity

18   determinations "alter[s] the scope of permissible bargains between insurers and insureds[.]"  *Id.* at

19   844 (citation omitted).  "No longer may [California] insureds seek insurance" that allows for

20   medical necessity determinations by anyone or anything besides a licensed health care

21   professional "in exchange for a lower premium."  *Id.* (citation omitted).  Further, as a practical

22   matter, requiring that a licensed physician or licensed health care professional review medical

23   necessity determinations increases the likelihood that "a greater number of claims" will be

24   "paid[,]" as demonstrated by plaintiffs' allegations.  *Id.* at 845 (9th Cir. 2009); (Doc. No. 36 at

25   ¶ 4) ("The PXDX system saves Cigna money by allowing it to deny claims it previously paid[.]").

26   Therefore, the undersigned concludes that the savings clause applies, and plaintiffs' UCL claim is

27   not expressly preempted.

28   /////

25

As defendants have clarified in their reply, they do not argue complete preemption (Doc. No. 50 at 19), and the court therefore need not consider whether plaintiffs' claims are subject to complete preemption. *Cf. Steigleman v. Symetra Life Ins. Co.*, No. 19-cv-08060-PCT-DJH, 2019 WL 13199202, at *2 (D. Ariz. Nov. 25, 2019) ("The Ninth Circuit has held that in a benefits-due action, such as this one, ERISA preemption is a waivable defense.") (citing *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir. 1986)).

**F.    Leave to Amend**

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

Here, plaintiffs have not requested leave to amend. (Doc. No. 49.) Nonetheless, this is the first time the court has ruled on the sufficiency of plaintiffs' complaint, and it is possible the deficiencies the court has identified above may be capable of being cured by the allegation of additional facts. *Cook*, 911 F.2d at 247. Accordingly, plaintiffs will be granted leave to amend.

## CONCLUSION

For the reasons explained above,

1.    Defendants' motion to dismiss (Doc. No. 46) is GRANTED in part and DENIED in part as follows:

      a.    Defendants' motion to dismiss plaintiffs' 29 U.S.C. § 1132(a)(1)(B) claim is granted with leave to amend;

/////

/////

b.     Defendants' motion to dismiss plaintiffs' 29 U.S.C. § 1132(a)(3) claim is granted with leave to amend as to plaintiffs Kisting-Leung, Thornhill, and Bredlow and denied as to all other plaintiffs;

c.     Defendants' motion to dismiss plaintiffs' UCL claim is granted with leave to amend as to plaintiffs Kisting-Leung, Thornhill, Bredlow, and Rentsch and denied with respect to all other plaintiffs;

2.     Within twenty-one (21) days from the date of entry of this order, plaintiffs shall file either a fourth amended complaint, or a notice of intent not to do so and to proceed only on the claim found to be cognizable in this order;

3.     If plaintiffs file a notice of intent not to file a fourth amended complaint, then defendants shall file an answer as to the claims found to be cognizable in this order within twenty-one (21) days of service of that notice; and

4.     The court hereby withdraws its previous order referring the setting of an Initial Scheduling Conference to the assigned magistrate judge (Doc. No. 21), and sets an Initial Scheduling Conference for June 9, 2025 at 1:30 PM before the undersigned. The parties shall file a joint scheduling report no later than fourteen (14) days before this date.

IT IS SO ORDERED.

Dated:    **March 30, 2025**           _Dale A. Drozd_

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

27