**CLARKSON LAW FIRM, P.C.**
Glenn A. Danas (SBN 270317)
gdanas@clarksonlawfirm.com
Shireen M. Clarkson (SBN 237882)
sclarkson@clarksonlawfirm.com
Zarrina Ozari (SBN 334443)
zozari@clarksonlawfirm.com
Adrian J. Barrio (SBN 219266)
abarrio@clarksonlawfirm.com
Michael A. Boelter (SBN 353529)
mboelter@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

Derek Brandt
dbrandt@clarksonlawfirm.com
Grace I. Chanin
gchanin@clarksonlawfirm.com
875 North Michigan Avenue, 31st Fl.
Chicago, IL 60611
Tel: (312) 300-6820
Admitted *Pro Hac Vice*

Larkin Turner
lturner@clarksonlawfirm.com
1050 Connecticut Ave. NW, Ste. 500
Washington, DC 20036
Tel: (202) 688-2105
Admitted *Pro Hac Vice*

Attorneys for Plaintiffs

**LOCKRIDGE GRINDAL NAUEN PLLC**
Karen Hanson Riebel
khriebel@locklaw.com
David W. Asp
dwasp@locklaw.com
Simeon A. Morbey
samorbey@locklaw.com
Derek C. Waller
dcwaller@locklaw.com
Emma Ritter Gordon
erittergordon@locklaw.com
Margaret Eve Grabau
megrabau@locklaw.com
100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Admitted *Pro Hac Vice*

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

SUZANNE KISTING-LEUNG, et al.,

Plaintiffs,

vs.

CIGNA CORPORATION, CIGNA HEALTH AND LIFE INSURANCE COMPANY, and DOES 1 through 50, inclusive,

Defendants.

Case No. 2:23-cv-01477-DAD-CSK

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Date: April 5, 2027
Time: 1:30 p.m.
Judge: Hon. Dale A. Drozd
Courtroom: 4, 15th Floor

TAC Filed: June 15, 2024

## TABLE OF CONTENTS

INTRODUCTION ..... 1
STATEMENT OF FACTS ..... 2
I. Cigna's Uniform Medical-Necessity Standard Requires Individualized Clinical Judgment. ..... 2
II. Cigna Replaced Individualized Clinical Judgment with a Uniform Code-Matching System. ..... 3
A. A rigid, predetermined list of matched codes—not any individual patient's circumstances—drives every PxDx denial. ..... 4
B. PxDx denies claims as not medically necessary without consideration of a patient's medical circumstances. ..... 5
C. PxDx denials operate without a doctor's individualized clinical review. ..... 5
D. PxDx operated at massive, systemwide scale—not as an occasional or claim-specific tool. ..... 8
E. Cigna concealed PxDx from members and Administrative Services Only clients. ..... 9
F. PxDx was highly profitable to Cigna, generating hundreds of millions of dollars in denial-related savings. ..... 10
G. External scrutiny caused Cigna to rebrand, but not change, its practice. ..... 11
III. Cigna applied PxDx to summarily deny Plaintiffs' claims without meaningful review. ..... 12
A. Cigna used PxDx to deny Plaintiff Michael Mahshigian's claim for anesthesia during a procedure to treat his chronic spinal pain. ..... 12
B. Cigna used PxDx to deny Plaintiff Randall Rentsch's claim for drug testing that his pain-management treatment required. ..... 13
ARGUMENT ..... 14
I. Cigna's Uniform PxDx Denial Practice Warrants Certification of a Nationwide ERISA Class. ..... 14
A. The proposed ERISA Class satisfies Rule 23(a)'s requirements. ..... 15
1. Cigna's Own Claims Data Establishes Numerosity: More Than Three Million ERISA Class Members. ..... 15
2. Cigna's Uniform PxDx Denials Present Common Questions with Common Answers. ..... 16
a. Whether PxDx complied with the plans' medical necessity requirements has a class-wide answer. ..... 17

b. Whether Cigna's use of PxDx comported with ERISA's claims regulations raises additional common questions. ....17

c. Whether Cigna put its own financial interests ahead of plan members' has a class-wide answer. ....19

3. Cigna's Uniform PxDx Practice Establishes Typicality. ....20

4. Plaintiffs and Counsel will adequately represent the proposed ERISA Class. ....20

B. The proposed ERISA Class satisfies Rule 23(b)'s requirements. ....21

1. Common questions predominate over any individual questions and a class action is superior to other available methods of adjudication. ....21

a. Whether Cigna's uniform PxDx process breached its fiduciary duties is a predominant common question. ....22

b. The surcharge remedy can be established through a common, class-wide formula rather than individualized loss determinations. ....23

c. A class action is superior to individual litigation. ....25

2. Plaintiffs satisfy Rule 23(b)(2) with respect to the prospective injunctive, reprocessing, and declaratory relief. ....25

a. Plaintiffs are entitled to prospective injunctive and declaratory relief. ....26

b. Reprocessing satisfies Rule 23(b)(2) as retrospective injunctive relief. ....27

3. The proposed ERISA Class is ascertainable. ....29

II. Cigna's Uniform PxDx Denial Practice Warrants Certification of a California UCL Class. ....30

A. The UCL Class satisfies Rule 23(a)'s requirements. ....30

1. Numerosity: The UCL Class, with over 1,400,000 members, is sufficiently numerous. ....30

2. Commonality: The UCL Class's claims turn on common questions that Cigna's uniform conduct answers. ....31

a. Unlawful Prong—Licensed-Physician Requirement: Whether PxDx violates California's licensed-physician requirement is a common question. ....31

b. Unlawful Prong—Notice Requirement: Whether Cigna's denial letters violate California's notice requirement is a common question. ....31

c. Unfair Prong: Whether batch denial is an unfair practice is a common question. ....32

d. Fraudulent Prong—Concealment of PxDx: Whether Cigna's concealment of PxDx was likely to deceive a reasonable member is a common question. .......... 32

3. Typicality: Plaintiff Mahshigian's UCL claim is typical of the UCL Class's claims because PxDx denied his claim through the same mechanism. .......... 32

4. Adequacy: Plaintiff Mahshigian and class counsel will adequately represent the UCL Class. .......... 32

B. The UCL Class satisfies the Rule 23(b)(3) and 23(b)(2) requirements. .......... 33

1. The UCL Class satisfies Rule 23(b)(3): Common questions predominate, and restitution can be measured class-wide. .......... 33

2. The UCL Class satisfies Rule 23(b)(2): A single injunction would protect every UCL class member. .......... 34

C. The UCL Class is ascertainable. .......... 35

CONCLUSION .......... 35

## TABLE OF AUTHORITIES

**Cases**

*A.B. v. Haw. State Dep't of Educ.*,
30 F.4th 828 (9th Cir. 2022) .......... 30

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013) .......... 16

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) .......... 18

*Aldapa v. Fowler Packing Co., Inc.*,
323 F.R.D. 316 (E.D. Cal. 2018) .......... 20

*Aldapa v. Fowler Packing Co., Inc.*,
No. 115-cv-00420-DAD-SAB
2018 WL 10322910 (E.D. Cal. Feb. 16, 2018) .......... 20

*Alger v. FCA US LLC*,
334 F.R.D. 415 (E.D. Cal. 2020) .......... 14, 15, 21

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 25

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 14

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .......... 29, 35

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011) .......... 27

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .......... 22, 24, 33

*Drake v. Bayer Healthcare LLC*,
No. 24-7158, 2026 WL 1079027
(9th Cir. 2026) .......... 33, 34

*Escalante v. California Physicians' Serv.*,
309 F.R.D. 612 (C.D. Cal. 2015) .......... 20, 35

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989) .......... 27

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 35

*Gabriel v. Alaska Elec. Pension Fund*,
773 F.3d 945 (9th Cir. 2014) .......... 23, 28

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147 (1982) .......... 20

*Guenther v. Lockheed Martin Corp.*,
972 F.3d 1043 (9th Cir. 2020) .......... 15

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) .......... 34

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000) .......... 27

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) .......... 15

*Hill v. Blue Cross & Blue Shield of Mich.*,
409 F.3d 710 (6th Cir. 2005) .......... 26

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .......... 32

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) .......... 33

*Jordan v. County of Los Angeles*,
459 U.S. 810 (1982) .......... 30

*Jordan v. County of Los Angeles*,
669 F.2d 1311 (9th Cir. 1982) .......... 30

*Jordan v. County of Los Angeles*,
713 F.2d 503 (9th Cir. 1983) .......... 30

*Jordan v. County of Los Angeles*,
726 F.2d 1366 (9th Cir. 1984) .......... 30

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) .......... 20

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008) .......... 22

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......... 32

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) .......... 33

*Lytle v. Nutramax Labs., Inc.*,
114 F.4th 1011 (9th Cir. 2024) .......... 33, 34

*Lytle v. Nutramax Labs., Inc.*,
145 S. Ct. 1308 (2025) .......... 33

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ........ 17

*Mass. Mut. Life Ins. Co. v. Superior Court*,
97 Cal. App. 4th 1282 (2002). ........ 32

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ........ 27

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
263 F. Supp. 3d 999 (S.D. Cal. 2017) ........ 15

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ........ passim

*Probe v. State Teachers' Ret. Sys.*,
780 F.2d 776 (9th Cir. 1986) ........ 29

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ........ 33

*Rabin v. Google LLC*,
787 F. Supp. 3d 934 (N.D. Cal. 2025) ........ 33

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ........ 22

*Skinner v. Northrop Grumman Ret. Plan B*,
673 F.3d 1162 (9th Cir. 2012) ........ 23, 24

*Spinedex Physical Therapy USA, Inc. v. United HealthCare of Ariz., Inc.*,
770 F.3d 1282 (9th Cir. 2014) ........ 17

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........ 20

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ........ 22

*Vaquero v. Ashley Furniture Indus., Inc.*,
824 F.3d 1150 (9th Cir. 2016) ........ 22, 34

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ passim

*Wit v. United Behavioral Health*,
79 F.4th 1068 (9th Cir. 2023) ........ 19

**Statutes**

29 U.S.C. § 1104(a)(1) ........ 19

29 U.S.C. § 1104(a)(1)(A) ........ 16

29 U.S.C. § 1104(a)(1)(D) ........ 16, 17
29 U.S.C. § 1132(a)(3) ........ passim
Cal. Health & Safety Code § 1367.01(e) ........ 31, 35
Cal. Health & Safety Code § 1367.01(h)(4) ........ 31

**Other Authorities**

Cal. Dep't of Managed Health Care, *DMHC fines Cigna $500,000 for improperly reviewing and denying health care claims payments* (Oct. 8, 2025) ........ 12
Patrick Rucker, et al., *How Cigna Saves Millions by Having Its Doctors Reject Claims Without Reading Them*, ProPublica (Mar. 25, 2023) ........ 11
Restatement (Second) of Trusts § 187 (Am. L. Inst. 1959) ........ 27
Restatement (Second) of Trusts § 199 (Am. L. Inst. 1959) ........ 27
Restatement (Second) of Trusts § 205 (Am. L. Inst. 1959) ........ 28
Restatement (Third) of Trusts § 100 (Am. L. Inst. 2012) ........ 28
Restatement (Third) of Trusts § 95 (Am. L. Inst. 2009) ........ 27

**Rules**

Fed. R. Civ. P. 23(a) ........ 14, 15, 20
Fed. R. Civ. P. 23(a)(1) ........ 15
Fed. R. Civ. P. 23(a)(2) ........ 16
Fed. R. Civ. P. 23(a)(4) ........ 20, 21
Fed. R. Civ. P. 23(b) ........ 14
Fed. R. Civ. P. 23(b)(2) ........ 14, 25
Fed. R. Civ. P. 23(b)(3) ........ 14, 21

**Regulations**

29 C.F.R. § 2560.503-1(b) ........ 18
29 C.F.R. § 2560.503-1(b)(5) ........ 18
29 C.F.R. § 2560.503-1(g)(1)(v)(B) ........ 18

# INTRODUCTION

Defendants Cigna Corporation and Cigna Health and Life Insurance Company (collectively, "Cigna") decide medical claims with a machine, not a doctor. Cigna's plans promise that a medical director will determine medical necessity by applying clinical criteria to the patient's circumstances. Cigna instead uses "PxDx," a fixed list matching diagnosis codes to procedure codes. Cigna codes the list and then applies it automatically to every claim that follows. When a claim's diagnosis code is not on the list, PxDx flags it for denial. A medical director then rubber stamps the denials in a matter of seconds, in batches of up to 50 at a time, without opening a single medical record.

PxDx works exactly as Cigna designed it. Cigna built it to deny high-volume, low-dollar claims it had "[redacted]." It credited PxDx with [redacted] in savings and never disclosed it to members. After ProPublica exposed the practice in 2023, Cigna removed the medical director and relabeled the denials "administrative." Its own witness conceded that [redacted] In December 2025, [redacted]. It explained that a medical-necessity denial "[redacted]"

The uniformity of Cigna's practice drives this motion. The central question is whether a code-matching filter can satisfy the plans' medical-necessity standard and Cigna's ERISA fiduciary duties when it is stripped of any physician-led, individualized review of a claimant's diagnosis, treatment, or medical record. That is a single question with a single, class-wide answer. Cigna did not decide these claims individually, and it cannot defend them individually either.

Plaintiffs Michael Mahshigian and Randall Rentsch (collectively, "Plaintiffs") move to certify two classes, each defined by Cigna's use of PxDx to deny coverage: (1) a nationwide ERISA Class; and (2) a California Unfair Competition Law ("UCL") Class.[1] Plaintiffs seek certification of both classes under Rule 23(b)(2) for injunctive, declaratory, and reprocessing relief, and under Rule 23(b)(3) for surcharge and restitution. Each of the millions of claims in both classes passed through the same code

[1] Only Plaintiff Mahshigian moves to certify the UCL class.

match, the same batch sign-off, and the same template letter. The questions at the center of this case are whether that process satisfies the plans, ERISA, and California law. Those questions will generate common answers that resolve every class member's claim at once. They predominate because they turn on what Cigna did, as shown by its documents and witnesses, not on any claimant's diagnosis or medical history. The relief Plaintiffs seek is equally independent of individual circumstances. An injunction and a reprocessing order would apply to every class member alike, and surcharge and restitution can be calculated class-wide from Cigna's records. The Court should certify both classes, appoint Plaintiffs Mahshigian and Rentsch as class representatives, and appoint their counsel as class counsel.

## STATEMENT OF FACTS

### I. Cigna's Uniform Medical-Necessity Standard Requires Individualized Clinical Judgment.

At all times relevant, Plaintiffs and the members of the class were covered by a health policy or plan administered by Cigna which provided medical and surgical benefits. Mahshigian Decl. ¶ 3; Rentsch Decl. ¶ 2; Third Am. Compl. ("3AC") ¶¶ 24–25, ECF No. 36. The health plan sets forth the terms and conditions of coverage. Each plan defines medical necessity in substantially identical language. In relevant part, the term "medically necessary" is defined to mean:

> Health care services, supplies and medications provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, condition, disease or its symptoms, that are all of the following *as determined by a Medical Director or Review Organization*: required to diagnose or treat . . .;. . . in accordance with generally accepted standards of medical practice; clinically appropriate in terms of type, frequency, extent, site and duration; not primarily for the convenience of the patient, Physician or Other Health Professional; not more costly than an alternative service(s). . .; and rendered in the least intensive setting. . . .

Mahshigian Decl., Ex. 1 ("Mahshigian SPD") at MAHSHIGIAN000075–076 (emphasis added); *see also* Rentsch Decl., Ex. 1 ("Rentsch SPD") at CIG_KL00001568.

Cigna issued coverage policies applicable to all plans across all lines of business, including [redacted]. *See* Ex. 14 (Stephenson Dep.) 60:12–61:3; Danas Decl. Ex. ("Danas Ex.") 45 ("OPS-48") at 1. [redacted]

[redacted]; Danas Ex. 14 (Stephenson Dep.) 72:25–74:5.

The plans commit the medical necessity determination to a "Medical Director," [redacted] *See* Mahshigian SPD at MAHSHIGIAN000075–076; Rentsch SPD at CIG_KL00001568. [redacted] rests on the same premise: [redacted]" Danas Ex. 45 ([redacted]) at 1, 3–4; *see also id.* at 5 ("[redacted]"). Dr. Patricia Stephenson, a long-serving medical director and medical officer at Cigna, [redacted]." Danas Ex. 14 (Stephenson Dep.) 69:25–70:4; *see also id.* at 22:5–13, 35:4–18. When asked whether [redacted]" *Id.* at 74:20–24.

**II. Cigna Replaced Individualized Clinical Judgment with a Uniform Code-Matching System.**

In 2010, Cigna decided [redacted]. *See* Danas Ex. 7 (Hankoff 30(b)(6) Dep.) 74:18-75:1;[2] Danas Ex. 50. Cigna figured that [redacted].

[redacted]. Danas Ex. 10 (Kessel Dep.) 100:17–23; Danas Ex. 36. So Cigna's governance committee [redacted],

[2] "[redacted]" Ex. 7 (Hankoff 30(b)(6) Dep.) 74:18–75:1.

[redacted].” Danas Ex. 10 (Kessel Dep.) 96:20–24, 100:5–13, 101:10–15; Danas Ex. 36. PxDx uses [redacted]. Danas Ex. 6 (Grider Dep.) 76:17–77:10, 81:17–82:23. Cigna applied the PxDx tool “[redacted] Danas Ex.8 (Hankoff 30(b)(6) Dep.) 344:17–345:23.

Cigna [redacted]. Dr. Julie Kessel led a work group formed [redacted]” Danas Ex. 10 (Kessel Dep.) 100:5–16, 102:6–11, 103:3–11; Danas Ex. 36. PxDx armed Cigna with a capability it never had before: the power to deny, in bulk, claims it had previously been paying.

**A. A rigid, predetermined list of matched codes—not any individual patient's circumstances—drives every PxDx denial.**

Every PxDx denial operates through coding. This coding, according to Cigna, is [redacted]. Danas Ex. 6 (Grider Dep.) 81:17–82:3. [redacted]. *See id.* at 82:8–23.

Take Cigna's Vitamin D testing policy. The policy's coding appendix states that [redacted].” [redacted]. T[redacted] *Id.* at 272:14–273:9; Danas Ex. 30 at CIG_SNYDER00028876, Danas Ex. 32 at CIG_SNYDER00028947. [redacted]

- [redacted]” Danas Ex. 6 (Grider Dep.) 273:10–20.
- [redacted] *Id.* at 273:22–274:6.

This mechanism is not limited to Vitamin D testing. [redacted]. *Id.* at 277:11–279:2.

Thus, PxDx [redacted]. Grider explained that "[redacted]" in [redacted]. *Id.* at 81:17–82:23. [redacted] *Id.* at 82:8–23; *see also id.* at 76:20–77:5. [redacted]." *Id.* at 312:3–19.

**B. PxDx denies claims as not medically necessary without consideration of a patient's medical circumstances.**

Cigna's coverage policies state [redacted]." *Id.* at 272:16–19, 273:3–5. A matching diagnosis code means the claim "[redacted]"; a non-matching code means [redacted]." *Id.* at 273:17–20, 274:1–6.

Cigna's template denial letter told members [redacted]. It stated that the member was receiving the letter because, "[redacted]"[3]—[redacted]. *Id.* at 286:6–10; Danas Ex. 31. When asked point-blank whether [redacted]" Danas Ex. 6 (Grider Dep.) 286:25–287:4.

**C. PxDx denials operate without a doctor's individualized clinical review.**

Once Cigna's PxDx edits run on the claims, they are [redacted]. Danas Ex. 7 (Hankoff 30(b)(6) Dep.) 149:4-153:25. By Cigna's own admission, the claims are

---

[3] [redacted] Danas Ex. 49.

[redacted]. Danas Exs. 25, 26, 47 ([redacted]), 48 (the [redacted]). The medical director [redacted] Danas Ex. 4 (Evans-Blackshear Dep.) 77:11–78:8, 220:14–221:24; Danas Ex. 44 ([redacted] Dr. Hankoff described [redacted]. Danas Ex. 7 (Hankoff 30(b)(1) Dep.) 127:2–17. [redacted]" Danas Ex. 4 (Evans-Blackshear Dep.) 76:12–17, 77:1–5; Danas Ex. 25; *see also* Danas Ex. 6 (Grider Dep.) 76:19–77:10, 77:24–78:18 ([redacted]). Medical directors cannot make this type of assessment because [redacted]. *See* Danas Ex. 42 ([redacted]").

[redacted]." *Id.* Through one click of a button, the medical director would [redacted].

Medical directors, in accessing these claims, "[redacted]." Evans-Blackshear Dep. at 77:19–25; Danas Ex. 25. For years, [redacted]. Danas Ex. 4 (Evans-Blackshear Dep.) 165:5–166:4, 167:12–168:1; *see also* Danas Ex. 14 (Stephenson Dep.) at 104:18–105:25 ([redacted]"); Danas Ex. 46 (screenshot from exhibit below).

[redacted]

With PxDx, medical directors would s[redacted]. Danas Ex. 3 (Dopke Dep.) 97:5–19 ([redacted]); Danas Ex. 70 (Rossi Dep.) 145:9-20 [redacted]). [redacted]. Danas Ex. 6 (Grider Dep.) 320:12–13, 321:11–18; Danas Ex. 33. When Cigna [redacted]. Danas Ex. 29. One Cigna employee stated that [redacted].” *Id.*

Because Cigna medical directors [redacted]” Danas Ex. 13 (Rossi Dep.) 84:6–23,

116:22–119:1, 120:24–122:6. Dr. Finley confirmed [redacted]" Danas Ex. 5 (Finley Dep.) 202:10–203:7; Danas Ex. 40. Dr. Kessel, the [redacted]." Danas Ex. 10 (Kessel Dep.) 164:6–165:10.

Cigna contends [redacted]. But this argument is undercut by class-wide evidence. First, Cigna [redacted]. Danas Ex. 38 at CIG_SNYDER00245179. [redacted]. [redacted] Danas Ex. 10 (Kessel Dep.) 258:2–260:12; Danas Ex. 39.

**D. PxDx operated at massive, systemwide scale—not as an occasional or claim-specific tool.**

Cigna [redacted]" Danas Ex. 4 (Evans-Blackshear Dep.) 43:21–25. In an internal [redacted]. *Id*. at 190:24–192:6; Danas Ex. 28. Evans-Blackshear [redacted]" Danas Ex. 4 (Evans-Blackshear Dep.) 191:22–25.[4]

Cigna's financial records [redacted] PxDx-related edits accounted for "[redacted]

---

[4] [redacted] Danas Ex. 9 (Hankoff 30(b)(1) Dep.) 127:2–17.

[redacted]. Danas Ex. 16 (Stinson 30(b)(1) Dep.) 96:16–97:11, 98:8–19, 97:19–98:8, 101:20–23; Danas Ex. 20. Thus, the [redacted]. And the [redacted].

**E. Cigna concealed PxDx from members and Administrative Services Only clients.**

Cigna [redacted]. [redacted]. Danas Ex. 4 (Evans-Blackshear Dep.) 206:5–25, 209:19–21; Danas Ex. 31. [redacted]." Danas Ex. 6 (Grider Dep.) 287:6–13. Indeed, PxDx denial letters [redacted]. Danas Ex. 12 (Reddick Dep.) 123:8–124:16, 140:16–142:1; Danas Ex. 49.

[redacted]." Danas Ex. 11 (Monchick Dep.) 224:11–17; Danas Ex. 43. Monchick, [redacted]" Danas Ex. 11 (Monchick Dep.) 229:15–20. Roy, [redacted]. *Id.* at 117:11–14, 251:3–5, 252:1–10. [redacted]. *Id.* at 237:15–20.

[redacted]" Danas Ex. 6 (Grider Dep.) 325:10–326:5, 330:13–331:2. [redacted]

[redacted]. Danas Ex. 6 (Grider Dep.) 326:6–327:6. [redacted].” *Id.* As a result of Cigna’s [redacted]. Danas Ex. 4 (Evans-Blackshear Dep.) 207:3–6; *see also* Danas Ex. 53 ([redacted]) at CIG_SNYDER02012288 (“[redacted].”).

**F. PxDx was highly profitable to Cigna, generating hundreds of millions of dollars in denial-related savings.**

Cigna [redacted].” Danas Ex. 4 (Evans-Blackshear Dep.) 38:8–23, 58:1–3; Exs. 23, 24. [redacted]. Danas Ex. 6 (Grider Dep.) 312:24–313:1, 316:14–17, 333:3–16, 334:12–335–12; Danas Ex. 33. Kessel’s [redacted]. Danas Ex. 10 (Kessel Dep.) 78:1–20, 81:9–23; Danas Ex. 35; *see also* Danas Ex. 53 ([redacted]) CIG_SNYDER02012288 ([redacted]).

Cigna’s own internal materials show [redacted]. Danas Ex. 5 (Finley Dep.) 251:7–24; Danas Ex. 41. [redacted]

[5] Administrative Services Only clients means self-insured plans that hire Cigna as the plan’s claims administrator.

[redacted]." Danas Ex. 5 (Finley Dep.) 250:4–251:2; Danas Ex. 41.

### G. External scrutiny caused Cigna to rebrand, but not change, its practice.

On March 25, 2023, the investigative news outlets ProPublica and The Capitol Forum published an investigation, based on internal Cigna documents and former-employee interviews, reporting that Cigna medical directors could reject a claim on medical grounds without ever opening the patient's file.[6] The article reported that Cigna medical directors denied over 300,000 payment requests in a single two-month period, averaging 1.2 seconds of time spent per claim. *See supra* note 6. A former Cigna medical director described the process in five words: "We literally click and submit." *Id.*

Cigna's response was [redacted]. [redacted] Danas Ex. 4 (Evans-Blackshear Dep.) 162:25–164:19, 167:12–168:1. Then, [redacted]. Danas Ex. 6 (Grider Dep.) 299:13–300:11, 301:14–302:5. Grider, who [redacted]." *Id.* at 300:13–17. [redacted]." Danas Ex. 4 (Evans-Blackshear Dep.) 234:15–20, Danas Ex. 70.

[redacted]

[6] Patrick Rucker, et al., *How Cigna Saves Millions by Having Its Doctors Reject Claims Without Reading Them*, PROPUBLICA (Mar. 25, 2023 5:00 AM), https://www.propublica.org/article/cigna-pxdx-medical-health-insurance-rejection-claims.

[redacted]

[redacted]

## III. Cigna applied PxDx to summarily deny Plaintiffs' claims without meaningful review.

### A. Cigna used PxDx to deny Plaintiff Michael Mahshigian's claim for anesthesia during a procedure to treat his chronic spinal pain.

Michael Mahshigian was enrolled with Cigna in California from July 23, 2018, through December

[7] Cal. Dep't of Managed Health Care, *DMHC fines Cigna $500,000 for improperly reviewing and denying health care claims payments*, (Oct. 8, 2025), DMHC Press Release, https://www.dmhc.ca.gov/Resources/Newsroom/PressReleases/October8,2025.aspx ("DMHC Press Release"); *see also* Danas Ex. 7 (Hankoff 30(b)(6) Dep.) 102:21–106:22.

31, 2022, as a beneficiary of a plan sponsored by Howard University and Howard University Hospital, for which Cigna served as the named claims administrator with discretion to make benefit determinations. Proposed Fourth Am. Comp. ("P4AC") ¶¶ 17, 43, ECF No. 101-2. In 2022, a prior spinal injury left Mahshigian in severe chronic pain and unable to perform everyday activities, and his doctors routinely provided radiofrequency ablation to treat his pain while he awaited cervical fusion surgery. *Id.* ¶¶ 44–45.

On October 20, 2022, Mahshigian underwent radiofrequency ablation. *Id.* ¶ 46; Mahshigian Decl. ¶ 4. Cigna used PxDx to deny the claim for the anesthesia associated with that procedure as not medically necessary, without a doctor individually reviewing the claim. P4AC ¶ 46. His anesthesiologist resubmitted the claim, and Cigna again denied it as not medically necessary using PxDx, again without the required physician review. *Id.* ¶ 47. [redacted] Panis Report ¶ 59. Although Cigna's automated process affixed a doctor's signature to the denial letter and represented that any appeal would be reviewed by a doctor "who wasn't involved in making the first decision," no doctor had meaningfully reviewed the claim when PxDx denied it. P4AC ¶¶ 48–49. Cigna never disclosed the PxDx process or its implications to Mahshigian. *Id.* ¶¶ 50, 53; *see also* Panis Report ¶ 59 (Marshigian's PxDx denials [redacted]).

**B. Cigna used PxDx to deny Plaintiff Randall Rentsch's claim for drug testing that his pain-management treatment required.**

Plaintiff Randall Rentsch was employed by the Lennar Corporation from 2015 to 2019 and was a Cigna member through the Lennar employee benefit plan from 2015 to 2019, and again from 2025 until February 2026. Danas Ex. 17 (Rentsch Dep.) 32:15–17, 223:17–23. Cigna provided claim administration services for the Lennar plan. *Id.* 183:24–184:4; Danas Ex. 73 at CIG_KL00001518. Rentsch was treated for neck pain at Temecula Pain Management, which, as part of its treatment protocol, required him to take periodic drug tests to confirm that he was taking his prescribed medications as directed. Danas Ex. 17 (Rentsch Dep.) 46:10–16, 98:15–99:4, 177:2–16. The samples were sent to Ally Clinical Diagnostics, an out-of-network laboratory used by his provider's office. *Id.* 106:20–107:6, 138:15–139:13.

Cigna sent Rentsch a letter denying payment for a definitive drug test performed on August 26,

2016, on the ground that it was "not medically necessary," citing Cigna Medical Coverage Policy 0513. *Id.* 96:1–97:9, 98:9–14, 105:19–106:12, 108:16–24; Danas Ex. 71 at KISTING-LEUNG-PLT-00129–32 ("Denial Letter"); *see also* Danas Ex. 72 (Cigna Medical Coverage Policy 0513). The Denial Letter bears the internal code "PxDx-15" in its bottom right corner, but contains no explanation as to what PxDx means, how PxDx functions, or that it displaces a doctor's judgment in favor of a code-matching algorithm. Danas Ex. 17 (Rentsch Dep.) 95:13–25; Rentsch Decl. Ex. 2; *see also* Panis Report ¶ 59 (Rentsch's PxDx denials [redacted]).

**ARGUMENT**

A plaintiff seeking class certification must satisfy Rule 23(a)'s prerequisites and one of Rule 23(b)'s requirements. *Alger v. FCA US LLC*, 334 F.R.D. 415, 422 (E.D. Cal. 2020). Although the Court must consider merits questions insofar as they bear on Rule 23's requirements, "Rule 23 does not permit a free-ranging merits inquiry at the certification stage." *Id.* at 422 (citation modified); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Both the ERISA Class and the UCL Class: (1) satisfy Rule 23(a); and (2) should be certified under Rules 23(b)(3) and 23(b)(2).

**I. Cigna's Uniform PxDx Denial Practice Warrants Certification of a Nationwide ERISA Class.**

Plaintiffs seek certification of the following nationwide ERISA Class:

> All persons who are or were participants in, or beneficiaries of, health benefit plans governed by ERISA for which Defendants serve as the claims administrator with respect to medical benefits and who sought and were denied coverage for benefits, in whole or in part, based on Defendants' use of the PxDx algorithm as alleged herein, at any time on or after January 1, 2011 (hereinafter, "the ERISA Class").

The ERISA Class period begins on January 1, 2011, to [redacted]. Danas Ex. 10 (Kessel Dep.) 45:2–12, 114:1–18, 145:16–146:2; Danas Exs. 34, 37. The ERISA Class period extends through certification because Cigna's [redacted]. Danas Ex. 6 (Grider Dep.) 300:13–17; *see also* Danas Ex. 53 ([redacted]) at CIG_SNYDER02012290, CIG_SNYDER02012296.

ERISA generally requires fiduciary-breach claims to be brought within six years of the last action

constituting part of the breach or three years after the plaintiff acquired actual knowledge of the breach, whichever is earlier. 29 U.S.C. § 1113. But where the fiduciary engaged in fraud or concealment, an action may be commenced within six years after discovery of the breach. *Id.* The exception applies where the fiduciary took affirmative steps to hide its breach. *See Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1057–58 (9th Cir. 2020) (holding that ERISA's fraud-or-concealment exception requires affirmative steps beyond the underlying breach itself to conceal the misconduct); *Moyle v. Liberty Mut. Ret. Benefit Plan*, 263 F. Supp. 3d 999, 1012 (S.D. Cal. 2017).

The exception applies here. Cigna [redacted]. Danas Ex. 6 (Grider Dep.) 286:6–287:13; Dep. Ex. 77; P4AC ¶¶ 48–49. Cigna also [redacted]. Danas Ex. 11 (Monchick Dep.) 224:11–17, 250:15–252:10.

No class member could have discovered the breach before ProPublica's March 25, 2023 investigation. Danas Ex. 4 (Evans-Blackshear Dep.) 207:3–6. Plaintiffs commenced this action in July 2023. Accordingly, the aforementioned exception preserves claims arising from PxDx's inception.

**A. The proposed ERISA Class satisfies Rule 23(a)'s requirements.**

Rule 23(a) requires Plaintiffs to establish numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Alger*, 334 F.R.D. at 422. The proposed ERISA Class satisfies all four requirements.

**1. Cigna's Own Claims Data Establishes Numerosity: More Than Three Million ERISA Class Members.**

Rule 23(a)(1) requires that joinder of all class members be impracticable, not impossible. Fed. R. Civ. P. 23(a)(1); *see Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (defining impracticability as "only the difficulty or inconvenience of joining all members of the class"). Cigna's claims data establishes numerosity. Plaintiffs' expert, Dr. Stan Panis, [redacted]

[redacted]. Panis Report ¶ 55. That is a conservative estimate of potential ERISA class members. Dr. Panis [redacted]. *Id.* ¶¶ 21, 36, 42, 45–46.

Cigna's witnesses [redacted]. Danas Ex. 4 (Evans-Blackshear Dep.) 190:24–192:6; Dep. Ex. 53. [redacted]. Danas Ex. 16 (Stinson 30(b)(1) Dep.), 102:14–103:6; Danas Ex. 20. With millions of potential class members dispersed nationwide, joinder is plainly impracticable.

**2. Cigna's Uniform PxDx Denials Present Common Questions with Common Answers.**

Rule 23(a)(2) requires only one common question capable of generating an answer that will resolve an issue central to the class members' claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A uniform policy or practice applied to every class member generates that kind of answer. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957, 962–63 (9th Cir. 2013) (holding that the legality of a uniform employment practice presented a common question despite variations in class members' individual circumstances); *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (explaining that commonality exists where class members' circumstances vary but their claims share a common core of factual or legal issues).

Plaintiffs claim that Cigna breached its ERISA fiduciary duties of loyalty and adherence to plan terms, 29 U.S.C. § 1104(a)(1)(A), (D), by substituting PxDx's automated code matching for the medical-necessity review required by the plans, and seek relief under 29 U.S.C. § 1132(a)(3). Three questions drive that claim: (1) whether PxDx complied the plans' medical necessity requirements; (2) whether Cigna's use of PxDx violated ERISA's claims regulations; and (3) whether Cigna operated PxDx to advance its own financial interests over those of participants and beneficiaries. Each question turns on Cigna's uniform practices, not individual class members' medical circumstances.

---

[8] [redacted].

**a. Whether PxDx complied with the plans' medical necessity requirements has a class-wide answer.**

ERISA requires a fiduciary to discharge its duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Cigna [redacted]." Stephenson Dep. 60:15–24, 72:10–74:18; Dep. Ex. 204 ("OPS-48") at 5. [redacted]. *See* Dep. Ex. 204 ("[redacted]") at 1; Stephenson Dep. 74:20–24. Cigna [redacted]. Grider Dep. 290:19-291:1, 291:4-8.

Whether PxDx satisfied that requirement presents two common questions. First, [redacted]? Danas Ex. 53 ([redacted]) at CIG_SNYDER02012289. Second, may Cigna deny a claim as not medically necessary based [redacted]? Grider Dep. 291:13–21.

Both questions have class-wide answers because PxDx decided every claim the same way. [redacted]." *Id.* at 273:17–274:6. Grider agreed that this was "[redacted]." *Id.* at 278:15–279:2. That uniform mechanism—[redacted]presents precisely the kind of "common contention" that warrants class treatment. *Parsons*, 754 F.3d at 675.

**b. Whether Cigna's use of PxDx comported with ERISA's claims regulations raises additional common questions.**

When a fiduciary's refusal to pay benefits is "willful and part of a larger systematic breach of fiduciary obligations," the participant has a fiduciary-breach claim, not just a claim for benefits. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985); *see also Spinedex Physical Therapy USA, Inc. v. United HealthCare of Ariz., Inc.*, 770 F.3d 1282, 1294 (9th Cir. 2014) (holding that a fiduciary-breach

claim alleging "willful and systematic" statutory violations was not a disguised benefits claim and did not require exhaustion). The claims regulations sets the standard for that fiduciary conduct. "A benefit determination under ERISA . . . is generally a fiduciary act," and, as the Supreme Court has explained, "[t]he relevant regulations . . . establish extensive requirements to ensure full and fair review of benefit denials." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 218, 220 (2004) (citing 29 C.F.R. § 2560.503-1). Whether PxDx complied with those regulations raises three further common questions.

First, a medical-necessity denial notice must include "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances," or offer one on request. 29 C.F.R. § 2560.503-1(g)(1)(v)(B). PxDx exercised no such judgment to explain. [redacted]. Rossi Dep. 117:8–119:1, 121:19–122:1; Finley Dep. 202:10–203:7; Monchick Dep. 79:22–80:8; Evans-Blackshear Dep. 92:25–95:25. And because Cigna [redacted], Reddick Dep. 129:7–131:1, whether that notice satisfies the regulation is answerable from [redacted] itself.

Second, a plan must "establish and maintain reasonable claims procedures," applied consistently to similarly situated claimants. 29 C.F.R. § 2560.503-1(b), (b)(5). Because PxDx [redacted], the question of whether it was a "reasonable" procedure to deny claims [redacted] may be answered on a class-wide basis.

Third, a claimant is entitled to a "full and fair review" of an adverse determination. 29 C.F.R. § 2560.503-1(h)(1). [redacted]. Evans-Blackshear Dep. 205:22-25, 206:5–25, 207:3–6, 209:19–21; Grider Dep. 285:20–287:13.[9] [redacted].

[9] [redacted]

[redacted]

**c. Whether Cigna put its own financial interests ahead of plan members' has a class-wide answer.**

ERISA requires a fiduciary to discharge its duties "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of" providing them benefits. 29 U.S.C. § 1104(a)(1). In *Wit*, the Ninth Circuit recognized a concrete fiduciary injury where, as here, an administrator acted "in [its] financial self-interest and in conflict with Plan terms" state a concrete fiduciary injury, because beneficiaries are entitled to have their benefits "interpreted and administered in their best interest and in accordance with their Plan terms." *Wit v. United Behavioral Health*, 79 F.4th 1068, 1082–83 (9th Cir. 2023). The court also upheld findings that the administrator was financially incentivized to reduce benefit expenses and left undisturbed findings that those incentives influenced its development of coverage guidelines. *Id.* at 1087, 1089 n.7.

Whether Cigna similarly subordinated participants' interests to its own financial objectives is a common question, answerable through Cigna's own records. [redacted]. Kessel Dep. 100:17–23, 102:6–11, 103:3–11; Dep. Ex. 87. It then [redacted]. Grider Dep. 312:24–313:1, 316:14–17, 333:3–335:12. [redacted]. Finley Dep. 250:4–6, 251:7–19. Further, [redacted]. Evans-Blackshear Dep. 38:8–23, 58:1–3; Kessel Dep. 77:11–78:5, 81:9–23.

This common evidence permits a class-wide determination whether Cigna substituted PxDx for individualized medical review to advance its own financial interests at the expense of participants and beneficiaries. The answer turns on Cigna's decisions and incentives, not the medical circumstances of

individual class members.

**3. Cigna's Uniform PxDx Practice Establishes Typicality.**

Rule 23(a)(3) requires that the named plaintiffs' claims be reasonably coextensive with those of the class, not identical. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (holding that typicality requires representative claims to be "reasonably coextensive" with those of absent class members, not "substantially identical"); *see also Aldapa v. Fowler Packing Co., Inc.*, 323 F.R.D. 316, 327 (E.D. Cal. 2018) (quotation omitted), *order clarified*, No. 115-cv-00420-DAD-SAB, 2018 WL 10322910 (E.D. Cal. Feb. 16, 2018) ("They need not be clones; rather, all that is required is that the claims or defenses be reasonably co-extensive.").

Here, Plaintiffs more than satisfy this requirement. Plaintiffs Mahshigian and Rentsch are typical of the ERISA Class because Cigna subjected them to the same challenged PxDx denial process as absent class members. Both received medical-necessity denials generated through PxDx without the individualized clinical review that ERISA and the governing plans required. Thus, their claims arise from the same uniform conduct and turn on the same legal questions: whether PxDx complied with Cigna's fiduciary obligations and ERISA's claims-procedure requirements. Differences in the medical services sought or the circumstances of individual claims do not alter that common foundation. *Escalante v. California Physicians' Serv.*, 309 F.R.D. 612, 619 (C.D. Cal. 2015) (typicality satisfied where the plaintiff and class members suffered similar injuries arising from the insurer's uniform coverage policy, notwithstanding individualized coverage determinations). The typicality requirement is thus satisfied.

**4. Plaintiffs and Counsel will adequately represent the proposed ERISA Class.**

Rule 23(a)(4) requires Plaintiffs to show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy primarily concerns "the competency of class counsel and conflicts of interest." *Escalante*, 309 F.R.D. at 619 (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982)). Thus, courts inquire: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (identifying these two inquiries as the governing adequacy standard).

Both inquiries are satisfied here. First, Plaintiffs Mahshigian and Rentsch share the ERISA Class's

interest in proving that Cigna breached its fiduciary duties through its uniform PxDx denial process. They challenge the same conduct, advance the same legal theories, and seek the same relief from the challenged conduct as the ERISA Class. Neither Plaintiff seeks preferential treatment or has an interest in establishing liability at the expense of absent ERISA Class members.

Second, Plaintiffs have demonstrated their commitment to representing the ERISA Class. Each has reviewed the pleadings, responded to written discovery, and produced documents; Rentsch also sat for deposition. Mahshigian Decl. ¶ 9; Rentsch Decl. ¶¶ 5, 8. Both understand their responsibilities as Class Representatives to act in the class's interest and have committed to prosecuting this case on behalf of the proposed ERISA Class. Mahshigian Decl. ¶ 8; Rentsch Decl. ¶ 7.

Finally, proposed Class Counsel—the Clarkson Law Firm and Lockridge Grindal Nauen PLLP—have significant experience prosecuting complex class actions, including claims involving ERISA statutory obligations and contract obligations. (Danas Decl. at ¶¶ 8, 10–11, 36–37, 57.) Class Counsel's investigation and prosecution of this action further demonstrates their ability to represent the ERISA Class effectively. *Id*. Plaintiffs and their counsel are thus well qualified to represent the class and satisfy Rule 23(a)(4).

### B. The proposed ERISA Class satisfies Rule 23(b)'s requirements.

In addition to the Rule 23(a) requirements, at least one of the three subsections of Rule 23(b) must be met. *Alger*, 334 F.R.D. at 422. Here, the proposed ERISA Class satisfies Rule 23(b)(3) because the central questions concerning Cigna's uniform PxDx practice predominate over individualized issues, and class treatment is superior for adjudicating Plaintiffs' claims for equitable surcharge. The ERISA Class also satisfies Rule 23(b)(2) because Plaintiffs challenged conduct applicable to the whole ERISA Class and seek corresponding declaratory and injunctive relief. All relief is sought under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

#### 1. Common questions predominate over any individual questions and a class action is superior to other available methods of adjudication.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance

requires courts to examine the relative importance of common and individual questions, asking whether the central can be resolved through class-wide proof. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (explaining that common issues may predominate even when damages or other important matters require separate proceedings); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (holding that questions central to resolving the litigation receive greater weight than less significant individualized issues). The need for some individualized damages calculations does not, by itself, defeat predominance where liability can be established through class-wide proof and damages attributable to the challenged conduct can be computed through a common methodology. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154–55 (9th Cir. 2016) (holding that individualized damages calculations do not defeat predominance where damages flow from the challenged conduct); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (requiring a class-wide damages model to measure damages attributable to the liability theory).

**a. Whether Cigna's uniform PxDx process breached its fiduciary duties is a predominant common question.**

The common questions identified above, *supra* Section I.A.2, predominate because Plaintiffs' fiduciary-duty claims turn on Cigna's uniform PxDx practice, not the individual medical circumstances underlying the proposed ERISA Class members' claims. The central question is whether Cigna breached its fiduciary duties and adherence to plan terms by [redacted]. Answering that question does not require determining whether any individual claimant was entitled to benefits.

This distinction follows directly from the nature of Plaintiffs' claims. Plaintiffs challenge Cigna's administration of the plans, rather than seeking to establish individual entitlement to benefits. *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) (explaining that common questions concerning plan-wide fiduciary misconduct focus on the defendant's conduct rather than the injuries to individual participants). The Ninth Circuit has recognized that this kind of claim rests on an injury of its own: where participants allege that an administrator "administered their Plans in [its] financial self-interest and in conflict with Plan terms," the "alleged fiduciary violation presents a material risk of harm to [their] interest in their contractual benefits." *Wit*, 79 F.4th at 1082–83. That interest—in having benefits

administered "in their best interest and in accordance with their Plan terms," *id.,* is shared by every participant whose claim PxDx processed, and Cigna's uniform practice either impaired it for all of them or for none.

The same is true of Plaintiffs' duty of loyalty theory. Whether Cigna adopted and maintained PxDx to advance its own financial interests turns on Cigna's purposes and incentives, [redacted]. *See supra* at 10–11, 20. That proof is common to the proposed ERISA Class. The relevant question is why Cigna adopted and maintained PxDx, not whether any individual claimant was entitled to benefits denied.

The central liability questions are thus whether Cigna substituted PxDx's [redacted] for the individualized medical-necessity review required by the governing plans, and whether it did so to advance its own financial interests at the expense of plan participants—not whether any individual claimant's treatment would ultimately have been approved. Those questions can be resolved through common evidence of PxDx's design, implementation, and operation, including Cigna's own witnesses. . *See, e.g.*, Danas Ex. 4 (Evans-Blackshear Dep.) 77:11–78:8, 220:14–221:24; Danas Ex. 6 (Grider Dep.) 76:19–77:10, 77:24–78:18, 277:11–279:2; Danas Ex. 13 (Rossi Dep.) 84:6–25, 117:8–119:1, 121:1–122:1; Danas Ex. 5 (Finley Dep.) 202:10–203:7; Danas Ex. 10 (Kessel Dep.) 164:10–20, 165:8–10.

**b. The surcharge remedy can be established through a common, class-wide formula rather than individualized loss determinations.**

Plaintiffs also seek equitable surcharge under ERISA § 502(a)(3) as a remedy for Cigna's breaches of fiduciary duty. The Ninth Circuit recognizes that equitable surcharge may remedy either a fiduciary's unjust enrichment or harm caused by its breach. *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012) ("[T]he remedy of surcharge coul d hold the [fiduciary] liable for benefits it gained through unjust enrichment or for harm caused as the result of its breach."); *see also Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 957–58 (9th Cir. 2014) (explaining that equitable surcharge may require disgorgement of a fiduciary's unjust enrichment and that recovery requires harm and causation, but not detrimental reliance). Under the unjust enrichment measure, "[a] trustee (or a fiduciary) who gains a benefit by breaching his or her duty must return that benefit to the beneficiary."

*Skinner*, 673 F.3d at 1167. Accordingly, Plaintiffs seek the financial gains Cigna obtained through the alleged fiduciary breaches rather than compensation based on the benefits each proposed ERISA Class member might have received following an individualized medical necessity review. Plaintiffs will establish those gains and their causal connection to Cigna's alleged breaches through common financial and operational evidence.

Record evidence shows [redacted]." Danas Ex. 4 (Evans-Blackshear Dep.) 38:8–23, 58:1–3. [redacted]. Danas Ex. 6(Grider Dep.) 312:24–313:1, 316:14–17, 333:3–335:12.

Regarding Cigna's unjust enrichment, [redacted] Danas Ex. 16 (Stinson 30(b)(1) Dep.) 45:12–47:3, 123:13–25. Dr. Kessel's [redacted]. Danas Ex. 10 (Kessel Dep.) 78:1–11, 81:9–23. And Dr. Finley's [redacted]. Danas Ex. 5 (Finley Dep.) 251:7–19, 250:4–6.

These records provide a common evidentiary basis for calculating the gains Cigna obtained from its alleged fiduciary breaches. At certification, Plaintiffs need only show that this remedy is "capable of measurement on a class-wide basis" using a model tied to their theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 34–35 (2013). Dr. Panis's model does so, measuring Cigna's gains [redacted]

[redacted]. Panis Report ¶¶ 29–32, 36–52, 58. The model applies the same formula to every Class member and requires no inquiry into whether each denied service was medically necessary. *Id.* ¶¶ 58, 60–61. Thus, Plaintiffs' requested remedy of equitable surcharge is measurable through common, class-wide evidence.

**c. A class action is superior to individual litigation.**

The scale of the PxDx practice independently confirms that a class action is the superior—indeed, the only realistic—mechanism for adjudicating these claims. Evans-Blackshear's data shows [redacted]. Danas Ex. 4 (Evans-Blackshear Dep.) 191:7–192:6; Danas Ex. 16 (Stinson 30(b)(1) Dep.) 102:12–103:6. The PxDx system [redacted]. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (quotation omitted)). A class action concentrating the common PxDx liability questions in a single proceeding avoids the risk of inconsistent adjudications of the same systemwide practice across thousands of individual claimants and is manifestly superior to case-by-case re-litigation of the same common evidence.

**2. Plaintiffs satisfy Rule 23(b)(2) with respect to the prospective injunctive, reprocessing, and declaratory relief.**

Rule 23(b)(2) permits certification where the defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). This requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688. Unlike Rule 23(b)(3), Rule 23(b)(2) does not require predominance of common questions or a showing

that every class member suffered identical injuries. *Id.*

Plaintiffs satisfy this standard because they challenge Cigna's centrally administered PxDx practice and seek relief from that practice as a whole. As explained above, [redacted]. *Supra* at 7; *see, e.g.*, Danas Ex. 4 (Evans-Blackshear Dep.) 77:11–78:8, 220:14–221:24; Danas Ex. 6 (Grider Dep.) 76:19–77:10; Danas Ex. 13 (Rossi Dep.) 117:8–119:1; Danas Ex. 5 (Finley Dep.) 202:10–203:7. Plaintiffs seek a declaration concerning the lawfulness of substituting [redacted] for the review required by the governing plans and an injunction requiring Cigna to administer claims consistently with those requirements. Such relief would address Cigna's conduct on a class-wide basis, rather than require individualized determinations of whether particular medical services should have been covered. Accordingly, Plaintiffs' claims for class-wide injunctive and corresponding declaratory relief satisfy Rule 23(b)(2).

**a. Plaintiffs are entitled to prospective injunctive and declaratory relief.**

As this Court has already recognized, where a claims-processing practice violates ERISA or governing plan terms, a prospective injunction requiring the defendant to "alter the manner in which it administers" claims constitutes appropriate relief under § 1132(a)(3). MTD Order at 17, ECF No. 55 (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005)). Plaintiffs seek precisely this form of relief: an injunction prohibiting Cigna from using PxDx to deny claims on medical necessity grounds without individualized medical director review of the claimant's actual clinical circumstances. The requested injunction would regulate Cigna's claims-processing practices prospectively, without requiring the Court to determine any proposed ERISA Class member's entitlement to benefits or order payment of any individual claim. Nor does it depend on the separate request for claims reprocessing addressed below. Thus, Plaintiffs' requested injunctive relief takes the form of a "single injunction . . . [that] would provide relief to each member of the class." *Dukes*, 564 U.S. at 360.

Likewise, Plaintiffs seek corresponding declaratory relief establishing that Cigna's use of PxDx to deny claims without individualized review breaches the governing plans and violates ERISA's fiduciary duty and claims-procedure requirements. That declaration would resolve the lawfulness of the challenged conduct through a single legal determination applicable to the proposed ERISA Class, without

adjudicating any individual claimant's entitlement to benefits. Both forms of relief thus address the same allegedly unlawful, systemwide practice through common proof and satisfy Rule 23(b)(2).

**b. Reprocessing satisfies Rule 23(b)(2) as retrospective injunctive relief.**

Separately from the prospective injunction and declaration, Plaintiffs seek an order requiring Cigna to reprocess every claim it denied through PxDx—that is, to decide each one under the plans' medical-necessity standard, by a medical director, as the Plans always required. That relief looks backward, but it is no less injunctive: it is a single command directed at Cigna's conduct.

Reprocessing is independently available under section 1132(a)(3) and appropriate for certification under Rule 23(b)(2). Section 1132(a)(3) authorizes "appropriate equitable relief," encompassing "those categories of relief that were typically available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993); 29 U.S.C. § 1132(a)(3). Because ERISA's fiduciary duties derive from the law of trusts, traditional trust principles inform the remedies available for their breach. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 439–42 (2011); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110–11 (1989). Under those principles, courts of equity could intervene when a trustee abused its discretionary authority, including by acting from an improper motive or failing to exercise the judgment entrusted to it. Restatement (Second) of Trusts § 187 cmts. g, h (Am. L. Inst. 1959); *see also Firestone*, 489 U.S. at 111 (recognizing judicial authority to prevent a trustee's abuse of discretion). Equity also authorized beneficiaries to compel trustees to perform their duties and redress breaches of trust. Restatement (Second) of Trusts § 199 (Am. L. Inst. 1959); *see Amara*, 563 U.S. at 440 (recognizing traditional equitable remedies for breaches of fiduciary duty). These principles support Plaintiffs' requested reprocessing remedy: an injunction compelling Cigna to exercise the individualized medical judgment allegedly required by the Plans, rather than substituting an automated code-matching process for that judgment. Thus, Plaintiffs seek to enforce Cigna's fiduciary obligations through a traditional form of equitable intervention, without requiring the Court to determine any claimant's entitlement to benefits.[10]

---

[10] Both the Supreme Court and the Ninth Circuit have relied upon the Restatement (Second) of Trusts and the Restatement (Third) of Trusts to define the remedies traditionally available. *See Amara*, 563 U.S. at 442 (quoting Restatement (Third) of Trusts § 95 & cmt. a (Am. L. Inst., Tentative Draft No. 5, 2009)); *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 250–51 (2000) (looking to the common law of trusts, including the

Both equitable triggers are present here. The plans [redacted]" Danas Ex. 6 (Grider Dep.) 290:19–291:21. [redacted]. Danas Ex. 4 (Evans-Blackshear Dep.) 77:19–25; Danas Ex. 13 (Rossi Dep.) 117:8–119:1, 121:19–122:1; Danas Ex. 5 (Finley Dep.) 202:10–203:7. And Cigna did so for its own benefit, [redacted]. Danas Ex. 16 (Stinson 30(b)(1) Dep.) 40:25–42:16; Danas Ex. 10 (Kessel Dep.) 78:1–11, 81:9–23; Danas Ex. 4 (Evans-Blackshear Dep.) 38:8–23. That is a trustee applying the wrong standard for an improper motive—the paradigm case for equitable intervention.[11]

Reprocessing also satisfies Rule 23(b)(2) on its own terms. The relevant inquiries are whether Cigna "acted . . . on grounds that apply generally to the class," *Parsons*, 754 F.3d at 688, and whether "a single injunction . . . would provide relief to each member of the class," *Dukes*, 564 U.S. at 360. Both answers are yes. [redacted]. Danas Ex. 6 (Grider Dep.) 277:11–279:2. Plaintiffs seek an injunction requiring Cigna to correct that practice by reprocessing the affected claims. The requested order would address the same alleged procedural defect for each proposed ERISA Class member. Although Cigna's subsequent medical-necessity determinations may differ, Rule 23(b)(2) does not require "that all members of the class have suffered identical injuries." *Parsons*, 754 F.3d at 688.

Nor does the requested reprocessing entail the individualized monetary relief that *Dukes* places outside Rule 23(b)(2). 564 U.S. at 360–61. The Court would not determine whether any claimant's treatment was medically necessary or order Cigna to pay any particular claim. Instead, the requested injunction would require Cigna to conduct the review allegedly required by the plans, leaving individual

---

Restatement (Second) of Trusts, to define the "appropriate equitable relief" available under section 1132(a)(3)); *Gabriel*, 773 F.3d at 955–58 (defining "appropriate equitable relief" available under section 1132(a)(3) by reference to the remedies traditionally available against a breaching trustee in courts of equity, the citing Restatement (Third) of Trusts § 100 (Am. L. Inst. 2012) and Restatement (Second) of Trusts § 205 (Am. L. Inst. 1959)).

[11] Notably, *Wit* does not foreclose Plaintiffs' requested relief. *Wit* held only that the plaintiffs there had not shown that reprocessing was typically available in equity. *Wit*, 79 F.4th at 1086. Plaintiffs make that showing here. And the fiduciary in *Wit* exercised medical judgment, albeit under flawed guidelines; Cigna exercised none.

coverage determinations to Cigna. Moreover, unlike the classes in *Wit*, which included claims denied on grounds independent of the challenged guidelines, Plaintiffs seek reprocessing of claims denied through the challenged PxDx [redacted] process. Cigna's records [redacted]. Danas Ex. 4 (Evans-Blackshear Dep.) 260:9–11. Thus, Plaintiffs can establish through common evidence that the challenged process was applied to the claims for which they seek relief, while leaving any independently sufficient grounds for denial available for Cigna to consider.

[redacted]

**3. The proposed ERISA Class is ascertainable.**

Rule 23 does not impose a freestanding administrative-feasibility prerequisite to class certification. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125–26, 1133 (9th Cir. 2017) (holding that Rule 23 does not require plaintiffs to demonstrate an administratively feasible means of identifying class members before certification). Although a proposed class must be sufficiently definite to conform to the Rule 23, the Ninth Circuit does not require plaintiffs to demonstrate an administratively feasible method of identifying its members. *See Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986) (affirming certification of a Rule 23(b)(2) class because its definition was sufficiently definite, notwithstanding its inclusion of future class members); *Briseno*, 844 F.3d at 1124 n.4 (distinguishing concerns about indefinite class definitions from a separate administrative-feasibility requirement).

The proposed ERISA Class readily satisfies this standard. Membership turns on objective criteria: whether an individual was covered by an ERISA-governed plan and had a claim for benefits denied through Cigna's PxDx process during the applicable class period. These criteria depend on Cigna's own coverage and claims-adjudication records, not individual claimants' recollections, subjective beliefs, or proof that their medical services were medically necessary.

Moreover, the record establishes [redacted]. [redacted]-

[redacted]. *See, e.g.*, Danas Ex. 4 (Evans-Blackshear Dep.) 139:6–22, 158:23–25, 159:17–19, 260:9–18; Danas Ex. 6 (Grider Dep.) 76:17–77:5, 250:4–17. Plaintiffs' expert has also identified a method for determining which individuals had claims denied through PxDx, including by Member ID and associated identifying information. Panis Report ¶¶ 58, 61. Identifying the proposed Class thus requires [redacted], not individualized fact-finding concerning the merits of particular claims. Accordingly, the proposed ERISA Class is sufficiently definite under Rule 23, and its members can be identified through [redacted].

## II. Cigna's Uniform PxDx Denial Practice Warrants Certification of a California UCL Class.

Plaintiffs also seek certification of a California Class predicated on Cigna's violation of California's UCL:

> All persons who are or were participants in, or beneficiaries of, group health benefit plans for which Defendants serve as the claims administrator with respect to medical benefits within the State of California at any time on or after July 24, 2019 (hereinafter, "the UCL Class").

### A. The UCL Class satisfies Rule 23(a)'s requirements.

The UCL Class challenges the same uniform PxDx practice already shown to satisfy Rule 23(a) for the ERISA Class. *Supra* Section I.A. Plaintiffs incorporate that showing by reference and address below only those considerations specific to the UCL Class.

#### 1. Numerosity: The UCL Class, with over 1,400,000 members, is sufficiently numerous.

Cigna's [redacted] establishes numerosity. [redacted]. Panis Report ¶ 56. The Ninth Circuit recognizes that, although class size is not dispositive, "where a class is large in numbers, joinder will usually be impracticable." *See A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 835 (9th Cir. 2022) (adopting the numerosity framework articulated in *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated*, 459 U.S. 810 (1982), *on remand*, 713 F.2d 503 (9th Cir. 1983), *modified*, 726 F.2d 1366 (9th Cir. 1984)). Here, with approximately 1,438,129 unique individuals [redacted], joinder is plainly impracticable.

**2. Commonality: The UCL Class's claims turn on common questions that Cigna's uniform conduct answers.**

The same record evidence establishing commonality for the ERISA Class establishes commonality under California law. *Supra* Section I.A.2. Plaintiffs' UCL theories raise common questions concerning whether Cigna's [redacted] process complied with California's requirements for medical-necessity determinations and denial notices; whether its use was unfair; and whether Cigna's representations and omissions concerning PxDx were likely to deceive reasonable consumers. 3AC ¶¶ 140–48, ECF No. 36. These questions concern Cigna's standardized practices and are capable of resolution through common evidence. *See Dukes*, 564 U.S. at 350 (requiring a common contention capable of resolving an issue central to the class members' claims "in one stroke").

**a. Unlawful Prong—Licensed-Physician Requirement: Whether PxDx violates California's licensed-physician requirement is a common question.**

Section 1367.01(e) requires that medical necessity denials be made "by a licensed physician or a licensed health care professional competent to evaluate the specific clinical issues involved." Cal. Health & Safety Code § 1367.01(e). Whether Cigna's [redacted] process can be squared with that requirement is a single common question, resolvable on the same record already marshaled at *supra* Section I.A.2.a. 3AC ¶ 143.

**b. Unlawful Prong—Notice Requirement: Whether Cigna's denial letters violate California's notice requirement is a common question.**

Section 1367.01(h)(4) requires that a denial for lack of medical necessity be communicated in writing with "a clear and concise explanation of the reasons for the plan's decision, a description of the criteria or guidelines used, and the clinical reasons for the decisions regarding medical necessity." Cal. Health & Saf. Code § 1367.01(h)(4). Cigna's [redacted]. Danas Ex. 6 (Grider Dep.) 286:6–287:13; Danas Ex. 31. The same template letter already at issue, *supra* Section I.A.2.b, presents a single, class-wide question under this parallel state notice provision. 3AC ¶ 144.

**c. Unfair Prong: Whether batch denial is an unfair practice is a common question.**

[redacted]. It "offend[s] established public policy" and causes harm outweighing any benefit to Cigna. 3AC ¶ 146. This, too, is answered once for the whole UCL Class on the uniform record already discussed. *Supra* Section I.A.2.a.

**d. Fraudulent Prong—Concealment of PxDx: Whether Cigna's concealment of PxDx was likely to deceive a reasonable member is a common question.**

The fraudulent prong asks only whether the challenged conduct is "likely to [] deceive[]" a reasonable consumer and whether the concealed information is material. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312, 326–27 (2009); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 332–33 (2011). These are common, class-wide questions. *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1293–95 (2002). Cigna's [redacted]. Danas Ex. 4 (Evans-Blackshear Dep.) 77:11–78:8, 206:5–25, 209:19–21, 220:14–221:24. [redacted]" *Id.* at 205:19–206:4; Danas Ex. 6 (Grider Dep.) 325:10–327:6. [redacted]. 3AC ¶¶ 148–49. Whether that uniform, class-wide silence and affirmative misrepresentation were likely to deceive a reasonable consumer is a single common question, answerable on common proof without regard to any UCL class member's individual circumstances.

**3. Typicality: Plaintiff Mahshigian's UCL claim is typical of the UCL Class's claims because PxDx denied his claim through the same mechanism.**

Plaintiff Mahshigian had a California claim denied through the identical PxDx mechanism at issue for every UCL class member. *Supra* at 13–14, 21–22.

**4. Adequacy: Plaintiff Mahshigian and class counsel will adequately represent the UCL Class.**

Plaintiff Mahshigian seeks the same relief for every UCL class member: an injunction requiring

licensed-physician review of California medical-necessity denials and restitution measured by a common formula. Nothing in that relief favors him over absent members, and he has no interests antagonistic to theirs. *See* Mahshigian Decl. ¶ 10. He has been engaged in this matter and is committed to prosecuting this case on the UCL class's behalf. *See id.* ¶¶ 8–9. The same class counsel adequately representing the ERISA Class adequately represents the UCL Class, with no conflict and, if anything, tighter alignment given the UCL Class's narrower composition. *Supra* at 22.

**B. The UCL Class satisfies the Rule 23(b)(3) and 23(b)(2) requirements.**

**1. The UCL Class satisfies Rule 23(b)(3): Common questions predominate, and restitution can be measured class-wide.**

Under the UCL, "plaintiffs are generally limited to injunctive relief and restitution." *Rabin v. Google LLC*, 787 F. Supp. 3d 934, 951 (N.D. Cal. 2025). At certification, Plaintiffs need only show that restitution is "capable of measurement on a classwide basis" using a model tied to their theory of liability. *Comcast Corp.,* 569 U.S. at 34–35. The model need not be executed now. It is enough that the Court finds it reliable and capable of calculating restitution on a class-wide basis at trial. *See Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1019 (9th Cir. 2024) (holding that there is "no general requirement that an expert actually apply to the proposed class an otherwise reliable damages model in order to demonstrate that damages are susceptible to common proof at the class certification stage"), *cert. denied*, 145 S. Ct. 1308 (2025); *Drake v. Bayer Healthcare LLC*, No. 24-7158, 2026 WL 1079027, at *2 (9th Cir. 2026) (rejecting the argument that a damages analysis that "was merely proposed" could not show class-wide injury because plaintiffs showed that the proposed conjoint analysis, "when applied, can establish whether the putative classes in fact paid a premium price for the product," and "[t]hat is all that Rule 23(b)(3) requires of Plaintiffs at this stage"). Individualized damage calculations do not defeat predominance where the plaintiffs are "able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

Under the UCL, restitution is the difference between the price paid and the price a reasonable purchaser would have paid with full information. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988–89 (9th Cir. 2015); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009). Here, that difference is what Class members paid for coverage represented as including physician review of

medical-necessity denials, minus what the market would have charged for coverage disclosed as using PxDx's [redacted]. Conjoint analysis is the accepted method for measuring that difference, and it need not be executed at certification. *See Lytle*, 114 F.4th at 1021; *Drake*, 2026 WL 1079027, at *2; *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1103–1104 (N.D. Cal. 2018).

Plaintiffs' survey expert, Augustus H. Urschel, proposes a choice-based survey that asks the question the UCL poses: what a Class member would have been willing to pay for "the same employer-sponsored Cigna health insurance plan with the accurate representation of the claim review process." Urschel Decl. ¶ 56. It presents California heads of household with realistic employer-plan enrollment choices that vary a "Medical Necessity Claim Review Process" attribute, "Individualized Review by a Medical Director or Review Organization" versus "Code-Matching Review by a Machine Algorithm," alongside an employee-contribution price attribute calibrated to California data and decoy attributes such as brand, network, deductible, and cost-sharing. Urschel Decl. ¶¶ 12, 56–58, 82–94. A market simulation then measures the reduction in willingness to pay attributable to the undisclosed practice. *Id.* ¶¶ 106–110. For example, a 5 percent decline would equal $6.75 per month on a $135 contribution. *Id.* ¶ 106.

Plaintiffs' supply-side expert, Kathryn Kaduck, translates Urschel's decline into damages using fixed-supply pricing, "a standard and economically appropriate methodology" that courts "have often accepted . . . as sufficient to address supply-side challenges." Kaduck Decl. ¶¶ 14, 18(i), 27. Because Class members' enrollment "is fixed as a matter of historical fact," damages equal the decline "multiplied by the number of months of enrollment," and "restitution may not exceed the amounts that Class Members contributed." *Id.* ¶¶ 18(i), 54. That measure holds "regardless of individual employee contribution or individual [willingness to pay]," *id.* ¶ 18(ii), and relies on "methods and data common to the Class," *id.* ¶ 72. Because every Class member received the same omission, the measure applies uniformly: either all members paid an inflated price or none did. *Drake*, 2026 WL 1079027, at *2; *Vaquero*, 824 F.3d at 1155. A class action is superior for the reasons stated for the ERISA Class. *Supra* at 25–26.

**2. The UCL Class satisfies Rule 23(b)(2): A single injunction would protect every UCL class member.**

Cigna's uniform, systemwide PxDx conduct—already shown to satisfy Rule 23(b)(2) for the ERISA Class, *supra* at 26–27—applies with equal force to the UCL Class. Danas Ex. 4 (Evans-

Blackshear Dep.) 77:11–78:8, 220:14–221:24; Danas Ex. 6 (Grider Dep.) 76:19–77:10; Danas Ex. 13 (Rossi Dep.) 117:8–119:1; Danas Ex. 5 (Finley Dep.) 202:10–203:7; *see also Parsons*, 754 F.3d at 688. As with the ERISA Class, the requested injunction is narrow, uniform, and prospective: bar Cigna from denying California claims on medical-necessity grounds without individualized review by a licensed, competent physician, as § 1367.01(e) requires. 3AC ¶ 154. It requires no individual adjudication and governs every UCL class member identically. *Dukes*, 564 U.S. at 360.

Cigna's conduct confirms the need for it. [redacted]. Danas Ex. 4 (Evans-Blackshear Dep.) 208:1–10, 282:12–19. Voluntary, unilateral cessation of this kind does not moot the need for injunctive relief; Cigna bears a "heavy burden" to show the conduct "cannot reasonably be expected to start up again," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000), and it cannot meet it on this record. Section 17203 exists precisely to convert that kind of reversible, self-interested forbearance into an enforceable, class-wide command.

**C. The UCL Class is ascertainable.**

Ascertainability is not required for (b)(2) classes. *Escalante*, 309 F.R.D. at 621; *supra* at 30. It is satisfied regardless: [redacted]. *See supra* at 30; Danas Ex. 4 (Evans-Blackshear Dep.) 24:13–17, 25:4–18, 26:3–9, 139:6–22, 158:23–25, 159:17–19, 260:9–18, 278:11–14; Danas Ex. 6 (Grider Dep.) 76:17–19, 250:4–17. No individualized fact-finding is required. *Briseno*, 844 F.3d at 1126. And Plaintiffs' expert can identify exactly which individuals had claims denied by PxDx, identifiable by Member ID and other identifying information. *See* Panis Report ¶¶ 56, 58, 61.

**CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court grant their motion to certify the ERISA Class and the UCL Class under Rule 23(b)(3) and Rule 23(b)(2); appoint Plaintiffs Mahshigian and Rentsch as class representatives; and appoint Plaintiffs' counsel of record as class counsel.

DATED: October 30, 2026

Respectfully submitted,
**CLARKSON LAW FIRM, P.C.**

By: */s/ Glenn A. Danas*
Glenn A. Danas
Shireen M. Clarkson
Derek Brandt
Adrian J. Barrio
Larkin Turner
Zarrina Ozari
Michael A. Boelter
Grace I. Chanin

**LOCKRIDGE GRINDAL NAUEN PLLC**
Karen Hanson Riebel
David W. Asp
Simeon A. Morbey
Derek C. Waller
Emma Ritter Gordon
Margaret Eve Grabau

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2026, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send notice of the filing to counsel of record.

*/s/ Glenn A. Danas*
Glenn A. Danas